**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE FEW, THE PROUD, THE FORGOTTEN; VIETNAM VETERANS OF AMERICA; and CONNECTICUT STATE COUNCIL OF VIETNAM VETERANS OF AMERICA,<br>Plaintiffs,<br>v.<br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,<br>Defendant. | Civil Action No. 3:16-cv-647<br><br>April 27, 2016 |

## COMPLAINT

Between 1953 and 1987, nearly one million Marines, sailors, civilian employees, and military family members aboard Marine Corps Base Camp Lejeune unknowingly drank, cooked with, and bathed in contaminated water. The water caused serious illnesses, including bladder cancer, leukemia, kidney cancer, and liver cancer. Veterans are entitled to benefits for disabilities resulting from or exacerbated by their military service, including those caused by toxic exposure, but the U.S. Department of Veterans Affairs ("VA") has denied the overwhelming majority of disability claims from Camp Lejeune veterans.

In 2012, VA made it even more difficult for veterans to obtain disability benefits for illnesses caused by the Camp Lejeune water contamination ("Camp Lejeune claims"). That year, VA quietly created the "Subject Matter Expert" ("SME") program specifically for Camp Lejeune claims, adding a new step in the disability adjudication process. Under the SME program, an anonymous group of VA clinicians submits reports evaluating whether the contaminated water at

Camp Lejeune is "as likely as not" to have caused the claimed disability. Since VA implemented the SME program, the grant rate for Camp Lejeune claims has dropped from 25% to 8%.

Despite numerous requests for information, VA has refused to provide details about how the SME program operates. VA's secrecy is troubling given that the little that is known about the program suggests fundamental flaws in VA's criteria for selecting SMEs, and the SMEs' methodology, training, and expertise. For example, one newspaper reported that an SME copied and pasted a Wikipedia entry on liver cancer into his report, which VA subsequently relied on to deny disability benefits. A former VA claims adjudicator has confirmed that some SMEs have no experience diagnosing cancer, let alone tracing its toxicological origins. Yet VA has hailed the SME program as the "model for the future."

On December 7, 2015, Plaintiffs The Few, The Proud, The Forgotten; Vietnam Veterans of America; and Connecticut State Council of Vietnam Veterans of America submitted a request to VA under the Freedom of Information Act ("FOIA") to obtain information about the development, creation, procedures, objectives, and implementation of the Camp Lejeune SME program. VA has failed to respond to Plaintiffs' request within the statutory deadline, in violation of the FOIA. Plaintiffs bring this action to compel VA's production of responsive records.

**JURISDICTION AND VENUE**

1. This court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331 and 1361.

2. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C), as Plaintiff Connecticut State Council of Vietnam Veterans of America resides and maintains its principal place of business in the District of Connecticut and no real property is involved in this action.

## PARTIES

3. Plaintiff The Few, The Proud, The Forgotten ("TFTPTF"), founded in 1997, is the leading advocacy organization for victims of Camp Lejeune water contamination. The group, led by retired Marine Master Sergeant Jerome Ensminger, successfully lobbied Congress for the passage of the Janey Ensminger Act, Pub. L. No. 112-154, 126 Stat. 1165 (2012), which requires VA to provide healthcare to veterans and their dependents for medical conditions related to the Camp Lejeune water contamination. The law is named after Master Sergeant Ensminger's nine-year-old daughter, who passed away from leukemia due to toxic water exposure at Camp Lejeune. TFTPTF founder Master Sergeant Ensminger and TFTPTF leader Mike Partain are both prominent and vocal members of the Community Assistance Panel ("CAP") organized by the Agency for Toxic Substances and Disease Registry to act as a conduit between the federal government and communities exposed to contaminants aboard Camp Lejeune.

4. Plaintiff Vietnam Veterans of America ("VVA"), founded in 1978, is the only veterans organization congressionally chartered and dedicated to the needs of Vietnam veterans across all military departments. The organization has 75,000 members and 635 chapters nationwide. VVA is committed to promoting and supporting the full range of issues important to veterans of all eras of service under its founding principle, "Never again will one generation of veterans abandon another." One of VVA's advocacy priorities is addressing the impact of toxic exposures on veterans and their families.

5. The Connecticut State Council of Vietnam Veterans of America ("VVA-CT") is one of VVA's forty-eight State Councils. VVA-CT represents members of VVA's five Connecticut chapters and members at large, including Vietnam veterans from the Army, Navy, Air Force, and Marine Corps. VVA-CT is based in New Britain, CT.

6. The U.S. Department of Veterans Affairs ("VA") is the federal agency responsible for providing benefits and compensation to veterans who are disabled from injuries or diseases due to their military service. The Veterans Health Administration ("VHA"), a component of VA, provides healthcare to veterans through the administration and operation of VA medical centers and community-based outpatient clinics. The Veterans Benefits Administration ("VBA"), another component of VA, oversees the adjudication of disability benefit claims and delivery of benefits to veterans.

## FACTUAL ALLEGATIONS

7. The Marine Corps first discovered the contamination of Camp Lejeune's water supply in the early 1980s, but did not inform veterans, their families, and civilian employees aboard Camp Lejeune about the contaminated wells until years later. The Marine Corps allowed people aboard Camp Lejeune to use some contaminated wells until 1987.

8. VA estimates that around 1 million people were exposed to the contaminated water. Many have since developed cancers, neurological diseases, and other fatal illnesses.

### VA Adjudication of Camp Lejeune Contamination Claims

9. Veterans who have developed a disease or disability due to Camp Lejeune's contaminated water are entitled to VA disability compensation benefits. Like all veterans, they must navigate a benefits system that is intended to be "claimant friendly" and "non-adversarial," and VA has a "duty to assist" them in this process.

10. In 2012, VA selected approximately 30 doctors from within VA and named them Subject Matter Experts ("SMEs"). VA charged these SMEs with conducting reviews of medical records in Camp Lejeune claims and issuing opinions on the medical nexus between the veteran's claimed condition and his or her exposure to Camp Lejeune's contaminated water.

11. Veterans and their advocates have little information about how the SME program operates.

12. SMEs have considerable influence over the outcome of Camp Lejeune claims. As of March 2016, VA could not identify a single instance in which VA did not adopt the findings of an SME report.

13. Since VA established the SME program, the grant rate for Camp Lejeune claims has plummeted from 25% to 8%.

**Concerns Regarding the Camp Lejeune Subject Matter Expert Program**

14. SME reports that have become publicly available have prompted concerns from veterans and medical professionals about the SMEs' expertise.

15. In 2014, an Orlando newspaper published a story of one SME who copied and pasted a Wikipedia entry on liver cancer into his report, which VA subsequently used to justify denying the veteran's claim for disability compensation benefits.

16. According to the same article, VA denied a Camp Lejeune veteran's claim based on a report by an SME who had no medical board certifications. Additionally, a former VA claims adjudicator has confirmed that some SMEs do not have experience diagnosing cancer, let alone evaluating its cause.

17. Another SME erroneously claimed that no known studies plausibly connected trichloroethylene (one of the primary contaminants in Camp Lejeune's water supply) to kidney cancer despite widespread scientific consensus that such a link exists.

18. Many SME reports continue to rely on an outdated and discredited 2009 medical literature review by the National Research Council, even after VA publicly admitted that the SMEs improperly used the outdated source.

19. As early as 2013, VA acknowledged concerns with the SMEs and admitted that, in light of the complexity of the toxicological evidence at issue in Camp Lejeune claims, SMEs were "balking" at writing the reports.

20. Despite repeated requests by the CAP and individual veterans, VA has largely refused to disclose information about the SME program. VA has also failed to provide information about its process for reviewing allegations that SMEs have engaged in ethical violations.

**Plaintiffs' FOIA Request**

21. On December 7, 2015, Plaintiffs submitted a FOIA request to VA by email. In accordance with VA FOIA policy, Plaintiffs addressed this request jointly to VBA and VHA, components of VA. A copy of the request is attached as Exhibit A.

22. Plaintiffs requested records related to the operation and impact of the Camp Lejeune SME program. The request covers selection criteria and qualifications for SMEs, training and guidance materials for SMEs and VA, the scientific literature relied upon by SMEs, VA's disclosure of SME reports, and the effect of the SME program on Camp Lejeune claims.

23. As of the date of the filing of this Complaint, VA has not produced any records in response to Plaintiffs' FOIA request, nor has it provided Plaintiffs with a formal determination regarding their request or sought an extension to respond.

*Communications with VBA*

24. By letter dated December 17, 2015, VBA confirmed receipt of Plaintiffs' request and assigned it FOIA Tracking Number 16-01992-F.

25. On December 17, 2015, VBA FOIA Officer B. Leah Brown left Plaintiffs' counsel a voicemail advising that VHA and VBA would respond separately to the FOIA request.

Later that day, counsel for Plaintiffs spoke with Ms. Brown, who reported that VBA believed it did not possess information responsive to all of the items requested.

26. On February 11, 2016, counsel for Plaintiffs again spoke with Ms. Brown, who stated that the VA Regional Office in Louisville, which handles all Camp Lejeune claims, reported that the documents were "locked" on a server. Ms. Brown did not know whether all of the responsive documents were "locked" or how long it would take for the documents to be "unlocked" and made available for her review.

27. On March 9, 2016, counsel for Plaintiffs requested a status update from Ms. Brown. On March 10, 2016, Ms. Brown responded by email that records had been retrieved and were being batched for review, and that she would continue to update Plaintiffs' counsel regarding the status of the review.

28. Plaintiffs have not received any documents from VBA, nor has counsel for Plaintiffs received any further communication from VBA.

*Communications with VHA*

29. By letter dated December 8, 2015, VHA confirmed receipt of Plaintiffs' request and assigned it FOIA Tracking Number VHA-16-01885-F.

30. On or about January 7, 2016, counsel for Plaintiffs spoke by telephone with VHA FOIA Officer Jeff Parrillo, during which counsel confirmed that Plaintiffs did not wish to narrow the scope of their request and that they consented to VHA sending responsive documents in batches rather than waiting to send all responsive documents simultaneously.

31. On February 8, 2016, counsel for Plaintiffs spoke again with Mr. Parrillo, who stated that he had received two disks of responsive documents from VHA but that VHA would not provide any documents responsive to Plaintiffs' FOIA request until April 2016 at the earliest.

32. On March 9, 2016, counsel for Plaintiffs requested a status update from Mr. Parrillo by email and immediately received an out of office message from Mr. Parrillo's account.

33. Plaintiffs have not received any documents from VHA, nor has counsel for Plaintiffs received any further communication from VHA.

## CAUSE OF ACTION

34. Plaintiffs repeat and incorporate every allegation contained in paragraphs 1-33 as if set forth in full.

35. Defendant has failed to provide an official determination regarding Plaintiffs' FOIA request within the statutorily mandated period. 5 U.S.C. § 552(a)(6)(A)(i); 38 C.F.R. § 1.557(c).

36. Defendant's failure to make reasonable efforts to search for the records requested and to promptly release responsive records violates Plaintiffs' right to those records under the FOIA. 5 U.S.C. § 552(a)(3).

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1) Order Defendant to perform a reasonable search and disclose the requested records to Plaintiffs;

2) Order Defendant to grant a full fee waiver to Plaintiffs;

3) Provide for expeditious proceedings in this action;

4) Award Plaintiffs costs and reasonable attorney fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

5) Grant any other relief the Court deems appropriate.

Dated: April 27, 2016
New Haven, CT

Respectfully Submitted,

By: /s/ Jason Parkin

Andrea Katz, Law Student Intern
Rory Minnis, Law Student Intern
Joya Sonnenfeldt, Law Student Intern
Helen White, Law Student Intern
Bethany Li, ct29666
Jason Parkin, ct28499

Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
Tel.: (203) 432-4800
Fax: (203) 432-1426
bethany.li@yale.edu
jason.parkin@yale.edu

*Counsel for Plaintiffs*

# EXHIBIT A

# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

December 7, 2015

FOIA Office for the Veterans Benefits Administration
VA Central Office
810 Vermont Avenue, NW
(20M33) VACO
Washington, DC 20420
foia.vbaco@va.gov

FOIA Office for the Veterans Health Administration
VA Central Office
810 Vermont Avenue, NW
(10P2C1) VACO
Washington, DC 20420
vhafoia2@va.gov

**Re: Request Under Freedom of Information Act**

To Whom It May Concern:

This letter constitutes a request ("Request"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for Records in the possession of the Department of Veterans Affairs ("VA"). The Request is submitted by the Veterans Legal Services Clinic at the Jerome N. Frank Legal Services Organization on behalf of our clients The Few, The Proud, The Forgotten ("TFTPTF"), Vietnam Veterans of America ("VVA"), and the Connecticut State Council of Vietnam Veterans of America ("VVA-CT") (collectively, "Requesters").

**Defined Terms**

For the purposes of this Request, the following terms are defined as follows:

- "Records" includes all documentation or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, transcripts, video and audio recordings, emails, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, studies, and other similar information. Unless otherwise noted, the Request seeks Records created since 2010.

- "VA" refers to the U.S. Department of Veterans Affairs and any sub-components of that Department, including the Veterans Health Administration ("VHA") and the Veterans Benefits Administration.

P.O. BOX 209090, NEW HAVEN, CT 06520-9090 • TELEPHONE 203 432-4800 • FACSIMILE 203 432-1426
COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CT 06511

- "Camp Lejeune Water Contamination" refers to the period between 1953 and 1987 during which drinking water at Camp Lejeune, a Marine Corps base in North Carolina, was contaminated with volatile organic compounds including trichloroethylene, perchloroethylene, benzene, and vinyl chloride.[1]

- "Camp Lejeune Water Contamination Claim" or "Claim" refers to an application for disability benefits and compensation submitted by a veteran to the VA related to the Camp Lejeune Water Contamination. "Claimant" refers to individual veterans who have submitted such a claim, or to the dependents or other individuals authorized to submit such a claim on an individual veteran's behalf.

- "Camp Lejeune SME Program" refers to the program established in 2012 to assist adjudication of Camp Lejeune Water Contamination Claims by using SME reports on whether disabilities for which veterans seek benefits could have resulted from exposure to contaminated drinking water at Camp Lejeune.[2]

- "Subject Matter Expert" ("SME") refers to persons retained by the VA to provide reports on whether disabilities for which veterans seek benefits could have resulted from exposure to contaminated drinking water at Camp Lejeune.

**Requested Records**

Requesters seek the following Records:

1. Any and all Records concerning the policies, procedures, objectives, development, creation, and implementation of the SME Program.

2. Any and all Records concerning the VA's selection criteria and minimum required credentials for SMEs participating in the Camp Lejeune SME Program.

3. Any and all Records concerning the qualifications and names of SMEs who have participated, or are currently participating, in the Camp Lejeune SME Program.

4. Any and all Records concerning the Camp Lejeune SME Program's conflict of interest policies and procedures, including but not limited to Records concerning:

    a. the application of VHA conflict of interest policies and procedures (including the policy on "Financial Relationships Between VHA Health Care

---

[1] INSTITUTE OF MEDICINE, REVIEW OF VA CLINICAL GUIDANCE FOR THE HEALTH CONDITIONS IDENTIFIED BY THE CAMP LEJEUNE LEGISLATION 11 (2015).

[2] *See, e.g.*, *Examining the Impact of Exposure to Toxic Chemicals on Veterans and the VA's Response Before the Sen. Comm. on Veterans' Affairs*, 114th Cong., at 1:51:54-1:52:45 (2015) (Statement of Dr. Ralph Erickson) (noting that the SME program was created in Fall of 2012); Brad Flohr, *Community Assistance Panel Meeting* 35-36 (Jul. 2012) (announcing that the SME program would begin in September 2012).

Professionals and Industry"[3]) to the Camp Lejeune SME Program and individual SMEs;

b. investigations of complaints or allegations of SMEs' conflicts of interest;[4] and

c. SME violations of conflict of interest policies and procedures.

5. Any and all Records concerning the number of SMEs who have participated, or are currently participating, in the Camp Lejeune SME Program and their length of employment or work for the VA, including but not limited to:

a. the total number of SMEs who have participated in the Camp Lejeune SME Program who are employees of the VA. For such individuals, include the duration of their employment by the VA and their current and former positions at the VA; and

b. the total number of SMEs participating in the Camp Lejeune SME Program who are not employees of the VA, including details of any and all work they may have done for, or on behalf of, the VA in the past.

6. Any and all Records concerning the procedures for assigning claims to SMEs.

7. Any and all Records used to train or provided as guidance to the Camp Lejeune SMEs, including any lists of bibliographical references provided to SMEs.

8. Any and all Records of the bibliographic references collated by the Camp Lejeune SME Program, as referenced in the testimony of Dr. Ralph Erickson at the Senate Committee on Veterans' Affairs hearing on September 29, 2015.[5]

9. Any and all Records identifying the medical and scientific reports cited in individual SME reports, including Records identifying or otherwise sufficient to disclose the

---

[3] VETERANS HEALTH ADMINISTRATION, VHA HANDBOOK § 1004.07 (2014), http://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=3059.

[4] *See Community Assistance Panel Meeting* (Dec. 5, 2015) (Dr. Carolyn Clancy, acknowledging that SMEs have been investigated for ethics violations).

[5] *Examining the Impact of Exposure to Toxic Chemicals on Veterans and the VA's Response Before the Sen. Comm. on Veterans' Affairs*, 114th Cong. (2015); *see also* Dr. Gerald Cross, Chief Officer, Office of Disability and Medical Assessment, VHA, Transcript from Advisory Committee on Disability Compensation 175-78 (Oct. 2014) ("I looked out to our population of doctors . . . individuals who had training in environmental medicine, toxicology . . . . occupational medicine, and if that was not enough, we would then take them, send them to Louisville, Kentucky, and the reason they went to Louisville, Kentucky was that's where VBA was the RO--they were sending and accumulating all the files. So they had this room full of files, and they would sit there in those rooms like a postgraduate course and sit there and with the instructors take a case out of the pile and go through it and discuss it. At nighttime, we would give them a stack of a research papers that relate to contamination and they would read the research papers. And so the process that I was creating was something called subject matter experts, SMEs, and I did this again because I didn't want to just hand this over to my routine process of the generalists who do much of the exam work.").

number of citations to each individual medical and scientific report both by individual SMEs and in the aggregate for all SMEs participating in the program.

10. Any and all Records provided to VA employees, including VA Regional Office claim adjudicators, to train and educate VA employees on the Camp Lejeune SME Program, including, but not limited to, the role of SME reports and how to weigh and evaluate SME reports.

11. Any and all Records concerning guidance provided to adjudicators on whether to seek an SME report in the course of adjudication of a Camp Lejeune Water Contamination Claim.

12. Any and all Records concerning the VA's disclosure of SME reports, including but not limited to:

    a. the VA's disclosure policy on SME Reports; and

    b. the number of instances in which a claimant has requested a copy of the SME report generated in his or her case. For each claimant request, include information on how quickly the requested report was provided to the claimant or, if the request was denied, the grounds for withholding the SME report from the claimant.

13. Any and all Records concerning the total number of Camp Lejeune Water Contamination Claims decided prior to the implementation of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants). This Request seeks records created before and after 2010.

14. Any and all Records concerning the impact of the Camp Lejeune SME Program on adjudication of claims, including but not limited to:

    a. the total number of Camp Lejeune Water Contamination Claims that have been adjudicated since the institution of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

    b. the total number of Camp Lejeune Water Contamination Claims that have been reviewed by SMEs and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

    c. the total number of Camp Lejeune Water Contamination Claims reviewed by each individual SME, including the number of claims that were approved and denied following review by each SME; and

d. the total number of instances in which an adjudicator decided a case against the recommendation of an SME report.

15. The number of Camp Lejeune Water Contamination Claims that have been decided since Secretary McDonald assured Senators on a conference call in July 2015 that no claims would be denied until a presumption was proposed, including whether those claims were granted or denied.[6]

16. Any and all Records concerning the annual costs of the Camp Lejeune SME Program.

17. Any and all Records concerning the remuneration paid to SMEs by the VA.

18. Any and all Records, including timesheets, concerning the amount of time spent by each SME on each individual claim reviewed by an SME (whether or not the SME ultimately provided a written report).

19. Any and all Records concerning internal and external communications about the Camp Lejeune SME Program, including but not limited to communications involving Dr. Terry Walters, Dr. Gerald Cross, Brad Flohr, Dr. Michael Koopmeiners, Dr. Victoria Cassano, Dr. Carolyn Clancy, Dr. Ralph Erickson, Dr. Deborah Heaney, Dr. Ronald F. Teichman; Dr. Wanda Blaylark , Dr. Gary B. Wilhelm, Dr. Amir Mohammad; Dr. Ronit Ben-Abraham Katz:

a. concerning the proposal, development, objectives, and implementation of the Camp Lejeune SME Program;

b. between SMEs pertaining to the Camp Lejeune SME Program;

c. between SMEs and other VA employees pertaining to the Camp Lejeune SME Program;

d. between VA employees and Congressional staff regarding the inception or operation of the Camp Lejeune SME Program, including but not limited to minutes from the July 2015 and December 2015 meetings between VA Secretary McDonald and Members of Congress, including Senators Burr and Tillis;[7]

e. between VA employees pertaining to the Camp Lejeune SME Program; and

[6] *Id.* at 1:05:06-1:05:39, 1:08:04-1:08:12 (statement of Sen. Thom Tillis) ("I was told . . . that any claims for the diseases related [to the forthcoming presumption] would be delayed and not denied until we came up with a policy. The reason that we need to do that is if you get a claim denied then the veteran has to go through the process again, whereas if we just delay the decision until after we have the policy, they can move through the process in the order that they should. . . [and yet] I have been told that there have been claims denied since I was given an assurance they would not be. ").

[7] *Id.* (statement of Sen. Richard Burr) ("At our July meeting, Secretary McDonald, to his credit, openly and fully recognized the fact that the science on Lejeune was undeniable and he agreed to work with [the Agency for Toxic Substances and Disease Registry] to compile data for a presumptive disability policy.").

f. discussing or responding to media inquiries concerning the Camp Lejeune SME Program.

20. Any and all Records of the Advisory Committee on Disability Compensation ("Advisory Committee"), which oversees the adjudication of Camp Lejeune Water Contamination Claims and the Camp Lejeune SME Program, including but not limited to:

a. reports generated by the Advisory Committee; and

b. transcripts of Advisory Committee meetings held since 2010.

Requesters ask that any Records that exist in electronic form be provided in electronic format via electronic mail or on a compact disc. If Records cannot be provided in electronic form or in hard copy, Requesters seek the opportunity to view the Records in the VA's offices.

Requesters agree to pay search, duplication, and review fees up to $100. If the fees amount to more than $100, requesters seek a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii). Requester VVA qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II)[8] because it gathers information, uses its editorial discretion to write reports, and then publishes those reports to the public.[9] VVA identifies toxic exposures as one of its key priorities[10] and has published materials specifically about water contamination at Camp Lejeune.[11]

Further, "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

[8] 5 U.S.C. § 552(a)(4)(A)(ii) ("In this clause, the term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. In this clause, the term 'news' means information that is about current events or that would be of current interest to the public.").

[9] *See generally* "Publications" at http://www.vva.org/brochures.html; *e.g.* Melissa Ader et al., *Casting Troops Aside: The United States Military's Illegal Personality Disorder Discharge Problem*, VIETNAM VETERANS OF AM. (Mar. 2012), http://www.vva.org/PPD-Documents/WhitePaper.pdf (VVA white paper analyzing data obtained in FOIA litigation and hosted on VVA website); Blake Boghossian et al., *Disorder in the Coast Guard: The United States Coast Guard's Illegal Personality and Adjustment Disorder Discharges*, VIETNAM VETERANS OF AM. (Feb. 2014) (same); *The VVA Self-Help Guide to Service-Connected Disability Compensation for Exposure to Agent Orange for Veterans and Their Families*, VIETNAM VETERANS OF AM. (Aug. 2012).

[10] *See* "Quick Links" at http://www.vva.org/index.html.

[11] *E.g.* Richard Currey, *Troubled Waters: The Toxic Legacy of Camp Lejeune's Contaminated Water Supply*, THE VVA VETERAN (Aug./Sept. 2004); *IOM Recommends Improvements of Draft VA Clinical Guidance for Health Conditions Identified by Camp Lejeune Legislation*, VVA WEB WEEKLY (Mar. 13, 2015) ("A report released March 11 from the Institute of Medicine offers recommendations to enhance a U.S. Department of Veterans Affairs draft clinical guidance document intended to help health care providers determine whether a veteran or family member has a medical condition that is covered by the Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012 and whether an episode of care is related to a covered condition. The study committee that reviewed the document said that the VA has done a commendable job in dealing with a scientifically and administratively complex task.").

FOIA's legislative history makes clear that the "fee waiver provision . . . is to be liberally construed in favor of waivers for non-commercial requesters." *Fed. Cure v. Lappin*, 602 F. Supp. 2d 197, 201 (D.D.C. 2009) (internal quotation marks omitted). The VA's FOIA regulations explain that a fee waiver will be granted where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government," and "is not primarily in the commercial interest of the requester." 38 C.F.R. § 1.561(n)(2)(i).

To determine whether disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government, the VA's regulations look to the: (i) subject of the request; (ii) informative value of the information to be disclosed; (iii) contribution to an understanding of the subject by the public likely to result from disclosure; and (iv) significance of the contribution to public understanding. 38 C.F.R. § 1.561(n)(3)(i)-(iv).

First, the subject of the Request indisputably "concern[s] identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated." 38 C.F.R. § 1.561(n)(3)(i). The Records requested concern the Camp Lejeune SME Program the VA employs for review of Camp Lejeune Water Contamination Claims.

Second, the information sought by Requesters has significant informative value because it would be "meaningfully informative about government operations or activities" and is "likely to contribute . . . to an increased public understanding of those operations or activities." 38 C.F.R. § 1.561(n)(3)(ii). The VA has failed to disclose why it adopted the Camp Lejeune SME Program, the SME selection criteria, training and guidance for the SMEs and the adjudicators who receive the SME reports, and the impact of the SME program on the adjudication of Camp Lejeune Water Contamination Claims. Without this information the public remains unable to assess whether the VA is improperly denying Camp Lejeune Water Contamination Claims through inadequate or improper procedures. The lack of transparency is particularly alarming given that the VA has publicly admitted concerns about the operation of the Camp Lejeune SME Program.[12] Moreover, VA officials have referred to the Camp Lejeune SME program as a "model for the future" that could be used to review other types of disability claims.[13] Accordingly, VA transparency regarding the Camp Lejeune SME Program would have significant informative value about how the VA currently adjudicates Camp Lejeune Water Contamination Claims and about how it may adjudicate other types of benefits claims in the future.

---

[12] *See, e.g.*, Brad Flohr, Senior Advisor for Compensation Service, Veterans Benefits Administration, U.S. Department of Veterans Affairs, *Community Assistance Panel (CAP) Meeting* (Jan. 15, 2015) ("I definitely agree that the NRC report should not be cited or anything in our decisions. I've had discussions with VHA about that. I will have future discussions with VHA about that. We may need to do a little more training for the SMEs."); Brad Flohr, Senior Advisor for Compensation Service, Veterans Benefits Administration, U.S. Department of Veterans Affairs, *Community Assistance Panel (CAP) Meeting* (May 3, 2013) ("We are having some concerns with the subject matter experts that were identified to provide medical opinions, that they're very difficult to do, and some of the SMEs are balking at doing it and we're getting kind of backed up. Got to work with our disability management office in VHA to sort out problems there and make sure that these are getting done.").

[13] *Advisory Committee on Disability Compensation* 257 (Oct. 2014) (quoting Dr. Gerald Cross, Chief Officer, Office of Disability and Medical Assessment, VHA).

Third, disclosure of the requested Records will "contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." 38 C.F.R. § 1.561(n)(3)(iii). Requester TFTPTF maintains a website where it has posted thousands of pages of documents regarding drinking water contamination at Camp Lejeune,[14] and its advocacy efforts have been featured in an award-winning documentary film.[15] Additionally the founders of TFTPTF, Retired Marine Master Sgt. Jerry Ensminger and Mike Partain, regularly collaborate with members of the news media on topics related to drinking water contamination at Camp Lejeune.[16] Requester VVA is a Congressionally chartered thirty-seven-year-old nonprofit organization with over 75,000 members and 650 local chapters nationwide.[17] VVA's legislative efforts have helped to establish the Vet Center system run by the VA, and led to the passage of legislation assisting veterans with job training and job placement, assisting Agent Orange victims, and permitting veterans to challenge adverse VA decisions in court. Requester VVA-CT represents the chapters of VVA located in the State of Connecticut. Requesters' research based on Records requested will shed light on a process that impacts tens of thousands of veterans who may suffer from disabilities because of exposure to contaminated drinking water at Camp Lejeune, one of two principal Marine Corps bases in the United States, during the period of contamination between 1953 and 1987. The general public is highly interested in this issue. *The Huffington Post*,[18] *WKMG Local 6 Orlando*,[19] *WFLA*,[20] *Time Warner Cable News North Carolina*,[21] among other media sources,

---

[14] THE FEW, THE PROUD, THE FORGOTTEN, http://www.tftptf.com/ (as of December 6, 2015 the site had 565,244 page views); *see also* "Historical Documents," http://www.tftptf.com/9801/index.html.

[15] SEMPER FI (Sundance Institute and Film Festival 2011); *see also* Richard Currey, *'Semper Fi' Documentary on Lejeune Contamination,* VIETNAM VETERANS OF AMERICA BLOG (Apr. 10, 2014).

[16] Prominent television news outlets have featured the advocacy efforts of Ret. MSgt. Ensminger and Mr. Partain. *See, e.g., Rock Center With Brian Williams: Men say their breast cancer was caused by contaminated water at Camp Lejeune* (NBC television broadcast Feb. 22, 2013) (featuring Mr. Partain); *Nightline: Military Base Toxic Water Investigation* (ABC news broadcast Jun. 28, 2012) (featuring Ret. MSgt. Ensminger and Mr. Partain); *Nightly News: Something in the Water* (NBC television broadcast Oct. 8, 2009); *Evening News with Dan Rather: A Few Good Men, A Lot Of Bad Water*. Episode 334 (CBS television broadcast Oct. 16, 2008) (featuring Ret. MSgt. Ensminger). An award-winning documentary, "Semper Fi: Always Faithful" chronicled Ret. MSgt. Ensminger and Mr. Partain's work to educate the public on water contamination at Camp Lejeune. *See* Darryl Fears, *Film Examines Camp Lejeune Tragedy*, WASHINGTON POST (Jan. 22, 2012). Additionally, Ret. MSgt. Ensminger and Mr. Partain have been interviewed by numerous local and national newspaper outlets. *See e.g.*, Manuel Roig-Franzia, *Marines to Probe Pollution Case; Panel to Study How Camp Lejeune Dealt with Water*, WASHINGTON POST (Feb. 21, 2004) (quoting Ret. MSgt. Ensminger); *Marine Base Under Examination,* ASSOCIATED PRESS (Jun. 13, 2007); David Zucchino, *The Few, The Proud, The Stricken,* L.A. TIMES (Aug. 26, 2009) (quoting Ret. MSgt. Ensminger and Mr. Partain); Patricia Kime, *Veterans stung by Mabus comments on Camp Lejeune water,* MILITARY TIMES (Sept. 22, 2015) (same); Elissa Cherney, Thousands *in Florida potential victims of Marine camp contamination,* ORLANDO SENTINEL (Mar. 21, 2015) (quoting Mr. Partain).

[17] VIETNAM VETERANS OF AMERICA, http://www.vva.org/who.html.

[18] Lynne Peeples, *The VA's 'Experts' On Toxic Chemicals May Not Know What They're Talking About*, HUFFINGTON POST (Jul. 30, 2015); Lynne Peeples, *VA May Finally Expand Disability Benefits For Camp Lejeune Veterans,* HUFFINGTON POST (Aug. 4, 2015).

[19] Tara Evans, *Veterans: Are VA experts qualified?: Camp Lejeune veterans question expertise of subject matter expert doctors,* WKMG LOCAL 6 ORLANDO (Jul. 13, 2015).

[20] Mark Douglas, *VA streamlines claims for veterans poisoned by Camp LeJeune water,* WFLA (Aug. 7, 2015).

have recently run stories raising concerns about the VA's program for adjudicating Camp Lejeune Water Contamination Claims.

Fourth, disclosure of the requested Records will "contribute 'significantly' to public understanding of government operations or activities." Namely, it will provide the public with information on how the VA adjudicates Camp Lejeune disability benefits claims. 38 C.F.R. § 1.561(n)(3)(iv). Given that up to one million people were exposed to contaminated drinking water at Camp Lejeune, the VA's use of the SME Program potentially impacts a large veteran population.[22] Despite the scope of the program and repeated requests for transparency by advocates and Congress, the VA has refused to disclose information about the development, operation, and plans for the Camp Lejeune SME Program. The VA has kept the public in the dark about the impact of the VA's decision to retain and consult SMEs on Camp Lejeune Water Contamination Claims and has failed to explain the significant spike in denials since the VA initiated the Camp Lejeune SME Program in 2012.

Requesters have no commercial interest in gaining access to the requested Records. In determining whether disclosure of information is primarily in the commercial interest of a requester, the VA considers "[t]he existence and magnitude of a commercial interest," and, if a commercial interest exists, whether the requester's primary interest in disclosure is commercial. 38 C.F.R. § 1.561(n)(4)(i)-(ii). Requester VVA is a nonprofit membership organization whose primary goal is to assist veterans. Requesters will not make any commercial use of the requested information. Because no commercial interest exists, the Requesters' primary interest in disclosure is not commercial.

Finally, pursuant to the applicable regulations and statute, Requesters expect the determination of this Request for documents within twenty business days. *See* 5 U.S.C. § 552(a)(6)(A)(i). If this Request is denied in whole or in part, Requesters ask that VA justify all deletions by reference to specific exemptions to FOIA. Requesters expect the release of all segregable portions of otherwise exempt material. Requesters reserve the right to appeal a decision to respond without any information.

Should you have any questions in processing this Request, or should you require clarification on the scope of the request, counsel for Requesters can be contacted by mail at the address below or by telephone at (203) 432-4800.

Please furnish all applicable Records to:

Michael J. Wishnie
Director, Jerome N. Frank Legal Services Organization
Veterans Legal Services Clinic

[21] Geoff Bennett, *Senators Press VA on Camp Lejeune Benefits*, TIME WARNER CABLE NEWS CENTRAL NORTH CAROLINA (Sep. 29, 2015).

[22] *Marine Base Under Examination*, ASSOCIATED PRESS (Jun. 13, 2007) ("up to 1 million exposed"); *see also* Darryl Fears, *Film Examines Camp Lejeune Tragedy*, WASHINGTON POST (Jan. 22, 2012) ("The Marine Corps has said it wasn't aware of the contaminants until the mid-1980s and that contacting the 750,000 to 1 million military personnel and civilians who lived at Camp Lejeune during those decades is too large an undertaking.").

Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
michael.wishnie@yale.edu

Thank you for your assistance and prompt attention to this matter.

Sincerely,

Andrea Katz, Law Student Intern
Rory Minnis, Law Student Intern
Joya Sonnenfeldt, Law Student Intern
Sarahi Uribe, Law Student Intern
Bethany Li, Supervising Attorney
Jason Parkin, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization