# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE FEW, THE PROUD, THE FORGOTTEN; VIETNAM VETERANS OF AMERICA; and CONNECTICUT STATE COUNCIL OF VIETNAM VETERANS OF AMERICA, | Civil Action No. 3:16-cv-00647 (VAB) |
| Plaintiffs, | |
| v. | January 27, 2017 |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND REGARDING CAMP LEJEUNE CLAIMS AND THE SUBJECT MATTER
EXPERT PROGRAM ................................................................................................. 2

FACTS AND PROCEEDINGS .................................................................................. 4

STANDARD OF REVIEW ........................................................................................ 8

I.     Defendant Bears the Burden to Establish It Conducted Adequate Searches. .................... 8

II.    Defendant Bears the Burden to Persuade the Court that Non-Disclosure is Proper
Pursuant to Exemption 6. ........................................................................................ 9

III.   Discovery is Appropriate When Agency Affidavits Fail to Establish the Adequacy of
Its Searches. ....................................................................................................... 11

ARGUMENT ........................................................................................................ 11

I.     VBA Has Failed To Prove It Conducted an Adequate Search. ..................................... 11

   A.   VBA Failed to Adequately Describe Its File System. ............................................ 12

      1.   VBA Failed to Explain How Email Archives Are Maintained in the Louisville
      Regional Office. ............................................................................................... 12

      2.   VBA Failed to Detail the File Structure of its Intranet and Network Drives .......... 13

   B.   VBA Did Not Adequately Describe the Search Undertaken of Its File System. ............. 14

      1.   VBA Failed to Adequately Explain How It Determined Which Employees' Emails
      Would Be Searched, Or the Methods of Conducting Such Searches. .......................... 14

      2.   VBA Failed To Adequately Explain Why It Used Certain Search Terms and Not
      Others. ............................................................................................................ 15

   C.   VBA Improperly Narrowed the Scope of its Search Without Justification. .................. 17

      1.   Ms. Brown Mischaracterized Correspondence Between Her and Plaintiffs' Counsel
      as Consent to Narrow the Search. ......................................................................... 17

      2.   The Declarations Inadequately Explain Why Certain Filing Systems Could Not Be
      Searched or Were Chosen Not To Be Searched. ....................................................... 18

II.    Defendant Is Not Entitled to Summary Judgment With Respect to Searches and
Declarations by VHA. ........................................................................................... 18

   D.   VHA's Search Declarations Fail to Adequately Describe the Search Undertaken or Its
   File Systems ....................................................................................................... 19

      1.   The Graham Declaration fails to adequately describe the search performed .......... 19

      2.   The Farer Declaration fails to adequately describe the search performed .............. 20

   E.   VHA's Search Declarations Strongly Suggest that an Insufficient Search was
   Performed .......................................................................................................... 24

      1.   VHA's Search Declarations Facially Suggest That Insufficient Searches Were
      Performed ......................................................................................................... 24

      2.   VHA's Improperly Limited The Scope Of Its Search Into Email Records Of SMEs
      26

   F.   VHA Failed to Provide a Sufficient Affidavit from the Individual or Supervisor
   Responsible for the Search ..................................................................................... 27

III.   Defendant Improperly Characterizes Paragraph 19 of Plaintiffs' FOIA Request as
Unduly Burdensome .............................................................................................. 29

IV.    Defendant Improperly Redacted or Withheld Documents Under FOIA Exemption 6. 31

V.   Discovery is Appropriate Because Defendants' Declarations, Even After Two Rounds of Declarations, Remain Deficient. .......................................................................................... 35

CONCLUSION .......................................................................................................................... 38

## TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ........................................................ 8
*Carney v. Dep't of Justice*, 19 F. 3d 807, 812 (2d Cir. 1994)...................................... 8, 9, 29, 37
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................................................... 8
*Church of Scientology v. IRS*, 792 F.2d 146 (D.C. Cir. 1986)...................................................... 30
*Cowdery, Ecker & Murphy, LLC v. United States Dep't of the Interior*, 511 F. Supp. 2d 215, 219-
   20 (D. Conn. 2007) ................................................................................................................ 35
*Dep't of Air Force v. Rose*, 425 U.S. 352, 371 (1976) ................................................................ 10
*Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) ...................... 31
*Eberg v. Dep't of Defense*, No. 14-cv-01696, --- F. Supp. 3d ---, 2016 WL 3360465 (D. Conn.
   June 16, 2016)................................................................................................................. passim
*El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285 (D. Conn. 2008) ................... passim
*Exxon Corp. v. FTC*, 466 F.Supp. 1088 (D.D.C. 1978)................................................................ 36
*Getman v. NLRB*, 450 F.2d 670 (D.C. Cir. 1971)........................................................................ 11
*Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978)........................................................................... 30
*Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) ........................................ 8, 19
*Irons v. Schuyler*, 465 F. 2d 608 (D.C. Cir. 1972)...................................................................... 31
*LaCedra v. EOUSA*, 317 F.3d 345 (D.C. Cir. 2003) .................................................................. 29
*Lawyers Comm. for Human Rights v. INS*, 721 F. Supp. 552 (S.D.N.Y. 1989) ........................... 35
*Perlman v. Dep't of Justice*, 312 F. 3d 100 (2d Cir. 2002) ..................................................... passim
*Ruotolo v. Department of Justice, Tax Division*, 53 F. 3d 4 (2d Cir. 1995) .......................... 29, 30
*Seife v. Nat'l Inst. of Health*, 874 F. Supp. 2d 248 (S.D.N.Y. 2012)......................................... 33
*Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231 (D. Conn. 2012) ........ passim
*Steinberg v. Dep't of Justice*, 23 F. 3d 548 (D.C. Cir. 1994) .................................................... 12
*Truitt v. Dep't of State*, 897 F. 2d 540 (D.C. Cir. 1990) ........................................................... 29
*Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F.
   Supp. 3d 188 (D. Conn. 2014) ........................................................................................ passim
*Weisberg v. Dep't of Justice*, 627 F. 2d 365 (D.C. Cir. 1980)........................................ 11, 15, 16
*Wood v. FBI*, 432 F.3d 78 (2d Cir. 2005) ............................................................................. 8, 11

iii

## INTRODUCTION

Between 1953 and 1987, over one million Marines, sailors, civilian employees, and military family members stationed at Camp Lejeune unwittingly drank, cooked with, and bathed in poisoned water supplying the base—water which contained a litany of chemicals now known to cause serious diseases. In the decades since the government finally shut down the contaminated water supply, thousands of veterans exposed to these toxins have been trying to obtain compensation from the Department of Veterans Affairs (VA), which is required by law to provide disability benefits to veterans for injuries or disabilities incurred in military service. Yet, the VA overwhelmingly denies Camp Lejeune veterans' claims, citing the reports of a cadre of anonymous VA doctors called "Subject Matter Experts," who have been tasked by the VA as part of a mysterious program to assess the scientific evidence linking veterans' health conditions to the contaminated water they drank. Plaintiffs brought this lawsuit to shed light on this secretive Subject Matter Expert program, seeking documents to explain how Camp Lejeune veterans' claims are evaluated and routinely denied.

Over a year has passed since Plaintiffs first sought documents from the VA about the Subject Matter Expert program under the Freedom of Information Act (FOIA), yet the VA still has not completed its search for records, let alone performed an adequate search for responsive documents. Even after supplying two sets of search declarations and receiving multiple extensions of time during this litigation, the VA has failed to adequately explain the search it supposedly completed. Nevertheless, the VA now moves for partial summary judgment in this action on the basis of search declarations that simply do not prove that the agency conducted a thorough search or adequately explain why information has been withheld.

Plaintiffs ask the Court to reject Defendant's motion for partial summary judgment. Further, in light of the numerous inadequacies of the search declarations, Plaintiffs respectfully request permission to conduct depositions of the Veterans Benefits Administration (VBA) and the Veterans Health Administration (VHA) officials involved in responding to this FOIA request. The VA's inability to fix the obvious deficiencies of its first set of search declarations with a second, still-inadequate set (even after Plaintiffs' informed the VA about those deficiencies) shows that more declarations would be a waste of time in resolving this dispute.

## BACKGROUND REGARDING CAMP LEJEUNE CLAIMS AND THE SUBJECT MATTER EXPERT PROGRAM

The VA is responsible for providing benefits and compensation to veterans who are disabled from injuries or diseases incurred during military service. *See* 38 U.S.C. § 1110 *et seq*. Veterans are only eligible to receive benefits for injuries that the VA determines were connected to their time in service. Def.'s Answer ¶ 6, Jul. 18, 2016, ECF 18. In order to make such a determination, the VA requires medical evidence and documentation to prove a medical link between a veteran's injury and time in service. *Id*.

The Veterans Benefits Administration, a component of the VA, oversees the adjudication of disability benefits claims and delivery of benefits to veterans. Def.'s Local Rule 56(a)(1) Statement, ¶ 7, Dec. 23, 2016, ECF 26 (hereinafter "Def.'s Statement"). The Veterans Health Administration, a component of the VA, provides healthcare to veterans through the administration and operation of VA medical centers and outpatient clinics. *Id*. ¶ 22.

The VA created the Subject Matter Experts (SMEs) program in 2012 specifically to evaluate Camp Lejeune claims, justifying the need for this special program by the complexity of

2

Camp Lejeune toxic exposure claims.[1] The SME program is operated by DMA, a component of VHA. Def.'s Statement, ¶¶ 22-23. SMEs are VA employees located throughout the country who are not employed by any particular VHA office or any particular medical center. *Id*. ¶ 23. SMEs are tasked with conducting reviews of medical records in Camp Lejeune claims and issuing opinions on the medical nexus between the veteran's claimed condition and his or her exposure to Camp Lejeune's contaminated water. Def.'s Answer, ¶ 10. The VA has said publicly that SMEs' medical opinions have "significant influence" over the adjudication of benefits claims, which is managed by VBA. *Id*. ¶12. However, whatever expertise these SMEs might have, it does not appear to be in the field of toxic exposure—in 2014, one SME was caught by an Orlando newspaper copying and pasting from the Wikipedia page on "Liver Cancer" into a report used to deny benefits to a veteran.[2] Since the beginning of the program, the grant rates for Camp Lejeune claims have dropped from 25%, *Id*. ¶ 13, to under 5%[3], which raises further questions about the program.

Although SMEs are ostensibly medical experts regarding the scientific link between a particular medical diagnosis and exposure to toxic water at Camp Lejeune, the VA itself has recently ignored these experts' findings about several diseases. In documents uncovered through this FOIA action, SMEs developed template opinions, to be used in all cases, stating "the

---

[1] *Hearing: Examining the Impact of Exposure to Toxic Chemicals on Veterans and the VA's Response Before the Sen. Comm. On Veterans' Affairs*, 114th Cong., at 1:51:54-1:52:45 (2015), http://www.veterans.senate.gov/hearings/exposures09292015 (Statement of Dr. Ralph Erickson) (noting that the SME program was created in Fall of 2012); *see also* Ex. A, Brad Flohr, *Community Assistance Panel Meeting* 35-36 (Jul. 2012) (announcing that the SME program would begin in September 2012).
[2] Ex. B, Tara Evans, *Veterans: Are VA Experts Qualified?*, CWKMG News 6, Jul. 13, 2014, http://www.clickorlando.com/news/veterans-are-va-experts-qualified/34132172.
[3] Ex. C, Letter Bertha Brown to Michael J. Wishnie, VBA's Final Response to Plaintiffs' FOIA Request, 6, dated Aug. 31, 2016 (noting that out of 41,032 unique claims filed since the inception of the SME program, only 1,963 claims have been granted which is equivalent to a 4.78% grant rate).

environmental studies have not found an association between environmental exposures to chemicals found in CLCW and bladder cancer." Ex. D, Template SME Report for Bladder Cancer Claims (produced to Plaintiffs by VHA). Yet, just 18 months later, the VA announced that bladder cancer, along with several other serious illnesses, including thyroid, renal, prostate, and lung cancer, are presumptively related to the drinking water at Camp Lejeune.[4]

The central figure in the management and operations of the SME program is Mr. Bradley Flohr. Brown Decl. at 2. As Senior Advisor to VBA's compensation division, Mr. Flohr has served since 2010 as the VBA representative on the Camp Lejeune Community Assistance Panel[5], which meets semi-annually to foster collaboration between VA, the Department of Defense, and components of the Center for Disease Control regarding the aftermath of the Camp Lejeune water contamination disaster. At these meetings, questions regarding the SME program and its operation are directed primarily to Mr. Flohr, who responds based upon his personal role in overseeing the program. *See, e.g.* Ex. G, Camp Lejeune Community Assistance Panel Meeting, Jan. 15, 2015, Tr. 32-39.

## FACTS AND PROCEEDINGS

On December 7, 2015, Plaintiffs submitted a FOIA request to VHA and VBA seeking information regarding records related to the operation and impact of the Camp Lejeune SME program, including its development, operation, and effect on veterans' claims. Ex. H, Letter from the Veterans Legal Services Clinic of the Jerome N. Frank Legal Services Organization to VHA and VBA, dated December 7, 2015. In particular, the request sought information about selection

---

[4] Ex. E, U.S. Department of Veterans Affairs: Public Health *Camp Lejeune: Past Water Contamination*, http://www.publichealth.va.gov/exposures/camp-lejeune/.
[5] Ex. F –Camp Lejeune Community Assistance Panel Meeting, Tr. 21, April 29, 2010.

criteria and qualifications for SMEs, *Id.* ¶¶ 2-3; training and guidance materials for SMEs and the VA, *Id.* ¶¶ 1, 7, 10-11; the scientific literature relied upon by SMEs, *Id.* ¶¶ 8-9; the VA's disclosure of SME reports, *Id.* ¶¶ 19-20; and the effect of the SME program on Camp Lejeune claims, *Id.* ¶¶ 13-15. Ten days later, VBA sent a letter confirming receipt of the FOIA request and assigned it a tracking number.

### *Plaintiffs' Counsel Confers with VBA in an Effort to Obtain Responsive Records.*

Def.'s Answer, ¶ 24. On December 17th, VBA FOIA Officer Bertha Brown left Plaintiffs' counsel a voicemail advising that VHA and VBA would respond separately to the FOIA request. *Id.* ¶ 25. Later that day, Plaintiffs' counsel spoke with Ms. Brown, who reported that VBA believed it did not have information responsive to all of the requested items. *Id.*

On February 11, 2016, Plaintiffs' counsel again spoke with Ms. Brown, who stated that the VA Regional Office in Louisville, which handles all Camp Lejeune claims, reported that the documents were "locked" on a server. *Id.* ¶ 26. Ms. Brown did not know whether all of the responsive documents were "locked" or how long it would take for the documents to be "unlocked" and made available for her review. *Id.*

In an email exchange memorializing this telephone call, Plaintiffs' counsel stated "You [Ms. Brown] have indicated that none of the records are in VBA's Washington, DC office," and indicated that "[i]f this is the case, once we have spoken with Louisville and conferred with our clients, we may decide to transfer our request to the Louisville branch." Ex. I, E-mail from Joya Sonnenfeldt to Bertha Brown, Feb. 11, 2016, 10:05 EST. Plaintiffs' counsel further stated that "nothing in our conversation today altered the scope of our clients' request…" *Id.* ¶ 5. Ms. Brown responded by clarifying that "to say there is [sic] no records in Washington DC may be a false statement." Ex. J, E-mail from Bertha Brown to Joya Sonnenfeldt, Feb. 11, 2016, 5:26 EST.

5

On March 9, 2016, counsel for Plaintiffs requested a status update from Ms. Brown. Def.'s Answer, ¶ 27. On March 10, 2016, Ms. Brown responded by email that records had been retrieved and were being batched for review, and that she would continue to update Plaintiffs' counsel regarding the status of the review. *Id.*

### *Plaintiffs' Counsel Confers with VHA in an Effort to Obtain Responsive Records.*

VHA confirmed receipt of Plaintiffs' FOIA request in a letter dated December 8, 2015, also assigning it a tracking number. *Id.* ¶ 29. About a month later, counsel for Plaintiffs spoke by telephone with VHA FOIA Officer Jeff Parrillo, during which they confirmed that Plaintiffs did not wish to narrow the scope of the FOIA request and that they consented to VHA sending responsive documents in batches rather than waiting to send all responsive documents simultaneously. *Id.* ¶ 30.

Another month passed before Plaintiffs' counsel spoke again with Mr. Parrillo, who stated that he had received two disks of responsive documents from VHA but that VHA would not provide any documents responsive to Plaintiffs' FOIA request until April 2016 at the earliest. *Id.* ¶ 31.

On March 9, 2016, counsel for Plaintiffs requested a status update from Mr. Parrillo by email and immediately received an out of office message from Mr. Parrillo's account. *Id.* ¶ 32. Plaintiffs did not receive any further communication from VHA prior to filing this action.

### *After Hearing Nothing Further from VHA or VBA, Plaintiffs File this FOIA Action to Compel the Production of Records.*

On April 27, 2016, Plaintiffs filed this action against the VA. Complaint. In June and again in July, Defendant requested and extension of time to file an answer, finally submitting its answer on July 18, 2016. Def's Answer. On August 26, 2016, after a status conference, the Court set the a briefing schedule, requiring: production of all documents by September 23, 2016, and

production of search declarations and  Vaughn Indices by October 28, 2016. Scheduling Order, Aug. 26, 2016, ECF 23.

By September 23, 2016, Plaintiffs received some responses, including responsive records, from VBA and VHA, each of which contained redactions made pursuant to a claimed exemption under 5 U.S.C. 552(b)(6) ("Exemption 6").

On October 28, 2016, Plaintiffs received search declarations from Ms. Bertha Brown and Mr. Timothy Graham on behalf of VBA and VHA, respectively, as was required by this Court's scheduling order. Exhibit 1 to Def.'s Brief, October 28, 2016 Declaration of Bertha L. Brown ("Brown Decl")'); Exhibit 2 to Def.'s Brief, October 28, 2016 Declaration of Timothy H. Graham ("Graham Decl").

On November 10, 2016, Plaintiffs provided Defendant's counsel with their objections to the search declarations. Ex. K, Email from Rory Minnis to John Larson, (Nov. 10, 2016, 11:45 AM EST). Based on those initial search declarations, Plaintiffs objected to, among other things, the paucity of information about VBA and VHA's file systems and chosen search terms and methods. *Id*. Moreover, Plaintiffs objected to the adequacy of the searches themselves, pointing to the fact that only 18 emails were produced by VHA, even though the request sought emails regarding a five-year-old program employing dozens of people. *Id*.

On December 23, 2016, after having been granted yet another extension of time by the Court, Defendant submitted a motion for partial summary judgment along with a new set of search declarations, this time from Ms. Brown at VBA and Ms. Farer, a FOIA officer at VHA who had not previously been involved in the request. In that motion, Defendant concedes that additional searches are needed to uncover additional responsive documents. Def.'s Brief, p. 8 n.3.

7

## STANDARD OF REVIEW

### I.        Defendant Bears the Burden to Establish It Conducted Adequate Searches.

Summary judgment is inappropriate where the nonmoving party demonstrates that there is a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In a FOIA suit, the defending agency on a motion for summary judgment "has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. Dep't of Justice*, 19 F. 3d 807, 812 (2d Cir. 1994). To prevail on summary judgment when the adequacy of an agency's search is at issue, "the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 205 (D. Conn. 2014) (hereinafter "*VVA*") (quoting *Morley v. CIA*, 514 F. 3d 1108, 1114 (D.C. Cir. 2007) (internal quotations omitted)). A "district court in a FOIA case may grant summary judgement in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (emphasis in original) (internal quotations and citations omitted); *see also Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005); *VVA*, 8 F. Supp. 3d at 201.

To meet this burden, an agency may produce "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed

8

explanations why any withheld documents fall within an exemption." *Carney*, 19 F. 3d at 812. Search affidavits "should provide reasonably detailed information about the scope of the search and the search terms or methods employed . . . and must also aver that all files likely to contain responsive materials . . . were searched." *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 244-45 (D. Conn. 2012) (hereinafter "*SWAN*") (internal quotations omitted). Search declarations describing an adequate search must: (1) describe the files and file systems in sufficient detail to show that further searches are unlikely to disclose additional information, *VVA*, 188 F. Supp. 3d at 206, and (2) sufficiently describe the search terms used and process undertaken, including why certain search terms were chosen and others excluded. *SWAN*, 888 F. Supp. 2d at 245, 249-50.

Agencies must also provide justification for why they did not search additional databases under their control and why certain search terms "were selected or not sleected for search." *Eberg v. Dep't of Defense*, No. 14-cv-01696, --- F. Supp. 3d ---, 2016 WL 3360465, at *8 (D. Conn. June 16, 2016) (Bolden, J.); *see also El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 301 (D. Conn. 2008) ("failure to give detailed justifications for not searching [other] databases . . . falls below the standard for 'relatively detailed and nonconclusory' affidavits required to legitimate a summary judgement ruling").

"Declarations are supposed to allow the Plaintiffs—and the Court—to evaluate the reasonableness of an agency's search." *SWAN*, 888 F. Supp. 2d at 245. Thus, when making a determination as to the adequacy of an agency search, "the Court . . . looks only to the declarations to determine whether they provide enough . . . [so] that the Plaintiffs and Court may evaluate the searches' sufficiency." *Id.*

## II.   Defendant Bears the Burden to Persuade the Court that Non-Disclosure is Proper Pursuant to Exemption 6.

FOIA Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). However, in enacting Exemption 6, Congress did not intend to create "a blanket exemption for personnel files," and "[j]udicial interpretation has uniformly reflected the view that no reason would exist for nondisclosure in the absence of a showing of a clearly unwarranted invasion of privacy." *Dep't of Air Force v. Rose*, 425 U.S. 352, 371 (1976).

As such, Exemption 6 requires courts to balance "the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act – to open agency action to the light of 'public scrutiny.'" *Id.* at 372 (internal citations omitted). The Second Circuit uses a five-factor balancing test when weighing the public and private interests at issue under Exemption 6. *Perlman v. Dep't of Justice*, 312 F. 3d 100, 107 (2d Cir. 2002), *vacated by* 541 U.S. 970 (2004), *reaff'd*, 380 F.3d 110 (2d Cir. 2004). The five factors are: "(1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature." *Id.* These factors are not all-inclusive, nor is any one factor dispositive. *Id.*

FOIA Exemption 6 "does not protect against disclosure every incidental invasion of privacy," but rather only those that constitute "clearly unwarranted" invasions of personal privacy. *Rose*, 425 U.S. at 382. Because the statute only protects against "clearly unwarranted" invasions of privacy, the exemption "instructs the court to tilt the balance in favor of disclosure." *Getman v. NLRB*, 450 F.2d 670, 674 n.11 (D.C. Cir. 1971) (noting that the statutory language was fiercely debated by various agencies and thus represents carefully considered congressional

10

policy favoring disclosure). "The government bears the burden of establishing that any claimed

exemption applies." *Wood v. F.B.I.*, 432 F.3d at 83.

### III.   Discovery is Appropriate When Agency Affidavits Fail to Establish the Adequacy of Its Searches.

Discovery is appropriate, including depositions, when "agency affidavits fail to meet

standards" of an adequate search. *VVA*, 8 F. Supp. 3d at 206, 209 (D. Conn. 2014) (ordering

agency depositions due to agencies' failure to show that they conducted an adequate search)*; see

also Eberg*, 2016 WL 3360465, at *8 (ordering depositions after search declarations were found

to be inadequate and after giving defendant an additional 30 days to hand over any additional

records); *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 306 (D. Conn. 2008)

(Hall, J.) (same); Order Granting Limited Discovery, *Am. Immigration Council v. Dep't of

Homeland Sec.*, No. 3:12-CV-00355-WWE (D. Conn. July 31, 2013, ECF No. 39 (Eginton, J.)

(same); *Unidad Latina En Accion v. Dep't of Homeland Sec.*, No. 3:07-CV-01224-MRK (D.

Conn. Jan. 5, 2009), ECF No. 67 (*"ULA"*) (Kravitz, J.) (same). When "the adequacy of [a]

search remains in doubt," the court becomes "unduly restrictive when it bans further

investigation." *Weisberg v. Dep't of Justice*, 627 F. 2d 365, 371 (D.C. Cir. 1980).

## ARGUMENT

### I.   VBA Has Failed To Prove It Conducted an Adequate Search.

The Veterans Benefits Administration (VBA) does not adequately explain the scope of its

search, its method of searching, or the organization of its file systems in its search declarations.

VBA does not explain why it selected certain search terms and search methods, or why it failed

to include obvious search terms, such as "SME" or "Subject Matter Expert." Brown Decl. II, ¶8-

9. VBA also unjustifiably narrowed the scope of its search to one Regional Office and excluded

Mr. Brad Flohr, the VBA employee most knowledgable about the SME program. Thus, VBA

11

conducted fundamentally inadequate searches not "reasonably calculated to uncover all relevant documents." *Steinberg v. Dep't of Justice*, 23 F. 3d 548, 551 (D.C. Cir. 1994).

### A. VBA Failed to Adequately Describe Its File System.

VBA failed to explain the file system it maintained in sufficient detail for Plaintiffs or the Court to determine whether "any further search seems unlikely to disclose additional relevant information." *El Badrawi*, 563 F. Supp. 2d at 298.

#### 1. VBA Failed to Explain How Email Archives Are Maintained in the Louisiville Regional Office.

VBA has not described in reasonable specificity how and whether Louisville Regional Office employees are expected to archive their emails. Ms. Brown states that email mailboxes are limited to 100mb[6]. Brown Decl. II, ¶ 11.  Ms. Brown did not detail what happens when VBA employees inevitably reach this cap. Further, it strains belief that while "many employees create PST files to archive their emails, which are then stored on an office network" Ms. Brown's search returned only two such PST files, neither of which contained *any emails at all*. Brown Decl. II, ¶ 11. Moreover, Ms. Brown limited her search only to "the VSC network" and "the personal network folders for the AVSCM [Assistant Veterans Service Center Manager] from 2011-12." *Id.* Not only is there no explanation for why Ms. Brown chose to search only these particular folders, it is also unclear why Ms. Brown limited the scope of the email search to the years 2011 and 2012; that time period predates the implementation of the SME program. Without more information about the email archival practices and procedures of VBA employees,

---

[6] For reference, Gmail provides 15GB or 150 times that amount of storage for free. Google, G Suite Administrator Help, https://support.google.com/a/answer/1186436?hl=en.

12

a genuine issue of material fact exists about whether additional searches are likely to return responsive records. *VVA*, 8 F. Supp. 3d at 206.

2. *VBA Failed to Detail the File Structure of its Intranet and Network Drives*

Ms. Brown states that she "manually performed a search of the intranet for training letters or other documents responsive to the request. . . ." Brown Decl. II, ¶ 7. However, she does not elaborate on what a "manual search" entails, nor does she describe the file structure of the "intranet" with sufficient detail to know what exactly she searched. She provides no information about what types of files (either in terms of content or digital format) are kept on the "intranet" nor how they are organized and accessed, i.e. whether it is a shared drive of Microsoft Word or PDF documents accessible to all VA employees or something akin to a "website home page" with resources available only to VBA employees. Moreover, Ms. Brown does not describe whether VBA's Compensation Service maintains a shared drive for documents in addition to the "intranet"—though she describes a "local network" drive in Louisville, it is unclear whether VBA's Compensation Service maintains such a drive or whether it was searched. Brown Decl. II, ¶ 8. Without knowing how VBA's Compensation Service maintains its files, neither Plaintiffs nor the Court are in a position to know whether further searches are likely to uncover additional documents, rendering summary judgment inappropriate. *VVA*, 8 F. Supp. 3d at 206. Therefore, to satisfy its burden, VBA must provide further information regarding the structure of files kept on the VBA Compensation Service's intranet.

Finally, Ms. Brown alludes to various network locations without explaining how the system operates. For example, the AVSCM in Louisville, Kentucky searched his "personal network folder," Brown Decl. II, ¶ 11, yet no mention is made of searches of such folders belonging to the "coaches" to adjudicators whose emails were searched. *Id*. ¶ 10. It is not clear

13

whether those individuals (whose role in the VA is not explained) have such network folders or whether Ms. Brown simply chose not to search them. Regardless, Defendant has not provided sufficient information to determine whether a reasonable search was undertaken.

### B. VBA Did Not Adequately Describe the Search Undertaken of Its File System.

1. *VBA Failed to Adequately Explain How It Determined Which Employees' Emails Would Be Searched, Or the Methods of Conducting Such Searches.*

VBA provides no explanation for how or why it elected to search some employees' emails but not others. Instead, Ms. Brown's declaration merely states that the Assistant Veterans Service Center Manager (AVSCM) in Louisville, Kentucky searched "the email folder where he maintains all of his Camp-Lejeune related correspondence." Brown Decl. II, ¶8. "Coaches" to adjudicators also searched their emails for responsive documents, yet no explanation is provided about who these "coaches" are or why their emails might contain responsive documents. Brown Decl. II, ¶9. Further, if these "coaches" conveyed policy about the adjudication of Camp Lejeune claims, their *sent emails* should also have been searched—and there is no indication they were— to ensure any responsive communications to the adjudicators were captured in the search.

The declaration makes no mention of the method or scope of the search of employee emails. It does not detail whether employees searched their own archived emails, their sent items, or merely their inbox. Brown Decl., ¶ 9. Most email software defaults to searching only the email Inbox, as opposed to sent or achived emails. *See* https://support.office.com/en-US/article/Find-a-message-or-item-with-Instant-Search-69748862-5976-47b9-98e8-ed179f1b9e4d. (explaining that you can change the "scope" of a search, which defaults to the Inbox). It is impossible to evaluate whether the email searches were adequate because the temporal scope of the searches is unknown, nor is it clear whether sent items were included.

14

Brad Flohr is a VBA employee whose communications regarding this program were expressly requested in paragraph 19 of Plaintiffs' request. Ex. H. Yet, his emails were not searched. The parties agree that Mr. Flohr is highly knowledgable about the SME program. Brown Decl., ¶ 6. Indeed, Ms. Brown's first action upon receiving Plaintiffs' request, was to "submit[] an inquiry to Mr. Brad Flohr," explaining in her first declaration that she "wanted to meet with a subject matter expert[7] for the Camp Lejeune [sic] to discuss the FOIA request in detail." *Id*. Yet, despite Mr. Flohr's apparent capacity to decide singlehandedly which parts of the FOIA request VBA would not respond to, Mr. Flohr's emails were not searched. A search cannot be "reasonably calculated to uncover all relevant documents" when the files of the individual both parties recognize as the key overseer of the relevant program are not searched. *Weisberg v. Dep't of Justice,* 705 F. 2d 1344, 1351 (D.C. Cir. 1983).

Without providing more information about how these employees' emails were chosen for searching or how, exactly, that search was performed, Plaintiffs and the Court are not in a position to evaluate whether VBA performed an adequate search. Therefore, a genuine issue of material fact exists and summary judgment is not proper.

    2.  *VBA Failed To Adequately Explain Why It Used Certain Search Terms and Not Others.*

VBA failed to explain why it chose certain search terms and methods, which renders summary judgment improper. *SWAN*, 888 F. Supp. 2d at 249. VBA identifies "CLCW Training," "CLCW," "Training," "Camp Lejeune," "Contaminated Water," "Lejeune," and "Water," as search terms. Brown Decl. II, ¶ 11. However, it does not explain why these terms were chosen or,

---

[7] Ms. Brown's use of the term "subject matter expert" appears not to be in reference to the Subject Matter Expert Program, as Mr. Flohr is not an SME, but rather she appears to be using the plain meaning of those terms, i.e. that Mr. Flohr is an expert in the program itself.

15

more importantly, why terms such as "Subject Matter Expert," or "SME" were not, rendering the search declaration inadequate. *See, e.g.*, *SWAN*, 888 F. Supp. 2d at 249. In *SWAN*, requesters were seeking information related to sexual harassment and assault in the military. The court found a declaration inadequate where it listed search terms such as "Sexual Harassment," "Equal Opportunity," "Domestic Violence," and "Sexual Trauma" but failed to describe why terms such as "Rape," "Indecent Assault," "Domestic Assault," or "Sexual Assault" were not used. *Id.* Here, like in *SWAN*, obvious search terms are excluded without justification, which means the government has failed to carry its burden of proving it conducted an adequate search.

VBA's failure to include the name of the program in question in its search terms is an unreasonable reading of Plaintiffs' request, at best, or willful disregard for the substance and purpose of the Plaintiffs' request, at worst. In either case, VBA cannot assert in good faith that it conducted a search "reasonably calculated to return all responsive records" in accordance with its obligations under FOIA. *Weisberg*, 705 F. 2d at 1351. By having these "coaches" to adjudicators search only for "CLCW," "Training," "Lejeune," and "Water,"[8] the search potentially leaves out documents pertaining to the SME program itself (as opposed to the subject matter to which their alleged "expertise" is relevant). Brown Decl. II, ¶ 11. Similarly, the Assistant Veterans Service Center Manager (AVSCM) searched his or her own email folder only for "Lejeune," "CLCW," "Guidance," "Procedure," and "Process." Brown Decl. II, ¶ 10.  By failing to include at least "Subject Matter Expert" and "SME" as search terms, or, in the alternative, explaining in reasonable detail why they were not included, VBA has not conducted

---

[8] VBA also lists "CLCW Training," "Camp Lejeune," and "Contaminated Water" as search terms, but since these terms contain other search terms, their results are duplicative and add nothing to the scope of the search.

or described an adequate search and is therefore not entitled to summary judgment. *SWAN*, 888
F. Supp. 2d at 249.

### C. VBA Improperly Narrowed the Scope of its Search Without Justification.

#### 1. *Ms. Brown Mischaracterized Correspondence Between Her and Plaintiffs' Counsel as Consent to Narrow the Search.*

Paragraph 19 of Plaintiffs' request seeks internal and external communications
concerning, among other things, the "proposal, development, objectives, and implementation of
the Camp Lejeune SME program," including communications involving several VBA employees
based in Washington DC. Defendant, however, in conducting its search for records improperly
limited its search for such communications to those located at the Louisville Regional Office.
Brown Decl. II, ¶ 18. Defendant justifies this narrowed search based on an alleged conversation
with Plaintiffs' counsel. *Id.* This is a gross misrepresentation of the communications between
Plaintiffs' counsel and Ms. Brown about the scope of the FOIA request.

In an email exchange from February 2016 memorializing a phone conference between
Plaintiffs' counsel and Ms. Brown, Plaintiffs' counsel states, "You [Ms. Brown] have indicated
that none of the records are in VBA's Washington, DC office," and indicates that *"[i]f this is the
case*, once we have spoken with Louisville and conferred with our clients, *we may decide* to
transfer our request to the Louisville branch." Ex. I. Plaintiffs' counsel further stated that
"nothing in our conversation today altered the scope of our clients' request…" *Id.* In response to
this email, Ms. Brown responded clarifying that, because communications with Washington DC
likely exist, "to say there is [sic] no records in Washington DC may be a false statement." Ex. J.

These communications do not represent an agreement by the Plaintiffs that the searches
should be limited to the Louisville office. Further, Ms. Brown does not declare under oath that
there are no documents located in Washington DC, as she had initially represented to Plaintiffs

17

over the phone. Instead, she treats the decision to search only the Regional Office as just that, a
decision made by VBA upon receipt of the request, without justification or explanation.

> 2. *The Declarations Inadequately Explain Why Certain Filing Systems Could
> Not Be Searched or Were Chosen Not To Be Searched.*

VBA's failure to explain why it refused to respond to FOIA request items 1-9, 11, and 16-
18 renders its search declarations deficient and summary judgment improper. Because agencies
are obligated to explain why they searched some databases and not others, it follows that they
must explain why one agency component, as opposed to another, is responding to a certain item
in a FOIA request. *SWAN*, 888 F. Supp. 2d at 245; *El Badrawi*, 583 F. Supp. 2d at 301. Ms.
Brown's declarations' only discussion of the decision is that an in-person meeting was held with
Mr. Brad Flohr, who she considered an expert. Brown Decl., p. 2. Neither Plaintiffs nor the Court
can know whether the searches were adequate without understanding how and why the searches
for responsive documents for requests were divided between VBA and VHA.

## II.    Defendant Is Not Entitled to Summary Judgment With Respect to Searches and Declarations by VHA.

The Veterans Health Administration (VHA) does not adequately explain the scope of its
search, the methods used, or the structure and organization of the file systems searched. First,
VHA failed to explain or justify the rationale underlying its determination that VHA was only
responsible for responding to paragraphs 1 through 9, 11, 16, 17, 18 and parts of paragraphs 19
and 20 of the Plaintiffs' FOIA request. Second, the only VHA searches to produce documents
were conducted by a single anonymous VA employee who did not provide *any information at all*
identifying the specific search terms used. Third, VHA did not explain the structure of the
agency's file system and the reasons why certain locations were searched in lieu of others.
Finally, VHA did not provide a sufficient search declaration completed by the FOIA officer who

carried out or supervised the searches described. Collectively viewed, VHA's search declarations describe an insufficient search completed by an anonymous third party, the veracity of which is sworn to by a FOIA officer not involved with the search in any capacity. VHA has failed to demonstrate "beyond a material doubt" that it conducted a search "reasonably calculated to uncover all relevant documents." *VVA*, 8 F. Supp. 3d at 205. Thus, summary judgment is improper. *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 478.

### D. VHA's Search Declarations Fail to Adequately Describe the Search Undertaken or Its File Systems

#### 1. The Graham Declaration fails to adequately describe the search performed

The Graham Declaration fails to provide a description of the agency's overall file system, the structure or organization of the file systems selected for search. Graham Decl. Agency declarations are required to describe the structure of the agency's file system. *El Badrawi*, 583 F. Supp. 2d at 298. The description of the file system must be sufficient to show that further search is unlikely to disclose additional information. *VVA*, 8 F. Supp. 3d at 206.

The Graham Declaration describe neither the general file system of VHA nor the specific databases searched. Rather, it describes two searches in vague terms. The first search is a "search for all items through the VHA Office of Patient Care Services (PCS) and an office within PCS, Post Deployment Health." Graham Decl. ¶ 4. The second search is described as "a search with the VHA Office of Disability and Medical Assessment who provided all responsive records to this FOIA request," *Id.* ¶ 5, including a search of the "Outlook files for the Office of Disability and Medical Assessment staff responsible for the Camp Lejeune program." *Id.* ¶ 6. The Graham Declaration does not describe VHA's file system, nor does it provide any detail about the databases searched and the files they contain. *SWAN*, 888 F. Supp. 2d at 244-45; *El Badrawi*, 583 F. Supp. 2d at 298.

19

Agency declarations must provide a reasonable description as to why certain terms were selected or not selected for search. *SWAN*, 888 F. Supp. 2d at 249-50; *see also Eberg*, 2016 WL 3360465, at *9 (finding that simply stating search terms used does not suffice to allow the court to gauge the reasonablity of an agency's search). The Graham Declaration provides no search terms at all, and thus fails to provide "reasonably specific" explanations of VHA's searches. *Eberg*, 2016 WL 3360465, at * 9.

Additionally, the language used in the Graham Declaration to describe the searches ("through" PCS, Graham Decl. ¶ 4; "with the Office of Disability and Medical Assessment staff," Graham Decl. ¶ 5) prevents the Plaintiffs and this Court from understanding any meaningful details about who carried out the searches and exactly which databases were searched. Thus the Graham Declaration also fails describe in reasonable detail the methods employed. *SWAN*, 888 F. Supp. 2d at 241 ("[A]n agency affidavit or declaration must describe in reasonable detail the scope of the search and the search terms or methods employed.").

2. *The Farer Declaration fails to adequately describe the search performed*

a. *The Farer Declaration fails to describe the structure of VHA's file system and the databases searched*

The Farer Declaration provides inadequate information on the agency's file structure and the rationale for searching certain locations and not others. Agency declarations "must describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 538 F. Supp. 2d at 298.

The Farer Declaration provides only cursory information regarding the locations searched and no information on what those locations contain nor how they are organized; the only information offered in the declaration is that "electronic records concerning Camp Lejeune disability claims or the SME program are found in one of four places," namely (1) the Camp

20

Lejeune folder on the DMA network drive; (2) the intranet site used by DMA for daily management of the SME program; (3) the network folder used by the DMA employee responsible for management of the SME program and (4) the emails of the DMA employee responsible for management of the SME program. Farer Decl. ¶ 9.  Agency declarations that "do not state what database was searched" and "do not describe what information the database contains" are "insufficiently detailed to show beyond material doubt that the search conducted . . . was adequate." *VVA*, 8 F. Supp. 3d at 212-13. Additionally, an agency must show why certain databases were searched while others were not. *SWAN*, 888 F. Supp. 2d at 248.

The declaration provides no information about the DMA network drive, the types of files stored on it, or how it fits with the greater VHA filing system. The same is true for the "intranet site used by DMA for daily management of the SME program." *Id.* Likewise, the declaration provides no information as to the location of the "network folder" described in item 3 or as to what the search "within the emails" of the DMA employee entailed. *Id.* Additionally, the language of the search declaration is ambiguous. There is no way to tell whether the declaration intends to say that the four listed locations are the only locations within *VHA* containing information related to the SME program, or whether they are the only locations within *DMA's* file storage system (itself a subset of VHA) where such records are stored.[9] *Id.*

> b.   *The Farer Declaration fails to justify limiting the search to the stated locations*

---

[9] The relevant paragraph begins: "DMA does not maintain any paper records and electronic records concerning Camp Lejeune disability claims or the SME program are found in one of four places . . ." (Farer Decl. ¶ 9). From the phrasing, it is unclear what filing system the "four places" is limiting.

The Farer Declaration does not justify limiting VHA's searches to the stated locations. An agency's search declarations must explain why the searched locations were selected and why other databases were not. *SWAN*, 888 F. Supp. 2d at 248. The Farer declaration states that all documents produced by VHA in response to the Plaintiffs' FOIA request were located by a single anonymous DMA employee who oversees the SME program. Farer Decl., ¶ 8. However, the Farer Declaration does not claim that the DMA is the only office within VHA that generates and stores records related to the SME program. No justification is provided for limiting VHA's search to the stated locations at DMA.

Furthermore, as the Farer declaration makes clear, DMA "operates" the SME program, but does not have purview over individual SMEs. SMEs are "VA employees located throughout the country" who are "not employed by one particular VHA office or at any particular medical center." Farer Decl., ¶ 7. In other words, files produced and stored by SMEs are likely located on machines throughout the VHA network. Nevertheless, VHA's searches were inexplicably limited to four locations on DMA's network drive. By failing to "give detailed justifications for not searching [other] databases," the Farer Declaration "falls below the standard for 'relatively detailed and nonconclusory' affidavits required to legitimate a summary judgement ruling." *El Badrawi*, 583 F. Supp. 2d at 301. Thus the Defendant's motion for summary judgment should be denied.

c.  <em>The Farer Declaration fails to adequately explain the methods employed in VHA's search</em>

An agency "must describe in reasonable detail the scope of the search and the search terms or methods employed." *SWAN*, 888 F. Supp. 2d at 241. In describing the search methods used, "the burden is on the defendant to put forth evidence that such methods were adequate and reasonable." *Eberg*, 2016 WL 3360465 at *10. The Farer Declaration fails to meet this burden,

for several reasons. First, the declaration does not provide any detailed information concerning the search terms used. The only explanation given is that the individual searching "reviewed the titles of the various documents" located in the search locations "and to the exent that any of the titles contained words that corresponded to any identified in the plaintiffs' request," the documents were opened "to confirm whether they were responsive." Farer Decl. ¶ 10. The search of unknown email accounts was performed by "key word searches using terms contained in the plaintiffs' FOIA request as well as additional items that DMA in its experience knew were related to the documents or types of documents requested by the plaintiffs. Farer Decl. ¶ 11. By the Defendant's own admission, the individual who performed the searches did not maintain a list of the search terms she used Def.'s Brief 8, n. 2. Thus, the Plaintiffs and this Court are missing crucial information necessary to determine the adequacy of VHA's search. *See El Badrawi*, 583 F. Supp. 2d at 298 ("A reasonably detailed affidavit, setting forth the search terms and the type of search performed . . . is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment") (internal quotations omitted).

In addition to the missing search terms, the Farer Declaration inadequately describes the search methodology used to apply the unknown search terms. The only methodological description given in the Farer Declaration describes "a manual review of the document," during which "DMA reviewed the titles of the various documents" and to the extent those titles matched the unknown search terms, "DMA opened the various documents to confirm whether they were responsive." Farer Decl. ¶ 10. Leaving aside the counterintuitive choice to perform a manual search for documents on an electronic file system, the Farer Declaration does not provide sufficient detail to judge the adequacy of the search performed. The burden is on the agency to

"put forth evidence that such methods were adequate and reasonable," *Eberg*, 2016 WL 3360465, at *10, and an agency "must provide a reasonable explanation as to why it used certain terms or strategies and not others. *Id.* at *12. Defendant has not met this burden, so summary judgment should be denied.

**E. VHA's Search Declarations Strongly Suggest that an Insufficient Search was Performed**

Defendant's search declarations and responses provide evidence that the searches performed were insufficient to satisfy the agency's burden under FOIA. Summary judgment is inappropriate where the sufficiency of the agency's declarations are "called into question by contradictory evidence in the record . . . ." *Eberg*, 2016 WL 3360465, at *6 (internal quotations omitted). Furthermore, "even if an agency has met its burden by submitting . . . relatively detailed and nonconclusory affidavits, the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Id.*

*1. VHA's Search Declarations Facially Suggest That Insufficient Searches Were Performed*

VHA's search declarations strongly suggest that insufficient searches were performed. The Farer Declaration states that all of the documents produced by VHA were located by a single anonymous DMA employee, who is described as the "individual responsible for the SME program." Farer Decl. ¶ 8. It is reasonable to assume that the manager of the SME program is intimately familiar with the program's operation, structure, and file storage system. Yet the records produced by VHA show gaps in the agency's searches.

VHA's searches failed to produce documents responsive to the Plaintiffs' basic structural questions about the SME program, such as the program's policies, procedures and objectives

24

(Ex. H, ¶ 1) and the professional qualifications of the SMEs (Ex. H, ¶ 3). The Farer Declaration states that the locations searched were the only locations at DMA where files about the SME program are stored Farer Decl. ¶ 9. The declaration further represents that the searches were carried out by the individual with sole responsibility over the program, who is best positioned to locate responsive documents. *Id.* ¶ 8 Yet VHA's searches failed to produce even cursory background information on some of the most basic aspects of the SME program, such as any communications regarding the development of the program.

The documents and declarations that VHA produced suggest that the searches performed were haphazard and sloppy, and employed questionable search methodology.  First, the Farer Declaration states that the anonymous DMA employee "conducted a manual review" of the file systems searched. Farer Decl. ¶ 10. However, the declaration does not explain why a manual search was the appropriate methodological choice for troves of electronic records. Furthermore, DMA's "manual" searches consisted of a review of file names only, rather than a manual search of the file contents. An alternative search methodology, such as electronic keyword searches, would search the internal contents of all documents in the search location.  "Declarations are supposed to allow the Plaintiffs—and the Court—to evaluate the reasonableness of an agency's search." *SWAN*, 888 F. Supp. At 245. VHA's declarations fail to meet this burden, and suggest that the search method employed may have been inappropriate to the type of records searched.

Second, there are inconsistencies and large date gaps in the files that VHA produced. For example, VHA produced several PowerPoint files labeled "Weekly Status" reports, which contrast the number of Camp Lejeune disability claims awaiting an opinions against the number of claims which have received one.  Ex. L, Compilation of Status Reports Received. The Weekly Status reports received, and the very name of the report, support a strong inference that these

reports are produced weekly. Yet VHA's search produced files only for the date range July 2, 2014 to November 7, 2014. *Id*. Within that limited range, there are multiple weeks missing, even though the files themselves suggest that reports were issued for the weeks in question. *Id*.

Similarly, despite the language in the Plaintiffs' FOIA request seeking "any and all . . . internal and external communications about the SME Program," Ex. H, ¶ 19, VHA's search produced only excerpts of email chains without any explanation. Ex. M, Compilation of Emails Received from VHA.

The information (or lack thereof) in the declarations themselves and the gaps in the documents received, suggest that VHA's searches were improperly limited and arbitrarily executed. However, the Defendant's declarations provide no record of the search terms used in the searches performed by the anonymous DMA employee, Def.'s Brief at 8, n. 2, no justification for why "manual review" was an appropriate search method for electronic records, Farer Decl. ¶ 10, and insufficient justification for limiting the searches to four locations Farer Decl. ¶ 9. In sum, the record does not support a finding "beyond material doubt" that VHA "conducted a search reasonably calculated to uncover all relevant documents," *VVA*, 8 F. Supp. 3d at 205 (internal quotations omitted). Thus, summary judgment is inappropriate.

2. *VHA's Improperly Limited The Scope Of Its Search Into Email Records Of SMEs*

Item 19 of the the Plaintiffs' FOIA request seeks "[a]ny and all records concerning internal and external communications about the Camp Lejeune SME Program." It goes on to list the names of thirteen VA employees known to be SMEs or to have played a key role in establishing and facilitating the program's functioning. Ex. H, ¶ 19. "When an agency conducts a limited search, it must also explain its reasons for designing or narrowing its search strategy." *Eberg*, 2016 WL 3360465, at *11. Yet inexplicably, the searches undertaken by the anonymous

26

DMA employee were limited to the employee's own email account, and the emails of an individual previously responsible for the SME program. The only justification provided for such limitation is the conclusory statement that "electronic records concerning . . . the SME program are found in one of four places." Farer Decl. ¶ 9.  Conclusory statements do not suffice to justify an agency's limiting or foregoing certain searches, and do not obviate the agency's responsibility to provide a detailed explanation for why it decides not to conduct a search. *Eberg*, 2016 WL 3360465, at *13.

The Farer Declaration clearly states that there have been "various individuals at DMA responsible for oversight of the SME program since its inception." Farer Decl. ¶ 9. VHA's declarations make no attempt to explain why two SME program managers' emails were searched while the email accounts of individuals who were previously responsible for the SME program were excluded. Likewise, VHA provides no justification for why the email accounts of individual SMEs were not searched. Finally, VHA's search declarations do not justify why the email accounts of each of the thirteen individuals named in the Plaintiffs' FOIA request were not searched.  Thus, even on their face, VHA's declarations provide countervailing evidence supporting the inference that the agency performed an insufficient search, making summary judgment inappropriate. *El Badrawi*, 583 F. Supp. 2d at 299.

### F.  VHA Failed to Provide a Sufficient Affidavit from the Individual or Supervisor Responsible for the Search

VHA failed to provide a detailed search declaration prepared by the individual who performed or supervised the search for documents responsive to the Plaintiffs' FOIA request. A successful motion for summary judgment in a FOIA case requires the agency to complete a sufficiently thorough affidavit from either the individual who performed the search or an appropriate supervisor. *See Carney v. Dep't of Justice*, 19 F. 3d 807, 814 (2d. Cir. 1994); *see also*

*SWAN*, 888 F. Supp. 2d at 244 ("Depending on the nature of the seach and the role and experience of the supervisor, some supervisors who did not personally supervise a search may nonetheless learn enough about it to be able to submit a sufficient declaration based on personal knowledge."); However, "[t]he agency employee submitting the affidavit must have some personal involvement in supervising the FOIA search." *El Badrawi,* 583 F. Supp. 2d at 289.

In the instant case, VHA has not provided an adequate search declaration completed by either the individual who performed the search or a supervisor of that individual. Jeffrey Parillo, the VHA FOIA Officer who was assigned to the Plaintiffs' FOIA request and coordinated all search efforts, no longer works for VHA. Graham Decl. ¶ 2. Mr. Parrillo did not complete a search declaration for the Plaintiffs' FOIA request prior to leaving VHA. The Graham Declaration, while completed by a supervisor, is not "reasonably detailed," and provides almost no information on the "scope of the search, and the search terms used or methods employed," as required by law. *Eberg*, 2016 WL 3360465, at *5 (internal quotations omitted). The declaration completed by Carol Farer, the FOIA officer currently assigned to the Plaintiffs' FOIA request, is the most detailed search declaration submitted by VHA, but Carol Farer is not a supervisor, and was not assigned to the file at the time of the searches or production. Farer Decl. ¶¶ 1-2. Because she is not accountable for the search she swore to in her affidavit, nor is she able to take responsibility for the search in a supervisory capacity, Ms.Farer is not qualified to complete a search declaration on behalf of VHA. Accountability is particularly important in this case, because of how attenuated the chain of responsibility is. The searches that produced all of the responsible documents were performed by an anonymous individual who does not work in VHA's FOIA office Farer Decl. ¶¶ 8-11, were coordinated by a FOIA officer who no longer

works for VHA Graham Decl. ¶ 2, and were sworn to by a non-supervisor who was not assigned to the case at the time of the search. Farer Decl. ¶¶ 1-2.

### III.    Defendant Improperly Characterizes Paragraph 19 of Plaintiffs' FOIA Request as Unduly Burdensome

Plaintiffs' FOIA request reasonably describes the requested records, particularly when taken together with the Defendant's obligation to construe FOIA requests "liberally," even if the requests are not clear. *LaCedra v. EOUSA*, 317 F.3d 345, 348 (D.C. Cir. 2003). Once it becomes "reasonably clear" to an agency what materials are desired, the agency has an obligation to produce those materials. *Truitt v. Dep't of State*, 897 F. 2d 540, 544 (D.C. Cir. 1990).

Defendant asserts that the SME program is so small and limited that it is not worth searching the Washington DC offices of VBA or any files outside the provenance of a single employee within DMA. Brown Decl. II, ¶ 11; Farer Decl., ¶¶ 8-11. Yet when Plaintiff seeks communications about the development of the program, suddenly, the program has grown exponentially in size. Def.'s Brief, 10 (suggesting a search for emails regarding the SME program would require the search of all 340,000 VA employees).

VA also has a duty to assist Plaintiffs "in reformulating their request if it was thought that the request needed to be narrowed." *Ruotolo v. Department of Justice, Tax Division*, 53 F. 3d 4, 10 (2d Cir. 1995). At no point in the year since the request was made has the VA sought to assist Plaintiffs in reformulating their request or otherwise indicated that it was not reasonably detailed. While Plaintiffs maintain that their request is reasonably detailed and not unduly burdensome, Defendant cannot assert now in a summary judgment motion, for the first time, that the request is not reasonably detailed.

Further, Plaintiffs' request is not unduly burdensome because it does not seek records from the entirety of the VA. Since the SME program is a specialized program within the agency,

searches of most employees are not likely to recover responsive records. Moreover, if Mr. Flohr was sufficiently well-informed to singlehandedly divide up the requested items between VBA and VHA, Brown Decl., p. 2, surely he could have assisted with identifying individuals likely to be in possession of responsive records. According to VA's *own FOIA handbook*, a request is "Reasonably Described" if "it enables a professional employee who is familiar with the subject matter to locate the record in a reasonable period of time." Ex. N, VA Handbook 6300.3 (9)(e), Procedures for Implementing the Freedom of Information Act (1998). Given that Mr. Flohr has been identified as the person familiar with the subject matter at VBA, he should be able to identify which VA employees' emails are likely to contain responsive records.

Finally, Defendant's recitation of cases cited in *Ruotolo* is not only inapposite because of the categorical difference in scope of the request, but also because of technological advances made since the mid-1990s when *Ruotolo* was decided. The cases Defendant refers to involve courts holding that manual searches of thousands of records *by hand* were unreasonable in the 1970s and 1980s. *See Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978) (finding "a page-by-page search through the 84,000 cubic feet of documents in the [CIA] Records Center" to be unduly burdensome); *Church of Scientology v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986) (finding a "search through every [paper] file in [the IRS'] possession to see if a reference to Scientology appeared" was unduly burdensome); *Irons v. Schuyler*, 465 F. 2d 608 (D.C. Cir. 1972) (finding a "search of 3,500,000 files of patents" as well as "well over a million other files" unduly burdensome). Not only is Plaintiffs' scope narrower for the reasons mentioned above, computers and digital records allow for the keyword searching of thousands of emails at a time with relative ease. Therefore, Defendant is not justified in asserting archaic standards of search reasonability to avoid typing a few search terms into a few, readily identifiable employees' email search bars.

IV.     **Defendant Improperly Redacted or Withheld Documents Under FOIA Exemption 6.**

VHA has asserted an overbroad application of Exemption 6 by redacting every name that appears throughout its production. Farer Decl., ¶ 13. VHA states that these were the "names and identifying details of individuals working on a specific task force in a specific area." *Id.* VHA has not indicated what task force these individuals serve on, though context suggests Ms. Farer is referring to the SME program. This withholding is unacceptable and the government has not carried its burden to prove that the disclosure of these names is a "clearly unwarranted" invasion of privacy. 5 U.S.C. § 552(b)(6).

The Court must weigh any potential invasion of privacy against the public interest in the information sought. *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989). The public has a cognizable and significant interest in the qualifications of the SMEs because the information would "open agency action to the light of public scrutiny." The qualifications of the SMEs are at the very heart of the public interest advanced by Plaintiffs' FOIA request. The functioning of program in question is dependent upon these individuals' unique expertise in fields related to toxic exposure. SMEs draw upon their purported medical expertise, subject-matter training, and epidemiological background to review the veterans' claims and issue an opinion, which is often outcome-determinative.[10] Yet, there is reason to believe these individuals have no such expertise. Therefore, there is a significant and identifiable public interest in the SMEs qualifications and names.

---

[10] Emails unearthed through this FOIA request show that claims adjudicators were instructed to "make[] the grant or denial decision in accordance with the SME opinion and reference[] that opinion appropriately." Ex. O, E-mail from Robert E. Clay (Sep. 18, 2014, 09:16AM EST(?)).

The government has completely ignored the public's interest in the qualifications of the SMEs, instead focusing solely on the issue of the disclosure of their names. Def.'s Brief, 13. To the extent the government believes the names and the qualifications of the SMEs to be inextricably linked, this proves Plaintiffs' point: The information requested in item 3 would therefore reveal how the SME program operates, enabling the public to scrutinize the agency's actions.

The Second Circuit's five-factor test, set out in *Perlman*, clearly weighs in favor of disclosure of the SMEs qualifications and names. Each of the five factors, "(1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature," argue for disclosure. *Perlman*, 312 F.3d at 107.

The employees' rank, the first *Perlman* factor, weighs in favor of disclosure. *Id.* Despite the government's assertions, SMEs are not "simply line VA employees." Def.'s Brief 13. Rather, as discussed above, claims adjudicators give SMEs' judgments "have significant influence" in determining the allocation of benefits to veterans. Def.'s Answer, ¶ 12. According to documents acquired through this FOIA request, SMEs evaluate an average of 5,000 claims each year. Ex. C, VBA Response to FOIA Request, p. 6. In each case, claims adjudicators have been instructed to "make[] the grant or denial decision in accordance with the SME opinion." Ex. O, E-mail from Robert E. Clay, (Sep. 18, 2014, 09:16AM EST). As a result, SMEs are the *de facto* arbiters of thousands of veterans' benefits claims each year. Each of these claims can be worth tens of thousands of dollars per year. Ex. P, VA, Veterans Compensation Benefits Rate Tables. The authority given to SMEs thus indicates that they are treated as relatively high-ranking employees

within VMA. *See Seife v. Nat'l Inst. of Health*, 874 F. Supp. 2d 248, 258 (S.D.N.Y. 2012) (holding that FOIA requires the National Institute of Health to disclose information about low-level employees because they are "'essential' to the agency's operations" and play a "critical role within each [agency] committee"). Therefore, the first *Perlman* factor, the employee's rank, argues in favor of disclosure and against granting summary judgment. *Perlman*, 312 F.3d at 107.

There is strong evidence of a significant "degree of wrongdoing" on the part of the administrators of the SME program and the SMEs themselves. *Perlman*, 312 F.3d at 107. For being so-called "Subject Matter Experts," evidence suggests a shocking lack of expertise in the relevant subject matter on the part of SMEs.  What little is known about the SME program suggests fundamental flaws in VA's criteria for selecting SMEs, and the SMEs' methodology, training, and expertise. In 2014, an Orlando newspaper published a story of one SME who copied and pasted a Wikipedia entry on liver cancer into his report, which VA subsequently relied on to deny disability benefits. Ex. B. According to the same article, VA denied a different Camp Lejeune veteran's claim based on a report by another SME who had no medical board certifications. *Id.* Additionally, a former VA claims adjudicator has confirmed that some SMEs do not have experience diagnosing cancer, let alone evaluating its cause. *Id.* Despite VA's secrecy regarding the SME program, there is substantial evidence to suggest it is both mismanaged and comprised of individuals lacking in the requisite qualifications to justify its existence. Therefore, the second *Perlman* factor weighs in favor of disclosure.

The third *Perlman* factor, whether there are other ways to access the information, also cuts in favor of disclosure. It is unclear whether veterans are always able to access their SME reports or whether names of SMEs are made available on those reports. Ex. Q, Camp Lejeune Community Assistance Panel Meeting, Tr. 151 (Aug. 11, 2016).  Moreover, information about

33

names does not answer the more central question in this case—whether the SMEs are qualified to review Camp Lejeune veterans' medical reports. This information is not obtainable elsewhere. Therefore, this information should be disclosed and summary judgment should not be granted. *Perlman*, 312 F.3d at 107.

The fourth *Perlman* factor, the extent to which this disclosure would shed light on a government activity, weighs in the Plaintiffs' favor. The government is operating a program that denies thousands of veterans disability benefits each year and justifies these denials with the "expert" opinions of these SMEs. Ex. C, VBA Response to FOIA Request, p. 6; E-mail from Robert E. Clay, (Sept. 18, 2014, 09:16AM EST). The qualifications of SMEs is at the heart of whether this program contributes to the accurate adjudication of these claims or whether it merely adds another bureaucratic vehicle by which to slow or deny veterans access to benefits.

The fifth and final *Perlman* factor, whether the disclosure is related to the employees' job function, clearly argues for the disclosure of the SMEs qualifications and names, even by the Department of Justice's own guidance. The SMEs' qualifications and names are inherently related to their capacity to perform their professional duties. According to the American Board of Medical Specialties, "being licensed [to practice medicine] does not indicate whether a doctor is qualified to practice in a specific medical specialty, such as family medicine, surgery, or dermatology." American Board of Medical Specialties, About Board Certified Doctors, http://www.certificationmatters.org/about-board-certified-doctors/about-board-certification.aspx. Since the job function of SMEs is to deploy their expertise in areas of occupational and environmental medicine, their qualifications are inherently related to their job function. Therefore, this information is not protected under Exemption 6. *Cowdery, Ecker & Murphy, LLC v. United States Dep't of the Interior*, 511 F. Supp. 2d 215, 219-20 (D. Conn. 2007).

34

Indeed, the Department of Justice's *own policy* is to "release . . . information in personnel files . . . pertaining to the professional qualifications of federal employees." FOIA Update, Vol. III, No. 4, at 3 ("Privacy Protection Considerations," attached as Ex. R) (cited in Dep't of Justice Guide ot the Freedom of Information Act: Exemption 6, at 7 (2013); *see also Lawyers Comm. for Human Rights v. INS*, 721 F. Supp. 552, 563 (S.D.N.Y. 1989) ("Exemption 6 does not protect information regarding professional relationships or materials associating a person with an agency's business."). This information "includes post-graduate or technical education in preparation for the employee's professions" and "prior employment in the private sector related to an employee's duties." FOIA Update, Vol. III, No. 4, at 3. Disclosure of this information "would cause but a slight infringement of their privacy" that is substantially outweighed by the public's "interest in the competence of people [VA] employs." *Id.* Therefore, in light of the fact that SMEs qualifications are inherently related to their job function, and that it is the policy of the Department of Justice to release such information, the fifth *Perlman* factor weighs in favor of disclosure. *Perlman*, 312 F.3d at 107.

Finally, the burden of tilting the scales in favor of non-disclosure rests with the government. *Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("The defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA"). Any doubts about the applicability of Exemption 6 should be resolved in favor of requiring disclosure. *Halpern v. FBI*, 181 F.3d 279, 287 (2d Cir. 1999).

## V.   Discovery is Appropriate Because Defendants' Declarations, Even After Two Rounds of Declarations, Remain Deficient.

Discovery from VBA and VHA, including depositions, is appropriate because their declarations have failed not once, but twice, to adequately describe the government's search. *Halpern*, 181 F.3d at 295. Courts routinely grant depositions in FOIA cases where agencies have

35

produced inadequate search declarations. *see, e.g.*, *Eberg v. Dep't of Defense*, No. 14-cv-01696, --- F. Supp. 3d ---, 2016 WL 3360465 (D. Conn. June 16, 2016) (Bolden, J.) (ordering depositions after multiple sets of search declarations were found to be inadequate); *VVA*, 8 F. Supp. 3d at 206, 209 (ordering six agency depositions due to agencies' failure to show that they conducted an adequate search after only one round of search declarations); *El Badrawi*, 583 F. Supp. 2d at 306 (ordering depositions from declarants and an agency employee with knowledge of the files after multiple rounds of requests failed to yield an adequate search).

The dearth of information about VBA and VHA's searches "raises serious doubts as to the completeness of the agency's search," rendering discovery "particularly appropriate." *Exxon Corp. v. FTC*, 466 F.Supp. 1088, 1094 (D.D.C. 1978); *see also Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C.Cir. 1980) ("[T]he court becomes unduly restrictive when it bans further investigation while the adequacy of the search remains in doubt"). The deficiencies range from the government's puzzling omission of the search term "Subject Matter Expert" to a lack of any information about what criteria was used to assign items to VBA as opposed to VHA. The governments inability to adequately answer even the most basic of questions about its search—after two separate attempts over the course of a year—makes depositions appropriate in this case.

Defendants' broad and conclusory search declarations fail to meet the "reasonably detailed" standard and so are not afforded the "good faith presumption." *Halpern*, 181 F.3d at 295. Despite two rounds of declarations, VBA and VHA have not "describe[d] in reasonable detail the scope of the search and the search terms or methods used." The search declarations' paucity of detail both demonstrates the inadequacy of the search and prevents Plaintiffs from "disput[ing] [Defendants'] assertion that any further search is unlikely to disclose additional information." *El Badrawi*, 583 F. Supp. 2d at 308. Allowing limited discovery would enable

Plaintiffs to directly address the deficiencies of VBA's and VHA's search declarations, and avoid further delay courtesy of additional inefficient rounds of declarations.

Plaintiffs respectfully request leave to depose all "agency employees who submitted affidavits on behalf of the agencies, or substitute employees of similar responsibility in the event the declarants are no longer employed by the agency." *El Badrawi*, 583 F. Supp. 2d at 301, 321. In addition, Plaintiffs request leave to depose Bradley Flohr, Senior Advisor, Compensation Service at VBA. Mr. Flohr is intimately involved with the SME Program at all levels and is in the best position to address the insufficiency of VBA's and VHA's search. *See El Badrawi*, 583 F. Supp.2d at 322 (granting plaintiffs' request to depose "the one [agency] employee most knowledgeable about the whereabouts" of a missing file). In fact, Ms. Brown herself identified Mr. Flohr as the key individual in determining which aspects of the request would be handled by VHA and VBA. Brown Decl. II, ¶ 6 (stating that Ms. Brown contacted Mr. Flohr upon receiving Plaintiffs' request because she "wanted to meet with a subject matter expert for the Camp Lejeune [sic] to discuss the FOIA request in detail."). Mr. Flohr has repeatedly been asked for information about the SME program from the Camp Lejeunne veterans community, yet has provided inconsistent and evasive answers to even the most basic questions. *Compare* Exhibit S, Camp Lejeune Community Assistance Panel Meeting, Tr. 73 (Dec. 2015) (stating that he was sure a particular scientific article was included in the bibliography of studies reviewed by SMEs) *with* Exhibit T, Camp Lejeune Community Assistance Panel Meeting, Tr. 17 (Mar. 2016) ("I don't know if there's a bibliography"). Therefore, Mr. Flohr should be required to give oral, as opposed to written testimony to ensure efficient disclosure of the relevant information. Given his deep knowledge of and involvement with the SME program, Mr. Flohr's testimony is indispensable to ascertaining the adequacy of VBA's and VHA's search.

***

In the year since the VA first received Plaintiffs' FOIA request, five thousand sick and disabled veterans will have had their claims reviewed and essentially determined by an SME. The vast majority of these claims will be denied based on the scientific findings of a seemingly unqualified group of so-called "experts." VBA and VHA have had the benefit of multiple extensions and two opportunities to adequately describe their searches, but the Camp Lejeune veterans community simply cannot wait any longer to uncover the truth about the program the governs what little opportunity for justice they have left.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendant's motion for partial summary judgment and order the deposition of those individuals who have supplied search declarations and Mr. Brad Flohr.


Dated: January 27, 2017
New Haven, CT

                                   Respectfully submitted,


                                   By:  /s/  Aaron P. Wenzloff

                                   Rory M. Minnis, Law Student Intern
                                   Helen E. White, Law Student Intern
                                   Aaron P. Wenzloff, Supervising Attorney (ct 28616)
                                   Veterans Legal Services Clinic
                                   Jerome N. Frank Legal Services Organization
                                   P.O. Box 209090
                                   New Haven, CT 06520-9090
                                   aaron.wenzloff@ylsclinics.org
                                   (203) 432-4800

38

CERTIFICATION OF SERVICE

I hereby certify that on January 27, 2017, the foregoing Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated:  January 27, 2017

New Haven, CT

*/s/ Aaron P. Wenzloff*

Aaron P Wenzloff, ct28616