# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE FEW, THE PROUD, THE FORGOTTEN, et al., <br>    Plaintiffs, | : <br> : <br> : <br> : | Case No. 3:16-cv-647(VAB) |
| v. | : <br> : | |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, <br>    Defendant. | : <br> : <br> : | February 10, 2017 |

## REPLY TO PLAINTIFFS' OPPOSITION
## TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(e), the defendant hereby replies to the plaintiffs' January 27, 2017 opposition to the defendant's motion for partial summary judgment. As set forth in greater detail below, the plaintiffs in several cases misconstrue the nature of the declarations offered in support of the defendant's motion and then use those misconstructions to argue that they are entitled to additional information regarding the defendant's search for the requested documents. While the case law requires that search declarations contain "reasonable specificity," the plaintiffs' opposition instead demands unreasonably detailed search declarations to fill purported gaps that are not left in the declarations that have been filed.

Moreover, the plaintiffs fail to properly apply governing Second Circuit law balancing employees' privacy interests in their names and other information identifying them with the limited public interest in the same information, and the plaintiffs' argument in opposition to the defendant's Exemption 6 redactions therefore is unavailing.

Finally, to the extent that the court agrees that the defendant's search declarations do not conclusively establish the reasonableness of the searches performed, the plaintiffs claim they are entitled to depositions of several VA employees, one of whom did not even submit a search declaration in this case. Because the court has wide discretion in ordering discovery upon the denial of a motion for summary judgment in a FOIA case, and because of the fact-intensive nature of both the searches in question and the court's determination as to the adequacy of those searches, the defendant respectfully urges the court to accept supplemental filings after the court issues its decision, if necessary, to assist the court in exercising that discretion in a manner useful to the parties and consistent with applicable case law.

**I.     The Defendant's Search Declarations are Reasonably Detailed and Show a Good-Faith Effort to Conduct a Search Reasonably Calculated to Uncover the Requested Documents**

At the outset, the plaintiffs contend that the declarations fail to explain "why the searches for responsive documents were divided between VBA and VHA." (Opp., 18.) The plaintiffs are wrong. Contrary to the plaintiffs' argument that the declarations do not explain the reasoning behind dividing the VA's response between VBA and VHA, the declarations adequately explain the role of each VA component: VBA is responsible for documents on the claim/adjudication side (Brown Decl. II, ¶5), and VHA is responsible for providing medical expertise to VBA in connection with such adjudications, including management of the SME program (Farer Decl., ¶6.).

With those roles in mind, and considering the plaintiffs' requests, it is obvious that the division of labor was appropriate. On one hand, VBA was responsible for those

requests that involved documents provided to adjudicators, documents concerning claim adjudication, documents concerning the Advisory Committee on Disability Compensation, and communications involving VBA employees.  On the other hand, VHA was responsible for the remaining requests, which sought documents concerning the SME program itself.  This division properly reflects the work of each component and the types of records that each keeps.  As such, the declarations reasonably justify the allocation of the plaintiffs' requests to VBA and VHA.

    A.    <u>VBA</u>

With respect to the searches performed by VBA, the plaintiffs claim purported issues with the defendant's declarations, and in so doing, the plaintiffs attempt to create doubt in the declarations where there is none.  For instance, the plaintiffs claim that VBA limited its search for documents provided to claims adjudicators to the years 2011 and 2012.  (Opp., 12.)  That simply is not what the declaration says.  Rather, the declaration provides that in searching for such documents, the Assistant Veterans Service Center Manager and "coaches" (or supervisors) searched their emails using a variety of search terms (Brown. Decl. II ¶¶9-10.)  In addition, to try to search any emails for individuals no longer working at the Regional Office, VBA looked for archived emails across the Louisville network, including in the folder used by the AVSCM in 2011-2012.  (<u>Id.</u>, ¶11.)

Additionally, the plaintiffs raise an issue concerning the search terms referenced above, arguing that for the search to be adequate, the search must also have included "SME" or "subject matter experts."  (Opp., 15.)  The plaintiffs again misconstrue the scope of the agency's search.  The key words selected by the agency in conducting the

search were obviously extremely broad and encompass any records concerning Camp Lejeune claims, not just those that involved the SME program. As such, it is apparent that any relevant guidance documents that would have been retrieved by conducting a search for "SME" also would have been obtained by using the key words that were selected. The agency therefore acted in good faith in selecting the key words in question and conducted a search reasonably calculated to locate the relevant documents.

Finally, the plaintiffs also incorrectly claim that VBA narrowed the scope of its search.[1] (Opp., 17-18.) Contrary to the plaintiffs' argument, VBA did not narrow anything; instead, VBA simply sought to conduct a search for documents in the places that it reasonably believed they would be located. Specifically, Ms. Brown searched for certain documents available on the intranet site for Compensation Service, which she knew from her experience would contain certain guidance documents responsive to the plaintiffs' requests. (Brown Decl. II, ¶7.) That said, because the employees responsible for adjudication of Camp Lejeune-related disability claims are located in the Louisville Regional Office, Ms. Brown also knew that a sizable portion of the relevant documents would only be in the files (and on the servers) of that office, so she directed a portion of the search there. (Id., ¶8.)

The defendant has offered search declarations that explain the thought process behind the searches that VBA conducted in response to the plaintiffs' requests, explain the files maintained by VBA and why various locations would reasonably be thought to

---

[1] To the extent that the plaintiffs' argument implicates a search for emails sought by request 19, the defendant already has indicated that additional searching on this request is required.

contain responsive records, and explain the nature of the searches themselves. They are offered in good faith, they are reasonably specific, and they establish that the searches performed were reasonably calculated to discovery relevant documents.

    B.    <u>VHA</u>

With respect to the searches performed by VHA, the plaintiffs similarly claim that the Farer Declaration[2] does not adequately describe the file system searched. (Opp., 20-21.) Contrary to the plaintiffs' argument, VHA's declarations plainly state the reasoning behind the decision to search in the locations that were searched by establishing the fact that DMA is the office within VHA that is responsible for management of the SME program and by further establishing the structure of the SME-related files maintained within that Office. (Farer Decl., ¶6, 9.) As with VBA, VHA did nothing to artificially limit the search in question; rather, VHA identified in good faith the location where SME program documents would be kept (that is, in the office where the program is managed) and conducted a search for such documents in that location.

The plaintiffs' argument that the <u>results</u> of the search prove that the search was inadequate similarly is unavailing. (Opp., 24-25.) Indeed, the Second Circuit has held that where "a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually

---

[2]The plaintiffs also claim that the Farer Declaration is inadequate because Ms. Farer was not the FOIA Officer responsible for the search and is not a supervisor. (Opp., 27-28.) In an abundance of caution, the defendant also offers the Declaration of Stephania Griffin – a VHA supervisor – in support of its motion.

uncovered every document extant." Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999). Consequently, that the plaintiffs believe that additional documents should have been discovered does not refute the reasonableness of the search where, as here, the defendant is able to offer reasonably specific declarations proving that the searches in question were reasonably calculated to uncover the requested documents. That standard makes sense, of course, because the Second Circuit also has "made clear that an agency's search need not be perfect, but rather need only be reasonable." Id.

## II.    Portions of Request 19 Plainly Require an Unduly Burdensome Search

The plaintiffs next argue that portions of Request 19 did not call for an unreasonably burdensome search because they claim that the request does not encompass the agency as a whole. (Opp., 29.) While the plaintiffs are correct that Request 19 seeks records concerning the SME program, contrary to the plaintiffs' assertion, portions of that request explicitly seek records of communications "between VA employees." In other words, in order to search for the records requested, the defendant would have had to either search the communications of all VA employees or unilaterally make a determination as to which individual employees would have their emails searched. The former is unduly burdensome, and the latter surely would have been objected to by the plaintiffs. Where the plaintiffs are requesting "any and all records concerning internal and external communications" to which a VA employee is a party, their request is overbroad as a matter of law.

Nevertheless, the plaintiffs also argue that the agency should assist them in reformulating their request. (Opp. 29.) And while they cite case law for support in

6

which the court refers to regulations concerning the Department of Justice and therefore should not be read to preclude summary judgment in a case involving the VA, it is apparent from the plaintiffs' argument that the agency and the plaintiffs are not on the same page regarding what search the plaintiffs actually were asking the VA to perform. Consequently, and since the defendant has already committed to conducting a supplemental search with respect to certain communications, the defendant believes that parties should endeavor to reach an understanding on the scope of the plaintiffs' request.

### III. Plaintiffs Apply the Wrong Standard and Overstate the Public Interest in the Redacted Employees' Names

In arguing that the defendant's redactions of employee names are not authorized under Exemption 6, the plaintiffs both apply the wrong standard and then overstate the public interest at issue, leading to the erroneous conclusion that the redactions at issue in this case were not justified.

First, the plaintiffs claim that the five-factor test in Perlman v. Dep't of Justice, 312 F.3d 100, 107 (2d Cir. 2002) governs the defendant's redactions.  (Opp., 10)  In that case, however, the court was confronted with claims pursuant to both Exemptions 6 and 7(C) and ultimately concluded that "[b]ecause both exemptions are implicated here, we apply the stricter 7(C) evaluation of privacy interests."  Perlman, 312 F.3d at 106.  As such, the plaintiffs' application of the five Perlman factors (Opp., 32-35) has no bearing on the court's adjudication of the defendant's redactions in this case.

In the end, although the plaintiffs might argue that their application of a stricter standard rendered any error harmless, it appears that their mistake prevented them from confronting the analysis in Long v. Office of Pers. Mgmt., 692 F.3d 185 (2d Cir. 2012),

7

discussed in the defendant's memorandum in support of its motion.  In Long, as in this case, the agency withheld the names of employees under Exemption 6, and after conducting the requisite balancing test, the court in that case concluded that the privacy interests of the relevant employees outweighed the limited public interest in the disclosure of the names of those employees.  Id. at 193-94.

In this case, in an attempt to buttress their public interest claim, the plaintiffs conflate the purported public interest in assessing the qualifications of subject matter experts and the purported public interest in knowing the names of the various VA employees serving as subject matter experts or participating in the adjudication of disability benefits claims.  (Opp., 31.)  While the former might tell the plaintiffs something about the operation of the SME program (though depending on the level of detail provided about a specific individual, it may not be enough to override the privacy interest at issue), the latter does not.  See Long, 692 F.3d at 193 ("In many contexts, federal courts have observed that disclosure of individual employee names tells nothing about what the government is up to" (internal quotation marks omitted)).[3]

In sum, VA employees working in this area have a privacy interest in their names and in other identifying details, and the public has little-to-no interest in the same. Consequently, the defendant here has properly invoked Exemption 6 to redact "names

---

[3]The public interest in the identities of VA employees who worked on these matters in the past also is limited by the prospective change in the way that the VA will adjudicate disability claims filed by those who served at Camp Lejeune.  See 82 FR 4173 (Jan. 13, 2017) (final rule amending adjudication regulations regarding presumptive service connection for "certain diseases associated with contaminants present in the base water supply at U.S. Marine Corps Base Camp Lejeune (Camp Lejeune), North Carolina, from August 1, 1953, to December 31, 1987").

and identifying details" of various agency employees because of the contentious nature of their roles and the elevated risk of harassment of those individuals as a result of their work.  (Brown Decl. II, ¶21; Farer Decl., ¶13.)

IV.  **The Court Should Take Supplemental Submissions as to the Requested Discovery if it Denies the Defendant's Motion**

In terms of a remedy in the event that the court denies the defendant's motion, the plaintiffs request leave to depose those agency employees who have submitted declarations in this case (or, apparently, substitutes if the declarants are no longer with the agency) as well as a VBA employee – Brad Flohr – who did not submit a declaration.  (Opp., 37.)

The court "has broad discretion to manage the scope of discovery in FOIA cases"; Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation marks omitted).

> If agency affidavits fail to meet standards, a district court will have a number of options for eliciting further detail from the government. It may require supplemental affidavits or may permit appellant further discovery. When the courts have permitted discovery in FOIA cases, it is generally limited to the scope of the agency's search.

Eberg v. U.S. Dep't of Def., 193 F. Supp. 3d 95, 118 (D. Conn. 2016).[4]

---

[4] With respect to the limited scope of discovery, courts have been cautious to avoid allowing a FOIA "plaintiff to use this limited discovery opportunity as a fishing expedition into government waters for the purpose of investigating matters related to separate lawsuits."  Tannehill v. Dep't of Air Force, No. CIV. A. 87-1335, 1987 WL 25657, at *2 (D.D.C. Nov. 12, 1987).  The court should be similarly skeptical of the plaintiffs' claimed need to depose Mr. Flohr, who was not involved in the search for documents by the defendant and only met with the VBA FOIA Officer to assist her in determining what categories of documents would be maintained by VBA or VHA.  (Brown Decl. ¶6.)  Indeed, the plaintiffs' own memorandum seems to demonstrate that their desire to depose Mr. Flohr entirely predates this litigation and concerns topics that

As part of its exercise of discretion, the court also may direct the parties to file submissions with their respective positions on the proper way forward in the case. See, e.g., Serv. Women's Action Network v. Dep't of Def., 888 F. Supp. 2d 231, 258 (D. Conn. 2012). The plaintiffs' request for leave to conduct discovery notwithstanding, this case seems particularly appropriate for that approach because of the number and variety of requests that were submitted, the number of individuals involved in the various searches, and the personnel changes that have taken place within VA while the case has been pending. If the court denies any portion of the defendant's summary judgment motion, the parties will be in a better position to address the plaintiffs' discovery needs at that point and with the benefit of the court's ruling.

Respectfully submitted,

Deirdre M. Daly
United States Attorney

\_\_\_\_/s/_____
John W. Larson (ct28797)
Assistant United States Attorney
United States Attorney's Office
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
Tel: 860-947-1101
Fax: 860-760-7979
john.larson@usdoj.gov

---

have nothing to do with FOIA. (See Opp., 37 ("Mr. Flohr has repeatedly been asked for information about the SME program from the Camp Lejeune veterans community, yet has provided inconsistent and evasive answers to even the most basic questions.").)

10