UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|                                                          |   |                                |
|----------------------------------------------------------|---|--------------------------------|
|                                                          | : |                                |
| THE FEW, THE PROUD, THE                                  | : |                                |
| FORGOTTEN; VIETNAM VETERANS                              | : |                                |
| OF AMERICA; and CONNECTICUT                              | : |                                |
| STATE COUNCIL OF VIETNAM                                 | : |                                |
| VETERANS OF AMERICA,                                     | : |                                |
|          Plaintiffs,                                     | : | Civil Action No. 3:16-cv-00647 |
|                                                          | : |                                |
| v.                                                       | : |                                |
|                                                          | : |                                |
| UNITED STATES DEPARTMENT OF                              | : |                                |
| VETERANS AFFAIRS,                                        | : |                                |
|          Defendant.                                      | : |                                |

**RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Few, The Proud, The Forgotten, Vietnam Veterans of America, and the Connecticut

State Council of Vietnam Veterans of America (together, "Plaintiffs"), brought this action against the

United States Department of Veterans Affairs ("Defendant"), raising two claims under the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552 *et. seq.,* concerning a request for Defendant's records.

Plaintiffs argued (1) that Defendant failed to make an official determination regarding Plaintiffs'

FOIA request within the statutorily mandated period, violating 5 U.S.C. § 552(a)(6)(A); and (2) that

Defendant did not make reasonable efforts to search for the records requested and to release

responsive records promptly, violating 5 U.S.C. § 552(a)(3)(C).

Defendant has moved for partial summary judgment.  For the reasons set forth below,

Defendant's motion is GRANTED in part and DENIED in part.

I.      **Factual Background**

All of the facts recited below, derived from the Complaint [ECF No. 1] and the parties' Local

Rule 56(a) Statements, exhibits, affidavits, and supplemental filings, are undisputed unless otherwise

noted, and the Court presents all facts "in the light most favorable to the nonmoving party"—here,

Plaintiffs—after drawing "all reasonable inferences in [their] favor." *Sologub v. City of New York*,

1

202 F.3d 175, 178 (2d Cir.2000) (quotation marks omitted). The Court relies on the Complaint for the limited purpose of describing Plaintiffs and their FOIA request, not to establish the record concerning Defendant's liability under FOIA.[1]

Defendant, the U.S. Department of Veterans Affairs ("Veterans Affairs") is the federal agency responsible for providing benefits and compensation to veterans who are disabled due to their military service.  Compl. ¶ 6.  This case concerns Plaintiffs' request for Defendant's records concerning the Subject Matter Expert ("SME") program.  Defendant implemented this program in 2012 to facilitate the adjudication of disability claims relating to water contamination at Camp Lejeune, a Marine Corps Base in North Carolina.  *See* FOIA Request, Compl. Ex. 1, p. 1.

The Few, The Proud, The Forgotten ("TFTPTF"), founded in 1997 and led by retired Marine Master Sergeant Jerome Ensminger, focuses on water contamination at Camp Lejeune.  Compl. ¶ 3.

Plaintiff Vietnam Veterans of America ("VVA"), founded in 1978, has 75,000 members and 635 chapters nationwide.  Compl. ¶ 4.  One of the organization's "advocacy priorities is addressing the impact of toxic exposures on veterans and their families."  *Id.*

Plaintiff Connecticut State Council of Vietnam Veterans of America ("VVA-CT") is a Vietnam Veterans of America State Council that represents members of VVA's five Connecticut chapters and members at large.  Compl. ¶ 5.  VVA-CT is based in New Britain, Connecticut.  *Id.*

Veterans Benefits Administration ("VBA") is the component of Veterans Affairs "responsible for oversight of the delivery of disability compensation to veterans with disabilities that are the result of a disease or injury incurred or aggravated during military service."  Def.'s L.R. 56(a) Stmt. ¶ 7.  VBA "is responsible for adjudicating disability claims by veterans, including disability claims made in connection with service at Camp Lejeune."  *Id.*  Veterans Health Administration

---

[1] Defendant also submitted four declarations in support of its motion: October 28, 2016 Declaration of Bertha L. Brown ("Brown Decl."), Def.'s L.R. 56(a) Stmt., Ex. 1; October 28, 2016 Declaration of Timothy H. Graham ("Graham Decl.), *id.* at Ex. 2;  December 22, 2016 Declaration of Bertha L. Brown ("Brown Decl. II), *id.* at Ex. 3; and December 23, 2016 Declaration of Carol E. Farer ("Farer Decl."), *id.* at Ex. 4.

("VHA") is another component of Veterans Affairs.  *Id.* at ¶ 22.  It is "responsible for the delivery of medical care to veterans through the administration and operation of various medical centers and clinics."  *Id.*

### A. Water Contamination at Camp Lejeune and the SME Program

Plaintiffs seek records concerning Veterans Affairs' compensation scheme for injuries caused to veterans by contaminated water at Camp Lejeune. According to Plaintiffs, for many years, Camp Lejeune contained contaminated water that "caused serious illnesses, including bladder cancer, leukemia, kidney cancer, and liver cancer."  Compl. p.1-2.  Between 1953 and 1987, Plaintiffs state, "nearly one million Marines, sailors, civilian employees, and military family members aboard Marine Corps Base Camp Lejeune unknowingly drank, cooked with, and bathed in contaminated water."  *Id.* Today, Veterans Affairs provides benefits for disabilities resulting from or exacerbated by their military service, including those caused by this contamination.  *Id.*

Plaintiffs believe that Veterans Affairs has "denied the overwhelming majority of disability claims from Camp Lejeune veterans."  Compl. p. 1.  While few details about the SME program have been released to the public, Plaintiffs argue that the program "made it even more difficult for veterans to obtain disability benefits for disabilities resulting from contamination at Camp Lejeune."  Compl. p. 1.  They note that, after Veterans Affairs implemented the SME program, the grant rate for Camp Lejeune claims has dropped from 25% to 8%.  *Id.* at ¶ 13.  They seek information about how the SME program operates, arguing that "the little that is known about the program suggests fundamental flaws in Veterans Affairs' criteria for selecting SMEs, and the SMEs's methodology, training, and expertise."  *Id.*

### B. The FOIA Request

On December 7, 2015, Plaintiffs sent at least one twenty-part FOIA request to Veterans Affairs, which were distributed to the VHA and the VBA. Def.'s L.R. 56(a) Stmt. ¶¶ 1, 3; Pl.'s L.R. 56(a) Stmt. ¶¶ 1, 3.  The parties dispute whether Plaintiffs sent one request to Veterans Affairs,

3

which was forwarded internally to VBA and VHA, or sent Defendant two identical requests, one to each component. *See id.* Regardless, the record establishes that both VBA and VHA received Plaintiffs' request.

In the request, Plaintiffs sought information concerning the SME program, including:

1. Any and all Records concerning the policies, procedures, objectives, development, creation, and implementation of the SME Program.

2. Any and all Records concerning the VA's selection criteria and minimum required credentials for SMEs participating in the Camp Lejeune SME Program.

3. Any and all Records concerning the qualifications and names of SMEs who have participated, or are currently participating, in the Camp Lejeune SME Program.

FOIA request, ¶¶ 1-3. Plaintiffs also sought other information concerning the SME program, including conflict of interest, training, compensation, and disclosure policies relating to the program. *Id.* at ¶¶ 4, 7. Plaintiffs also requested information concerning the role of SMEs in claims processing, including:

10. Any and all Records provided to VA employees, including VA Regional Office claim adjudicators, to train and educate VA employees on the Camp Lejeune SME Program, including, but not limited to, the role of SME reports and how to weigh and evaluate SME reports.

11. Any and all Records concerning guidance provided to adjudicators on whether to seek an SME report in the course of adjudication of a Camp Lejeune Water Contamination Claim.

12. Any and all Records concerning the VA's disclosure of SME reports, including but not limited to:

   a. the VA's disclosure policy on SME Reports; and
   b. the number of instances in which a claimant has requested a copy of the SME report generated in his or her case. For each claimant request, include information on how quickly the requested report was provided to the claimant or, if the request was denied, the grounds for withholding the SME report from the claimant.

13. Any and all Records concerning the total number of Camp Lejeune Water Contamination Claims decided prior to the implementation of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number

of denials, and the number of grants). This Request seeks records created before and after 2010.

14. Any and all Records concerning the impact of the Camp Lejeune SME Program on adjudication of claims, including but not limited to:

   a. the total number of Camp Lejeune Water Contamination Claims that have been adjudicated since the institution of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);
   b. the total number of Camp Lejeune Water Contamination Claims that have been reviewed by SMEs and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);
   c. the total number of Camp Lejeune Water Contamination Claims reviewed by each individual SME, including the number of claims that were approved and denied following review by each SME; and the total number of instances in which an adjudicator decided a case against the recommendation of an SME report.

15. The number of Camp Lejeune Water Contamination Claims that have been decided since Secretary McDonald assured Senators on a conference call in July 2015 that no claims would be denied until a presumption was proposed, including whether those claims were granted or denied.

16. Any and all Records concerning the annual costs of the Camp Lejeune SME Program.

17. Any and all Records concerning the remuneration paid to SMEs by the VA.

*Id.* at ¶¶ 10-17.

Plaintiffs also sought records concerning agency communications in paragraph 19, in which they specifically requested:

Any and all Records concerning internal and external communications about the Camp Lejeune SME Program, including but not limited to communications involving Dr. Terry Walters, Dr. Gerald Cross, Brad Flohr, Dr. Michael Koopmeiners, Dr. Victoria Cassano, Dr. Carolyn Clancy, Dr. Ralph Erickson, Dr. Deborah Heaney, Dr. Ronald F. Teichman; Dr. Wanda Blaylark, Dr. Gary B. Wilhelm, Dr. Amir Mohammad; Dr. Ronit Ben-Abraham Katz:

   a. concerning the proposal, development, objectives, and implementation of the Camp Lejeune SME Program;
   b. between SMEs pertaining to the Camp Lejeune SME Program;
   c. between SMEs and other VA employees pertaining to the Camp Lejeune SME Program;

5

      d.  between VA employees and Congressional staff regarding the inception or operation of the Camp Lejeune SME Program, including but not limited to minutes from the July 2015 and December 2015 meetings between VA Secretary McDonald and Members of Congress, including Senators Burr and Tillis;

      e.  between VA employees pertaining to the Camp Lejeune SME Program; and

      f.  discussing or responding to media inquiries concerning the Camp Lejeune SME Program.

*Id.* at ¶ 19.

By December 21, 2015, Veterans Affairs decided that VBA would be responsible for responding to paragraphs 10, 12, 13, 14, 15, 16, 17, 19, and part of 20 of Plaintiffs' request, and VHA would respond to the rest. Def.'s L.R. 56(a) Stmt. ¶ 4. In June 2016, Veterans Affairs determined VHA would also be responsible for paragraphs 16 and 17 of the request. *Id.* at ¶ 5. Both agency components began to search for responsive documents.

### C. VBA's Search and Production

VBA's FOIA officer, Bertha Brown, responded to Plaintiffs' FOIA request. On August 31, 2016, Ms. Brown mailed a letter to Plaintiffs with documents responsive to their request. Def.'s L.R. 56(a) Stmt. ¶ 33 (citing Aug. 31, 2016 Letter, Brown Decl. II, Ex. A). Ms. Brown made certain redactions to the records she sent to Plaintiffs. Specifically, she redacted "the names and identifying details of individuals (Rating Veteran Service Representatives (RVSRs)) working as decision makers on specific tasks, work that may be considered contentious to those associated with the subject matter." *Id.* at ¶ 34. VBA also redacted the email addresses and phone numbers of employees. *Id.* In its cover letter to Plaintiffs, VBA cited Exemption 6 of the FOIA statute. *Id.*

Ms. Brown also "submitted an inquiry to Mr. Brad Flohr," Senior Advisor to the Compensation Service at VBA. Opp. Mem., 41. Ms. Brown explained that she "wanted to meet with a subject matter expert for the Camp Lejeune to discuss [Plaintiffs'] FOIA request in detail." Brown Decl. I ¶ 6. Mr. Flohr helped her determine how to divide the FOIA request between VHA

and VBA.  *Id.*  Mr. Flohr also serves as VBA representative on a community committee concerning

the SME program.  Opp. Mem., 8.

### D. VHA's Search and Production

Jeffrey Parillo, then a FOIA officer at VHA, responded to Plaintiffs' request on July 28,

2016.  Def.'s L.R. 56(a) Stmt. ¶ 31; Parillo Letter, Farer Decl., Ex. 1.  In his response, Mr. Parillo

redacted certain responsive records.  Specifically, VHA redacted from its production "any veteran

information and the names and identifying details of individuals working on a specific task force in a

specific area, which area may be considered contentious to those associated with the subject matter."

*Id.*

Within VHA, the Office of Disability and Medical Assessment ("DMA") "respond[s] to

clinical, operational, analytical, and policy and program related issues involving disability exams that

are performed in connection with the adjudication of disability claims by the Veterans Benefits

Administration."  Def.'s L.R. 56(a) Stmt. ¶ 22.  DMA also is the entity within VHA that is

"responsible for providing assistance to VBA regarding Camp Lejeune-related disability claims,

including management of the SME program discussed in [Plaintiffs'] FOIA request."  *Id.*

"There is one individual employee at DMA who is responsible for the SME program, and

that individual conducted the searches for responsive records. All documents produced by VHA in

response to the FOIA request were located by this individual at DMA," who did not work at the

DMA when Defendant moved for summary judgment.  *Id.* at ¶ 24; Graham Decl. ¶ 2.

### E. Procedural History

On April 27, 2016, before receiving a response to their FOIA requests, Plaintiffs filed their

Complaint, arguing that "Defendant's failure to make reasonable efforts to search for the records

requested and to promptly release responsive records violates Plaintiffs' right to those records under

the FOIA." Compl. ¶ 36 (citing 5 U.S.C. § 552(a)(3)).  Plaintiffs requested that the Court order

Defendant to "perform a reasonable search and disclose the requested records to Plaintiffs" and

"grant a full fee waiver to Plaintiffs." *Id.* at Prayer for Relief.  Plaintiffs also sought reasonable costs and attorneys' fees under FOIA. *Id.*

On December 23, 2016, Defendant moved for summary judgment on most of Plaintiffs' claims.  It submitted four declarations from Veterans Affairs' staff to support its motion. Specifically, it submitted two declarations from Ms. Brown concerning VBA's search, and a declaration from Mr. Graham and Ms. Farer concerning VHA's search. *See* Def.'s L.R. 56(a) Stmt. Exs. 1-4.  It also attached an additional declaration from Stefania Griffin, Director of the VHA's Information Access and Privacy Office, Office of Informatics and Information Guidance, to its reply brief.  Reply, Ex. 1.

Defendant argued that Ms. Brown's declarations established that VBA's searches for responsive documents were "reasonably adequate, and summary judgment therefore should enter." Def.'s Mem., 7.  Defendant also argued that summary judgment was appropriate with respect to all of VHA's searches except for VHA's search for documents responsive to paragraphs 19(b) and (c) of Plaintiffs' request. *Id.* at n. 3.  Defendant noted that it could not "establish the adequacy of searches performed by VHA that would have uncovered documents response to [paragraphs 19(b) and (c)], and promised to "conduct a supplemental search and a (likely) supplemental production of responsive records." *Id.*

Defendant specifically argued that its redaction of documents under Exception 6 did not preclude summary judgment and that paragraph 19 "failed to adequately describe" the records sought. *Id.* at 9.  In other words, Defendant argued that its limited redactions and limited response to paragraph 19 did not preclude summary judgment in Plaintiffs' case.

Defendant submitted five affidavits from VBA and VHA officials.  To establish the adequacy of VBA's search, it submitted two declarations from Bertha L. Brown, a FOIA/Privacy Officer for VBA's Compensation Service. The first, from October 28, 2016, describes the initial FOIA request and the searches VBA conducted with response to paragraphs 10, 12-15, 19, and 20. *See* Brown Decl. of Oct. 28, 2016 ("Brown Decl."), Def.'s L.R. 56(a) Stmt., Ex. 1.  Defendant also submitted a

8

supplemental declaration from Ms. Brown, dated December 22, 2016, which describes in more detail her responses to paragraphs 10, 11, 12(b), 13-15, and 19-20.  Brown Decl. of Dec. 22, 2016 ("Brown Decl. II"), Def.'s L.R. 56(a) Stmt., Ex. 3.  In this submission, Ms. Brown describes the search terms VBA used when responding to paragraphs 10, 11, and 19, *id.* at ¶¶ 8-13; ¶ 18, and the databases searched for those requests.  *Id.*  Ms. Brown does not describe the universe of records or databases maintained by VBA.  *See id.*  Defendant also submitted Ms. Brown's response letter to Plaintiffs' request, describing its responses to paragraphs 10, 12-15, 19, and 20, as an exhibit to her declaration. *See* Ex. A to Brown Decl. II.

Defendant also submitted three affidavits from VHA officials.  In an October 28, 2016 declaration, Timothy H. Graham, Director of the VHA FOIA Office, explains that Mr. Graham supervised Mr. Parrillo, the VHA FOIA officer who was "responsible for responding to the FOIA request … on behalf of VHA."  Graham Decl., Def.'s L.R. 56(a) Stmt., Ex. 2.  Mr. Graham explains that Mr. Parillo, who was no longer employed by VHA at the time of the declaration, searched several VHA departments and found responsive records in only one of them.  *Id.* at ¶¶ 4-5 (describing search of "VHA Office of Patient Care Services and Post Deployment Health," which contained no records, and VHA "Office of Disability and Medical Assessment," which "provided all responsive records to the FOIA request.").  Mr. Graham's declaration states that Mr. Parillo withheld some items from VBA's responses, citing FOIA Exemption 6.  *Id.* at 8.  Specifically, he withheld "veteran identifying information," names and identifying details of individuals working on a specific task force in a specific area [who] were conducting highly contentious work that may subject [them] to harassment," and "blackberry numbers of employees."  *Id.* at 8.

Defendant also submitted a declaration from Carol E. Farer, a VHA FOIA Officer.  *See* Farer Decl.), *id.* at Ex. 4. Ms. Farer explains that "[t]here is one individual employee at DMA who is responsible for the SME program, and that individual conducted the searches for responsive records." *Id.* at 8.  She adds that all "records concerning Camp Lejeune disability claims or the SME program

are found in one of four places: (1) the Camp Lejeune folder on the DMA network drive, which includes documents that had been maintained by the various individuals at DMA responsible for oversight of the SME program since its inception; (2) on the intranet site used by DMA for daily management of the SME program; (3) the network folder used by the DMA employee responsible for management of the SME program; and (4) within the emails of the same employee." *Id*. at 9. Ms. Farer reiterates the applicability of Exception 6 to the documents that Mr. Graham's declaration describes. *Id*. at 13. Defendant also attaches VHA's cover letter to its production of responsive records to Ms. Farer's declaration. In this letter, Mr. Parillo explains the applicability of the Excemption and suggests that VHA does not store records responsive to paragraphs 16 and 17 of the request, which seek data on the annual costs of the SME program and the remuneration paid to SMEs. *See* Ex. A to Farer Decl.

In "an abundance of caution," Reply, n. 2, Defendant also attached the declaration of Ms. Stephania Griffin, Director of VHA's Information Access and Privacy Office, to its reply brief. *Id.* at Griffin Decl., Ex. 1. Ms. Griffin supervised Mr. Graham and Mr. Parillo when they worked as FOIA Office Director and FOIA Officer, respectively. *Id.* at ¶ 2. Ms. Graham's declaration does not provide details about the search but merely "adopt[s] and "incorporate[s] by reference" the declaration of Ms. Farer. *Id.* at ¶ 4.

## II.    Standard of Review

"FOIA was enacted to promote honest and open government and to assure the existence of an informed citizenry to hold the governors accountable to the governed." *Grand Cent. P'ship., Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quotation marks omitted). FOIA reflects "a general philosophy of full agency disclosure," *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976) (quotation marks omitted), and "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies," *Halpern v. F.B.I.*, 181 F.3d 279, 286 (2d Cir.1999).

10

"There are, however, limits to FOIA's reach. Specifically, in recognition of those interests that may at times conflict with the policy of full disclosure, FOIA also provides nine exemptions from its disclosure requirement." *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 292 (D. Conn. 2008) (quotation marks and citations omitted). Yet, "[i]n keeping with the policy of full disclosure, the exemptions are narrowly construed with doubts resolved in favor of disclosure." *Halpern*, 181 F.3d at 287 (quotation marks omitted).

"As with all motions for summary judgment, summary judgment in a FOIA case is appropriate only when the ... materials submitted to the Court show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 240 (D. Conn. 2012) (quotation marks omitted) (hereinafter "*SWAN I*"). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to FOIA." *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.1994); *Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 205 (D. Conn. 2014) ("To prevail on summary judgment when the adequacy of an agency's search is at issue, the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents.").

To sustain its burden, an agency may rely on "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812.  The Second Circuit instructs that:

> Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face. When this is the case, the district court may forgo discovery and award summary judgment on the basis of affidavits.

*Id.* (quotation marks and citations omitted). However, this good faith presumption only applies to agency affidavits or declarations that are "reasonably detailed." *Halpern*, 181 F.3d at 295. Affidavits must be both "detailed and non-conclusory," which "means, for instance, that [they] must describe in reasonable detail the scope of the search and the search terms or methods employed." *SWAN I*, 888 F. Supp. 2d at 241 (quotation marks omitted).

"Finally, FOIA instructs district courts to review *de novo* agency decisions to withhold records. The *de novo* standard of review for FOIA cases is well established in this circuit." *El Badrawi*, 583 F. Supp. 2d at 292 (citations omitted).

### III.   Discussion

Defendant argues that, as a matter of law, it conducted a reasonable search for responsive records and that its limited redactions in its responses were appropriate.  Def.'s Mem., 1. Plaintiffs respond that Defendant has not met its burden and failed to prove that it conducted an adequate search.  *See* Opp. Mem., 11.  The Court agrees with Plaintiffs, and addresses their arguments below.

### A. Division of Labor between VBA and VHA

As an initial matter, Plaintiffs argue that Defendant's declarations are insufficient because they do not explain why Defendant divided the responsibility of responding to each paragraph of the FOIA request between VHA and VBA.  The record makes clear that VHA was responsible for responding to paragraphs 1 through 9, 11, 16, 17, 18, and parts of paragraphs 19 and 20 of Plaintiffs' FOIA request and the VBA did not respond to those paragraphs.  *See* Pl.'s Opp. Mem., 16, 18.  This deficiency, Plaintiffs argue, "renders [the VA's] search declarations deficient and summary judgment improper."  *Id.* at 16.   Defendant responds that its declarations "adequately explain the role of each VA component" and Defendant's decision to divide the VA's response between VBA and VHA. Def.'s Reply, 2.  The Court agrees with Plaintiffs.

A FOIA respondent can forward components of a FOIA request within its offices as long as it explains with "reasonable specificity of detail … the kinds of information each office maintains" and why each component office is the only one that is "likely to maintain responsive records." *Vietnam Veterans*, 8 F. Supp. 3d at 224-26 (approving of the VA's response when the VHA FOIA official stated that, "based on his expertise and knowledge of the mission, programs and operations of VHA, the benefits claim information sought by the plaintiffs … would have been administered by the [VBA] rather than the VHA.").

Defendant argues that it asked VBA and VHA to respond to different parts of the FOIA request, based on each component's duties.  Def.'s Reply, 2.  Defendant describes the respective duties of VBA and VHA in the declarations attached to its motion for summary judgment.  It states that the VBA is:

> the component of the VA responsible for oversight of the delivery of disability compensation to veterans with disabilities that are the result of a disease or injury incurred or aggravated during military service. In connection with that task, VBA is responsible for adjudicating disability claims by veterans, including disability claims made in connection with service at Camp Lejeune.

Brown Decl. II, ¶ 5.  It also describes VHA.  It notes that, while VHA's Office of Disability and Medical Assessment (DMA) does not operate the SME program, it "serves to respond to clinical, operational, analytical, and policy and program related issues involving disability exams that are performed in connection with the adjudication of disability claims by the [VBA.]"  Farer Decl. ¶¶ 6-7.  DMA is the "entity within VHA that is responsible for providing assistance to VBA regarding Camp Lejeune-related disability claims, including management of the SME program."  *Id.*

Defendant explains that VHA responded to the portions of the request that "concern[ed] the SME program itself," while VBA searched for "documents provided to adjudicators, documents concerning claims adjudication, documents concerning the Advisory Committee on Disability compensation, and communications involving VBA employees."  Def.'s Reply, 3.  Accordingly,

VBA responded to paragraphs 10, 11, 12, 13, 14, 15, and 20 of the request, and VHA responded to the remaining items.  *See* Graham Decl. ¶ 5; Farer Decl. ¶ 4; Brown II, ¶¶ 6, 13.[2]

At this stage of the litigation, the Court cannot conclude that this allocation of labor was a reasonable response to Plaintiffs' request.  Defendant delegated the claims-related paragraphs of the FOIA request to VBA because of VBA's focus on claims adjudication, rather than management of the SME program and the SMEs.  As Plaintiffs noted, however, Defendant's declarations do not adequately explain why VBA would not have records responsive to more general questions concerning the SME program, including the records it sought in paragraph 1, especially because VBA likely stores some of Mr. Flohr's records.  Furthermore, paragraph 12 asked for "VA's disclosure policy on SME Reports," which does not concern claims and theoretically could have triggered a search by VHA.  Without more information, the Court cannot conclude that the division of labor between VHA and VBA was reasonable.

### B. Adequacy of VBA's Searches

Plaintiffs argue that VBA's searches were inadequate because the agency "does not adequately explain the scope of its search, its method of searching, or the organization of its file systems in its search declarations."  Opp. Mem., 11.  The Court agrees.

Defendant submitted two declarations from Bertha L. Brown, the VBA's FOIA Officer at the time of the relevant searches, to support its motion for summary judgment.  Because these declarations do not "supply[] facts indicating that the agency has conducted a thorough search," *Carney*, 19 F.3d at 812, summary judgment is inappropriate regarding VBA's search for most of the records Plaintiffs requested.  Summary judgment is only appropriate with regards to VBA's response to paragraphs 14 and 15, to which Defendant responded reasonably.

---

[2] The Court notes that while Ms. Brown's Declaration states that she determined that the VBA would be responsible for paragraphs "10, 12, 13, 14, 15 and 20, as well as a portion of paragraph 19 and 20," Brown II, ¶ 6, Ms. Brown mentions that she directed the AVSCM to search for records responsive to paragraph 11 as well. *Id.* at ¶ 13.

### 1.    Description of VBA's File System

Plaintiffs argue that Ms. Brown's declaration inadequately described VBA's file system.  To justify summary judgment in a FOIA case, an agency declaration must "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298.  Declarations that "do not state what database was searched" and "do not describe what information the database contains" are "insufficiently detailed to show beyond material doubt that the search conducted ... was adequate." *Vietnam Veterans*, 8 F.Supp.3d at 212-13.  Without this information, a reviewing court cannot accurately determine whether a search was reasonable.

In *Vietnam Veterans*, for example, the court determined that a FOIA officer's declaration was inadequate because she "state[d] that computer hard drives, shared drives, and email accounts were searched," but did not explain "whether there are other electronic files which were not searched, and if there are, why they were not searched."  *Vietnam Veterans*, 8 F.Supp.3d at 221. The *El Badrawi* court further explained that a declarant must "attempt to describe the general scheme of [an agency's] file system" and provide "for example, a list of databases to which [the agency] has access and a delineation of what types of records each database contains."  *El Badrawi*, 583 F.Supp.2d at 300 ("The lack of such disclosure stymies El Badrawi's ability to advocate his position and does not meet the 'relatively detailed and nonconclusory' standard adopted by the Second Circuit.") (citing *Grand Cent. P'ship., Inc.*, 166 F.3d at 489).

Ms. Brown's declarations do not adequately describe VBA's record management scheme.  Ms. Brown explains that she searched certain VBA resources and also worked with the Assistant Veterans Service Center Manager (AVSCM) in Louisville, Kentucky to search for materials from the Louisville Regional Office.  Brown Decl. II, ¶ 11.  To describe the databases that she searched, Ms. Brown only states that the "VBA searched all of its record systems that were reasonably expected to contain the records requested by [P]laintiffs."  *Id.* at ¶ 20.  She mentions searching the "intranet for

15

VBA's Compensation Service," *id.* at ¶¶ 7, 13, the "local network for the Louisville Regional Office," *id.* at ¶ 8, and the "personal network folders for the AVSCM from 2011-2012," *id.* at ¶ 11. She also instructed "VA employees who serve as 'coaches' to the adjudicators [to search] their email folders for responsive documents" and worked with the Facility Chief Information Officer (FCIO), to search "network folders that might contact responsive emails," although her declaration implies that the FCIO only searched these folders to find "emails for those individuals who may no longer be working for the VA." *Id.* at ¶ 11.

Ms. Brown does not explain how VBA's files are organized in the intranet, what the intranet contains, or whether VBA stores information in other networks or databases. As Plaintiffs note, she also does not explain how the Louisville Regional Office stored the files and e-mails of its employees or whether the employees each had a "personal network folder," Brown Decl. II, ¶ 11, and, if so, why she searched the personal network folder of the AVSCM but not the folders of the "coaches" to adjudicators whose emails were searched. Without this information, the Court cannot confirm that a "further search" would be "unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298; *see also Eberg v. U.S. Dep't of Def.*, 193 F. Supp. 3d 95, 109-10 (D. Conn. 2016) (agency had not met its burden when FOIA officer's "declarations d[id] not describe the structure or organization of the AMC's share drive or the types of files, records, or data stored within[,] address the existence of other file systems, [or] describe the types of files, records, and data that are maintained by [the agency].")

### 2.    Adequacy of VBA's Search Terms

Plaintiffs also challenge the terms that the AVSCM and the VBA "coaches" used to search their e-mail folders. An agency's declaration about a search must reasonably explain why it selected certain search terms and rejected obvious alternatives. *See SWAN I*, 888 F.Supp.2d at 249-50; *see also Eberg*, 193 F. Supp. 3d at 110 (administrator's search was inadequate when declaration did not "explain why he narrowed his search terms to exclude keywords from Plaintiff's FOIA request").

Ms. Brown's declaration states that VBA "coaches" searched their e-mails for the words "CLCW Training," "CLCW," "Training," "Camp Lejeune," "Contaminated Water," "Lejeune," and "Water." Brown Decl. II, ¶ 10. The AVSCM also searched his Camp Lejeune e-mail correspondence for the words "Lejeune," "CLCW," "Camp Lejeune," "Guidance," "Procedure," and "Process." *Id.* at ¶ 9. Plaintiffs contend that Ms. Brown's declaration does not explain why these terms were chosen, and "more importantly, why terms such as 'Subject Matter Expert,' or 'SME'" were excluded from the search. Pl.'s Mem., 16. Defendant responds that the terms Ms. Brown used were broad enough to include "any records concerning Camp Lejeune claims," and would therefore have caught documents that would have been produced by a search for "Subject Matter Expert" or "SME." Def.'s Reply, 4.

While Defendant's reply has merit, Defendant must establish the adequacy of the search itself, not the records it produced. *See Grand Cent. P'Ship*, 166 F. 3d at 489. Ms. Brown's declarations do not explain why VBA excluded the term "Subject Matter Expert" when searching for responses to a FOIA request concerning the Subject Matter Expert program. Without this "explanation," the Court cannot conclude that the search was "adequate." *Vietnam Veterans*, 8 F. Supp. 3d at 219 (declaration was inadequate when it did "not provide an explanation for why he used [certain] search terms, but did not use other terms … to identify responsive documents.").

### 3.    Adequacy of VBA Offices Selected

Plaintiffs also challenge VBA's decision to limit its search for records responsive to paragraph 19 of the request, which seeks communications regarding the "proposal, development, objectives, and implementation of the Camp Lejeune SME program," to records located at the Louisville Regional Office. Opp. Mem., 21 (citing Brown Decl. II, ¶ 18). To survive summary judgment, a declaration must "adequately describe why [an official] chose to refer the plaintiffs' request" to certain offices but not others. *Vietnam Veterans*, 8 F. Supp. 3d at 211. Otherwise, the

Court cannot conclude that a search "was reasonably calculated to uncover all relevant documents." *Id.*

Defendant argues that VBA restricted its search for responsive correspondence to the Louisville regional office because "the employees located for adjudication of Camp Lejeune-related disability claims are located in the Louisville regional office." Def.'s Reply, 4. While Defendant's explanation appears reasonable, its reasonableness is undercut by Ms. Brown's suggestion that it is "extremely possible that there could have been e-mail correspondences between Louisville and individuals here in Washington DC." *See* e-mail from Ms. Brown, Pl.'s Mem., Ex. J (concluding that "to say there is no records located in Washington DC may be a false statement"). The Court is unable to "determine whether the … decision to search only [these] offices was reasonably calculated to uncover all relevant documents," *Vietnam Veterans*, 8 F. Supp. 3d at 211, making summary judgment inappropriate. *See also El Badrawi*, at 302-303 (search was "insufficient" because it did not "address records maintained by the American Embassy in Beirut, Lebanon, a DOS overseas post likely to contain records responsive to El Badrawi's request," especially because DOS documents contained telegrams sent from the Beirut embassy).

### 4.  Adequacy of VBA's Response to Paragraphs 13-15

At oral argument, Defendant's counsel suggested that summary judgment on Paragraphs 13-15 of Plaintiffs' request, which sought data concerning the amount and disposition of veterans' claims, would be appropriate. For the reasons below, the Court concludes that summary judgment is appropriate regarding VBA's response to paragraphs 14 and 15, but not paragraph 13, of the request.

In paragraphs 13-15 of their FOIA request, Plaintiffs sought:

**Question 13:** Any and all Records concerning the total number of Camp Lejeune Water Contamination Claims decided prior to the implementation of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants). This Request seeks records created before and after 2010.

**Question 14:** Any and all Records concerning the impact of the Camp Lejeune SME Program on adjudication of claims, including but not limited to:

a)  the total number of Camp Lejeune Water Contamination Claims that have been adjudicated since the institution of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

b)  the total number of Camp Lejeune Water Contamination Claims that have been reviewed by SMEs and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

c)  the total number of Camp Lejeune Water Contamination Claims reviewed by each individual SME, including the number of claims that were approved and denied following review by each SME; and

d)  the total number of instances in which an adjudicator decided a case against the recommendation of an SME report

**Question 15:** The number of Camp Lejeune Water Contamination Claims that have been decided since Secretary McDonald assured Senators on a conference call in July 2015 that no claims would be denied until a presumption was proposed, including whether those claims were granted or denied.

Response Letter, Brown Decl. II, Ex. A. VBA—but not VHA—responded to the request.  In its response, the agency provided data summarizing claims and outcomes in its initial response.   *Id.*

Ms. Brown also described the VBA records that might be responsive to these requests. "With respect to paragraphs 13, 14, and 15 of the request," she stated, "I was aware based on my experience as the VBA FOIA Officer that records concerning claim data were maintained by VBA's Office of Performance Analysis and Integrity (PA&I)."  Brown Decl. ¶ 16.  She continued that:

> I therefore referred these records requests to PA&I, which produced responsive information. Decisions on Camp Lejeune-related claims are processed in a VBA application called VBMS-R that captures the type of claim, the type of disability, the level of disability, and a description of how VBA came to its decision. PA&I manages the Enterprise Data Warehouse that houses all the data from the application and writes a query to find all claims labeled as Camp Lejeune and the decisions on any such claims. The system also captures the date of submission and date of completion, and those dates are aggregated to create an average length of time from submission to completion. PA&I uses this data to create a monthly report on Camp Lejeune claims, which report was used to provide the requested information."

*Id.*  Ms. Brown's affidavit explains that PA&I, an entity within VBA, would be the subagency office most "likely to maintain responsive records," *Vietnam Veterans*, 8 F. Supp. 3d at 224-26, given that

19

paragraphs 13, 14, and 15 sought data about processed claims.   Her testimony also sufficiently

describes the claims information available to PA&I, and suggests that PA&I performed a reasonable

search for these documents.

Ms. Brown, however, does not discuss the age of the claims records that PA&I maintains in

the databases she describes.  Further, Ms. Brown's affidavit does not explain why PA&I only

provided data from "January 2011 through April 2012" for Question 13.  *See* Response Letter,

Brown Decl. II, Ex. A.  While PA&I's responses to paragraph 14—May 2012 through July 2016—

and for paragraph 15—July 2015 through July 2016—are responsive to Plaintiffs' request, Ms.

Brown's declaration does not adequately explain whether PA&I reasonably searched for data from

before and after 2010, as Plaintiffs requested.  Summary judgment is therefore appropriate as to

VBA's response to paragraphs 14 and 15 of Plaintiffs' request, but not paragraph 13.

### C. Adequacy of VHA Searches

Plaintiffs argue that VHA's search was inadequate because Defendant does not "provide any

information at all identifying the specific search terms used," does not "explain the structure of the

agency's file system and the reasons why certain locations were searched in lieu of others," and

because the declarants did not supervise the searches described.  Pl.'s Mem., 23.  The Court agrees.

Defendant submitted declarations of Timothy H. Graham and Carol E. Farer, the Director of

the VHA FOIA Office and a VHA FOIA Officer, respectively.  Def.'s Mot., 10.  In "an abundance of

caution," Reply, n. 2, Defendant also attached the declaration of Ms. Stephania Griffin, Director of

VHA's Information Access and Privacy Office, to its reply brief.  *Id.* at Griffin Decl., Ex. 1.  Because

these declarations do not "supply[] facts indicating that the agency … conducted a thorough search

and giving reasonably detailed explanations why any withheld documents fall within an exemption,"

*Carney*, 19 F.3d at 812, and because factual disputes remain about the personal involvement, *id.* at

813-14, of Ms. Farer, Ms. Griffin, and Mr. Graham in supervising the search, summary judgment is

inappropriate.

### 1.    Description of VHA's File System

Plaintiffs argue that the VHA's declarations inadequately describe the agency's file system. As stated above, summary judgment on a FOIA claim is inappropriate unless declarations supporting the motion "describe at least generally the structure of the agency's file system which renders any further search unlikely to disclose additional relevant information." *El Badrawi*, 583 F.Supp.2d at 298.  Mr. Graham's declaration describes two searches.  Jeffrey Parrillo, then a VHA FOIA officer, conducted the first search.  He searched "the VHA Office of Patient Care Services (PCS) and an office within PCS [called] Post Deployment Health." Graham Decl. ¶ 4.  Mr. Parillo also conducted "a search with the VHA Office of Disability and Medical Assessment," *id.* at ¶ 5, which included a search of the "Outlook files for the Office of Disability and Medical Assessment staff responsible for the Camp Lejeune program," *id.* ¶ 6, and "the office's shared drives," *id.*  In his declaration, Mr. Graham does not describe these offices or the "structure of [their] file systems" with the "reasonable specificity" required at the summary judgment stage.  *Eberg*, 193 F. Supp. 3d at 109; *Vietnam Veterans*, 8 F.Supp.3d at 218 (rejecting as insufficient a declaration that did "not sufficiently describe the Air Force Surgeon General's filing system, but instead only identifies two electronic databases that were searched.").

Ms. Farer's declaration is similarly deficient.  She states that "electronic records concerning Camp Lejeune disability claims or the SME program are found in one of four places," and lists "(1) the Camp Lejeune folder on the DMA network drive; (2) the intranet site used by DMA for daily management of the SME program; (3) the network folder used by the DMA employee responsible for management of the SME program and (4) the emails of the DMA employee responsible for management of the SME program." Farer Decl. ¶ 9.  While Ms. Farer avers that all documents concerning the SME program would be found in these files, Defendant must produce affidavits that "detail files searched and the general scheme of the agency file system." *El Badrawi*, 583 F.Supp.2d at 308 (citing *Fisher v. FBI*, 94 F.Supp.2d 213, 218 n. 2 (D. Conn. 2000)).  In *El Badrawi*, the court

rejected an affidavit that stated that "all official records generated or held by [CIS] ... involving [El Badrawi] should, as a matter of course, be consolidated in an A-file," because it did not "declare [or] suggest" that the two databases containing A-files were "the only two databases owned by CIS." *Id.*

Ms. Farer does not indicate whether the DMA file locations searched were the only file locations it maintained.  Further, as Plaintiffs note, Ms. Farer also makes no mention of the location of potential files maintained by SMEs themselves, who are "not employed by one particular VHA office or at any particular medical center," Farer Decl. ¶ 7, and therefore could maintain records outside of the DMA databases Ms. Farer identifies.  In sum, Ms. Farer's declaration does not speak to the entirety of records "owned" by VHA and therefore does not give the Court the information it needs to evaluate the reasonableness of her search.

### 2.     Adequacy of VHA's Search Terms

Plaintiffs note that Ms. Farer and Mr. Graham do not describe the search terms VHA used to find responsive documents.  Agency declarations must explain why certain terms were selected or not selected for search.  *SWAN I*, 888 F. Supp. 2d at 249-50; *see also Eberg,* 193 F. Supp. 3d at 114 ("[A]n agency must provide a reasonable explanation as to why it used certain terms or strategies and not others if the terms are not sufficiently exhaustive.").  Mr. Graham's declaration does not identify the search terms that he used when searching the files of the PCS and DMA.  Ms. Farer states that DMA "reviewed the titles of the various documents" for "words that corresponded to any identified in [Plaintiffs'] request." Farer Decl. ¶ 10.  An agency declaration, as noted above, must provide a "reasonable description" of the "search terms or methods employed." *SWAN I*, 888 F.Supp.2d at 245, 51 (citing *Godaire v. U.S. Dep't of Justice*, No. 3:10cv01266 (MRK), 2011 WL 3047656, at *2 (D. Conn. Jul. 25, 2011)).

### 3.    "**Personal knowledge**" **of Declarants**

Plaintiffs argue that the VHA's declarations are insufficient because Ms. Farer and Mr. Graham lacked the requisite personal involvement in supervising the FOIA search.  Opp. Mem., 27-29 (citing *El Badrawi*, 583 F. Supp. 2d at 289).

Defendant submitted declarations from three VHA employees, Mr. Graham, Ms. Farer, and Ms. Stephania Griffin, whose declaration it attached to its reply brief "in an abundance of caution."  Reply, n.2.  When Defendant moved for summary judgment, Mr. Graham was Director of the VHA's FOIA office and supervised Jeffrey Parillo, the FOIA officer responsible for processing Plaintiffs' request.  Graham Decl., 2.  Mr. Parillo was not working for VHA when Defendant moved for summary judgment.  *Id.* Mr. Graham's declaration is based on "his capacity as the supervisor to [Mr. Parillo] and [his] review of the relevant file."  *Id.* at 3.

 Ms. Farer was the "FOIA officer assigned to [Plaintiffs'] file" when she made the declaration, but not "at the time of the searches or production."  Farer Decl. ¶¶ 1-2.  Ms. Farer explains that "there is one individual employee at DMA who is responsible for the SME program, and that individual conducted the searches for responsive records." *Id.* at ¶ 8.  Ms. Farer's declaration, therefore, is based "on personal knowledge regarding the VHA and FOIA Office generally, on information and belief in [her] capacity as the current VHA FOIA Officer assigned to the file, and based upon [her] review of the VHA file for this matter."  *Id.* at ¶ 3.

Ms. Griffin is Director of the Information Access and Privacy Office, Office of Informatics and Information Guidance, of the VHA.  Griffin Decl., ¶ 1.  Ms. Griffin supervised Mr. Graham and Mr. Parillo when they worked as FOIA Office Director and FOIA Officer, respectively.  *Id.* at ¶ 2.  Ms. Graham's declaration does not provide details about the search but merely "adopt[s] and "incorporate[s] by reference" the declaration of Ms. Farer.  *Id.* at ¶ 4.  Ms. Griffin's declaration is based on "information made available to [Ms. Griffin] in her capacity as a VHA supervisor to the

direct supervisor to the individual who coordinated the search and response on behalf of VHA.  *Id.* at 3.

An "affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Carney*, 19 F.3d at 813-14.  In *Carney*, the court approved of an affidavit from a supervisor after noting that she had "personally supervised" the processing of Carney's requests.  *Id.; see also Katzman v. C.I.A.*, 903 F. Supp. 434, 439 (E.D.N.Y. 1995) (directing the CIA to "furnish affidavits from supervisory personnel in each of the three components at issue who personally oversaw the processing of the plaintiff's search request.").

Subsequent decisions have called into question *Katzman* and *Carney*'s conclusion, allowing "general supervisors" to submit declarations about a search without confirming whether the declarants personally supervised the search in question.  *See, e.g. Garcia v. U.S. Dep't of Justice*, 181 F.Supp.2d 356, 368 (S.D.N.Y.2002) (holding that the "Acting Chief of the Litigation Unit which processes FOIA requests [is] the appropriate individual to describe the search for responsive documents in this case"); *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (rejecting the plaintiff's objections to the "second-hand nature of this affidavit," because the affiant "was in charge of coordinating the SEC's search and recovery efforts, and therefore [was] the most appropriate person to provide a comprehensive affidavit."); *see also Davis v. U.S. Dep't of Homeland Sec.*, No. 11-CV-203 ARR VMS, 2013 WL 3288418, at *7-8 (E.D.N.Y. June 27, 2013) ("[S]ince *Katzman*, district courts within this circuit and in the D.C. Circuit have found an official with broader supervisory authority who is not necessarily involved in the specific search for the records at issue to be capable of submitting a sufficient declaration."); *SWAN*, 888 F. Supp. at 243-44 ("Case law does not provide a definitive answer. Most cases simply state that the supervisor of a search may testify to the search without distinguishing between general supervisors (such as the head of an agency) and supervisors who personally oversee a search.").

24

These "discrepancies within the case law" reflect the "fact-intensive nature of this inquiry." *SWAN I*, 888 F. Supp. at 243.  In this case, the Court cannot hold as a matter of law that the three declarations from VHA officials are based on sufficient "personal knowledge" to support a motion for summary judgment.  This is especially true because the declarants provide few details about the searches in question.  *See id.* at 244 ("Depending on the nature of the search and the role and experience of the supervisor, some supervisors who did not personally supervise a particular search may nonetheless learn enough about it to be able to submit a sufficient declaration based on personal knowledge; others may not."); *cf. Davis*, 2013 WL 3288418, at *8 (finding that the declarant's "supervisory position, combined with the thorough description of the search and her familiarity with TSA search procedures, constitutes sufficient personal knowledge for Rule 56(c)(4).").

### D. Reasonableness of Paragraph 19 of the Request

In support of its motion for summary judgment, Defendant argues that paragraph 19 of Plaintiffs' request failed to reasonably describe the records sought, making it "unreasonably burdensome."  Def.'s Mem., 11-12.  At oral argument, Defendant represented that the parties had communicated regarding narrowing this request, and that argument on the issue should be "postponed."  For this reason, the Court does not address whether paragraph 19 imposed an unreasonable burden on Defendant, and awaits the parties' resolution of the issue.  As a result, at this time, summary judgment on this request is inappropriate.

### E. Appropriateness of Defendant's Redactions under Exemption 6

Plaintiffs argue that Defendant "has not carried its burden to prove that an exception to FOIA applies" to VHA's redacted records.  Opp. Mem., 31. Defendant responds that Plaintiffs misstate the relevant law, conflating the public interest in sharing information about subject matter experts with the public interest in publishing the names of task force members.  Reply, 8.  While the Court recognizes Defendant's objections, it agrees with Plaintiffs.

In its production of responsive records, VHA redacted "any veteran information and the names and identifying details of individuals working on a specific task force in a specific area, which area may be considered contentious to those associated with the subject matter." Farer Decl., ¶ 13. VHA states that the members of the task force "have a privacy interest in their personal information and their personal safety," because they may be "subject to harassment or worse if their identities are publicized." *Id.* VHA adds that one SME reported that he "has had his identity disclosed online, leading to publication of pictures of his house." *Id.*

The Second Circuit has consistently emphasized that, "[i]n keeping with the policy of full disclosure, the [FOIA] exemptions are narrowly construed with doubts resolved in favor of disclosure." *Halpern*, 181 F.3d at 287 (quotation marks omitted). The government "bears the burden of demonstrating that an exemption applies to each item of information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Ctr. for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014), *cert. denied*, — U.S. —, 135 S. Ct. 1530 (2015) (emphasis added) (quotation marks and citations omitted) ("Exceptions to FOIA's general principle of broad disclosure of Government records have consistently been given a narrow compass."). To meet its burden, an agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Vietnam Veterans*, 8 F.Supp.3d at 228 (quotation marks omitted).

Defendant claims that VHA's redactions were authorized by Exemption 6 of FOIA. This part of the law exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 is intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 599 (1982).

"To determine whether identifying information may be withheld pursuant to Exemption 6 [the Court] must: (1) determine whether the identifying information is contained in personnel and medical files and similar files; and (2) balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir.2009) (internal quotation marks omitted).  The Court must determine whether "disclosure of the files would compromise a substantial, as opposed to *de minimis,* privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." *Long v. Office of Pers. Mgmt.,* 692 F.3d 185, 191 (2d Cir.2012) (quoting *Multi Ag. Media LLC v. Dep't of Agric.,* 515 F.3d 1224, 1229 (D.C.Cir.2008)). "But the bar is low: FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests." *Id.* (internal quotation marks omitted).

Ms. Farer's declaration references only a "specific task force in a specific area," Farer Decl. 13, but both parties' briefs make clear that VHA applied the exception to exclude the names of SMEs.  *See* Reply, 8 (referring to the "purported public interest in knowing the names of the various VA employees serving as subject matter experts"); Opp. Mem., 31 ("VHA has not indicated what task force these individuals serve on, though context suggests Ms. Farer is referring to the SME program.").

### 1.     Individual Privacy Interests of SMEs

The Second Circuit has recognized "that government investigative personnel may be subject to harassment or embarrassment if their identities are disclosed." *Wood v. F.B.I.*, 432 F.3d 78, 88 (2d Cir. 2005); *Long*, 692 F.3d at 192 ("It is not uncommon for courts to recognize a privacy interest in a federal employee's work status (as opposed to some more intimate detail) if the occupation alone could subject the employee to harassment or attack.")

Defendant cites *Long* to argue that it is entitled to redact the names and personal information of SMEs under Exemption 6.  In *Long*, the Second Circuit held that the Office of Personnel

Management had properly invoked Exemption 6 to prevent the disclosure of the names of officers of many federal agencies, emphasizing that "many of the agencies deal with national security, homeland security, or law enforcement," and their officers could be "vulnerable to harassment or attack." *Long*, 692 F.3d at 192 (citing affidavit from FOIA officer describing threat of harassment).

Additionally, although it acknowledged that "the issue [wa]s close," the *Long* court also concluded that the employees "possess[ed] a cognizable privacy interest in their duty-station records de-linked from their names," because "it would be child's play for a determined researcher to deduce a name from the descriptive data" and the defendant had specifically submitted affidavits stating "how terrorists and others could derive specific work addresses from the duty-station information." *Id.* at 196. Notably, the Exemption did not apply to other personal information concerning the employees, including "job classification, pay, veteran status, and work schedule." *Id.* at 195.

Defendant describes the risk of harassment posed by disclosure of the names of SMEs. It does not, however, describe similar risks associated with disclosure of SMEs's qualifications or experience. Defendant does not attest that limited disclosure of SMEs's qualifications, de-linked from their names, would allow a "determined researcher to deduce [an SME's] name" or location, leading to harassment or threats. *Long*, 692 F.3d at 196. As a result, Defendant has not established that that VA employees possessed a "cognizable privacy interest" in all of their personal information.

## 2.  Public Interest in Disclosure

"Whether the public has an interest in the identity of federal workers, and to what extent, depends on circumstances, including whether the information sought sheds light on government activity." *Long,* 692 F.3d at 193. In many cases, the "disclosure of individual employee names tells nothing about what the government is up to." *Id.* (citations omitted); *Wood*, 432 F.3d at 88-89 (holding that Exemption 6 permitted redaction of the names of low-level FBI employees who participated in investigation because public interest was insufficiently furthered relative to the potential for harassment); *see also Vietnam Veterans*, 8 F. Supp. 3d at 231 ("The public interest in

this case is negligible or nonexistent. The plaintiffs have articulated no public interest that would be served by releasing the employees' names.").

Plaintiffs argue that disclosure of the redacted information is in the public interest.  Their argument, though, primarily concerns the experience and qualifications of SMEs, rather than the experts' names.  Plaintiffs describe a public interest in determining "the qualifications of SMEs" to assess whether these qualifications are sufficient to "justify [the] existence" of the program.  Opp. Mem., 33-34.  Plaintiffs clarified at oral argument that the only public interest in disclosure of the SMEs' names stemmed from the fact that Defendant had, thus far, not produced unredacted records establishing the qualifications of the SMEs, leading Plaintiffs to assume that the SMEs' names and qualifications were inextricably intertwined.  At oral argument, Defendant alluded to the possibility of producing additional records that would establish SMEs' qualifications.

At this point, Defendant does not describe a privacy interest relating to the SME's qualifications and submit no information suggesting that such disclosure would subject SMEs to harassment or threats.  Plaintiffs articulate a public interest in the disclosure of SMEs' qualifications, but do not describe a separate public interest in the disclosure of other identifying details.  Because Defendant represented at oral argument that it will produce additional records in response to Plaintiffs' inquiry about the qualifications of the SMEs, the Court will not address whether Exception 6 would permit redaction of the SMEs' names, if Defendant produced no additional records establishing their qualifications.

### IV.   Relief Requested

Plaintiffs request "leave to depose all agency employees who submitted affidavits on behalf of the agencies, or substitute employees of similar responsibility in the event the declarants are no longer employed by the agency."  Opp. Mem. 41 (citing *El Badrawi*, 583 F. Supp. 2d at 301, 321). They also seek to depose Bradley Flohr, Senior Advisor to the Compensation Service at VBA, because he is "intimately involved with the SME Program at all levels" and because Ms. Brown

consulted with him when addressing Plaintiffs' request.  *Id.*  Defendant argues that the Court should permit supplemental briefing before ordering these depositions.  Reply, 3.

If agency affidavits fail to meet standards in FOIA cases, a "district court will have a number of options for eliciting further detail from the government. It may require supplemental ... affidavits or may permit appellant further discovery."  *Halpern*, 181 F.3d at 295. "[C]ourts have consistently held that a court should not … cut off discovery before a proper record has been developed; for example, where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete." *Vietnam Veterans*, 8 F.Supp.3d at 206 (citing *Exxon Corp. v. FTC*, 466 F. Supp. 1088, 1094 (D.D.C.1978)).

As an initial matter, Defendant suggested at oral argument that it did not perform certain searches that would have been responsive to Plaintiffs' requests, including searches of Mr. Flohr's e-mails, the records of the SMEs themselves, and the folders of the individuals identified in paragraph 19.  This Court has also concluded that Defendant improperly failed to search VBA's Washington, D.C. based records for responsive documents.  Because Defendant agreed at oral argument that many additional searches would be appropriate, the Court does not see the need to order discovery on the reasonableness of the searches until these supplemental searches are complete.  Additionally, the Court has denied summary judgment on Defendant's claim that it reasonably divided Plaintiffs' requests between VBA and VHA, and Defendant may want to conduct further searches before preparing additional affidavits on this matter.  For this reason, the Court orders Defendant to provide to Plaintiff any records in its possession responsive to Plaintiff's FOIA request and consistent with this Court's Ruling within thirty (30) days of the entry of this Ruling.

Following that thirty-day period, to the extent that discovery is still necessary, Plaintiffs will be allowed limited discovery as to the adequacy of Defendant's searches.  First, Defendant must submit supplemental affidavits describing the searches conducted, including searches conducted in response to this ruling. *SWAN I*, 888 F. Supp. 2d at 258 ("Where useful to demonstrate that an

adequate search was conducted, Defendants should submit supplemental affidavits.").  These affidavits must be completed within forty-five (45) days of this ruling.

After this period, forty-five (45) days after this ruling, Plaintiffs will be permitted to depose the agency employees who submitted declarations on behalf of VBA and VHA, or substitute employees of similar responsibility in the event the declarants are no longer employed by the agency. The Court hopes that Defendant's supplemental searches and affidavits will make these depositions unnecessary.  Furthermore, it emphasizes that all depositions must be "limited to the scope of the agency's search." *El Badrawi*, 583 F.Supp.2d at 301. As Plaintiffs note, courts in FOIA cases can grant a party's request to depose "the [agency] employee most knowledgeable about the whereabouts" of a missing file, even if the employee did not submit a declaration in support of summary judgment.  *Id*. at 322.

Nothing in this Ruling, of course, precludes the parties from working out an alternative plan for the resolution of the outstanding issues in this case without further court involvement.

### V.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to the adequacy of Defendant's searches in response to paragraphs 14 and 15 of Plaintiffs' request, and DENIED as to the adequacy of the remaining searches, Defendant's allocation of responsibility for these searches between VBA and VHA, and Defendant's invocation of Exemption 6.  Defendant may submit any supplemental responsive information within thirty days of this Order.  Defendant may submit any additional affidavits describing its searches within forty-five days of this Order.  After this forty-five day period, Plaintiffs may conduct depositions consistent with this Order.

SO ORDERED at Bridgeport, Connecticut this 26th day of May 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE