UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE FEW, THE PROUD, THE FORGOTTEN, et al., | : | Case No. 3:16-cv-647(VAB) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | : | |
| Defendant. | : | February 14, 2018 |

## STATUS REPORT

Pursuant to the court's February 1, 2018 order, the defendant, the United States Department of Veterans Affairs, respectfully submits this status report with respect to the defendant's ongoing compliance with the FOIA request that is the subject of this action.

After the court denied the defendant's motion for partial summary judgment, the defendant determined that the proper course was to essentially start from scratch and re-run the searches required to produce documents responsive to the plaintiffs' FOIA request. That process would also newly include involvement from the defendant's Office of Information and Technology to ensure a more comprehensive search of the emails of sixty-four custodians whom the defendant identified as potentially possessing responsive documents.

The identification of those custodians, the collection of years of their emails, the processing of those emails into the defendant's platform, the application of search terms to them, and the batching and release of those emails to the defendants' FOIA officers took several months and far longer than the FOIA officers and the undersigned anticipated. The delay in searching these emails was exacerbated both by technical issues

with the defendant's search platform that would frequently take the system offline, thereby requiring the defendant to repeat tasks that already had been performed when errors occurred, as well as the sheer volume of emails that needed to be processed. Specifically, due to the number of custodians and the years of emails that needed to be searched, over three million items (emails plus attachments) needed to be processed before search terms could be applied and positive results could be reviewed.[1] Consequently, the FOIA officers were not able to review emails through the platform until November 2017.[2]

Given that timeline, it quickly became clear that completing production by January 2018 pursuant to the court's October 2017 order was not possible, particularly because the breadth of the search terms – which formulated in an effort to satisfy objections that the plaintiffs had raised to the defendant's July 2017 search declarations – resulted in a huge number of documents that were search-term positive but were not actually relevant to the plaintiffs' FOIA request.  Specifically, with respect to the first tier of emails processed, application of the search terms yielded approximately 328,000 documents/725,000 items that needed to be examined to determine responsiveness.  To aid in that effort, between December 2017 and January 2018 the defendant committed to

---

[1] Although a formal history was not taken, the defendant believes that given the scope of the materials that needed to be processed, this is the largest FOIA request ever handled by the agency.

[2] While the process discussed above was ongoing, the defendant worked on other aspects of the plaintiffs' FOIA request that did not require a search of the custodians' emails, and at present the only outstanding searches are of emails. Those searches are designed to look for documents responsive to many different paragraphs of the plaintiffs' FOIA request.

allocate additional resources to this matter to increase the number of employees tagging documents for responsiveness and reviewing and redacting those documents tagged as responsive.

At the time of the January 31, 2018 hearing, those additional employees were being trained and brought into this project, and they now are on board.  Instead of one or two FOIA officers being able to work on the documents released to each subcomponent, VHA now has thirty-one individuals working on this project, including twenty-one employees tagging documents for responsiveness who are supported by three FOIA officers, three more FOIA officers working full time on reviewing and redactions, and four more FOIA officers working a portion of their time on reviewing and redactions.  For VBA, ten additional FOIA staff members have been added, bringing to a total of twelve those individuals who will be working on both tasks – tagging for responsiveness and review and redaction.  The additional personnel added to the teams working on this task obviously will significantly reduce the amount of time it takes to complete the email search.

Moreover, after the parties' meet-and-confer on January 31, 2018, they agreed to restrict the search terms being applied to the emails that have been collected and processed.  Specifically, the plaintiffs withdrew some of the more general search terms that had been producing irrelevant results, and the defendant agreed to add some specific scientific terms newly proposed by the plaintiffs and informed the plaintiffs of some misspelling variations that the team had observed which were being added to the search terms.  As a result, where previously Tier 1 included approximately 328,000

documents/725,000 items that returned positive results against the search terms, Tier 1 now includes approximately 84,000 documents/207,000 items that returned positive results. Across all tiers, the number of search positive documents is approximately 115,000, and the number of positive items is approximately 290,000. As with the added resources dedicated to the project, the parties' agreement on this point also should reduce the amount of time needed to complete the search.

As all of the above illustrates, the defendant has made substantial progress in moving this process toward completion, and the main task now is simply to continue to conduct the required searches, which will best be accomplished by allowing the defendant's team to work on the file with as little interruption as possible. That said, for a number of reasons, it remains extremely difficult for the defendant to offer an estimated time of completion:

First, the numbers identified above do not factor in the substantial number of encrypted material that still must be processed. As would be expected given the mission of the VA, there were a large number of emails (nearly 1.2 million across all three tiers of data) collected that contained protected health information or other personally identifiable information that must be encrypted when emailed. Those emails must be decrypted prior to being processed by the platform and running search terms against them, and the defendant has very limited resources – a single team – available to run decryption for all projects, including other litigation matters, requiring decryption nationwide. About 433,000 documents have been exported to the decryption team in two sections since January 24, 2018, and those two sections sit in positions two and four in the encryption

queue.  The defendant is doing what it can to avoid any "gaps" in what is available to the reviewers; in other words, the goal is to have all the decryption complete before the reviewers finish what is already processed.  But candidly the defendant does not know yet when decryption will be complete, and it also does not and cannot know how many documents will result from application of the search terms to the encrypted collections until decryption is complete.

Second, the defendant's review platform, which allows a determination of the number of documents and items, does not allow a determination of the number of pages that are to be reviewed.  In other words, while the defendant knows how many emails and attachments need to be reviewed, it cannot know how long those emails or attachments are, which makes forecasting an estimated completion difficult.  That said, as to the data that is available, VHA reviewed approximately 88,000 documents for responsiveness in the period since the January 31 hearing, and VBA reviewed approximately 1500 documents for both responsiveness and review and redaction, all before adding the additional personnel.  Because new search terms were applied earlier this week, the amounts remaining have changed, with about 51,000 documents attributable to VHA and another 35,000 attributable to VBA.

Third, the defendant is reluctant to offer a guess as when it might complete the searches in question out of fairness to the court and the plaintiffs.  The defendant acknowledges that it has missed prior deadlines in this case, which deadlines in retrospect were not realistic when they were set, and the defendant would prefer to avoid the possibility of something similar happening again.

In terms of the path forward, the defendant believes that it has demonstrated that the process is now advancing as quickly as it reasonably can and that it is not realistically possible to estimate the date of completion at this time.  The defendant also acknowledges, however, that in the absence of a new deadline, the court and the plaintiffs must have sufficient information to ensure that the defendant is sustaining its progress going forward.  To that end, the defendant proposes that it file on a monthly basis status reports including information similar to that listed above regarding the number of documents reviewed, the number of documents remaining, and the number of documents produced to the plaintiffs in connection with the defendant's rolling productions.

The defendant recognizes that the plaintiffs wish to take depositions of VA personnel to gain information about the status of the searches, but the defendant does not believe that is the most effective use of the VA personnel with knowledge of this case or the searches, and that information is better provided to the plaintiffs by way of the status reports suggested by the defendant.  The defendant respectfully submits that the best way to accomplish the goal of completing these searches is to allow the defendant to devote its resources to the searches themselves rather than to collateral litigation matters that will require the undersigned to take away VA personnel from the task at hand to ensure adequate preparation for those matters.

The defendant acknowledges that the hearing on January 31, 2018, successfully allowed the parties to bridge some information gaps that had arisen with respect to the searches in this case and put this matter on a course toward completion.  But a follow-up conference requiring the personal appearances of VA personnel likely will cause a

deviation from that course.  For that reason, the defendant is contemporaneously filing a motion to excuse the personal appearance of any VA representatives at the status conference scheduled for February 26, 2018.  The undersigned would obviously be prepared to discuss any of the matters raised in this status report, and the defendant seeks leave to have VA personnel available telephonically or by videoconference arranged through the United States Attorney's Office if the parties need to meet and confer as they did on January 31, 2018.

Respectfully submitted,

John H. Durham
United States Attorney

\_\_/s/_____
John W. Larson (ct28797)
Assistant United States Attorney
United States Attorney's Office
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
Tel: 860-947-1101
Fax: 860-760-7979
john.larson@usdoj.gov