# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE FEW, THE PROUD, THE FORGOT-TEN; VIETNAM VETERANS OF AMER-ICA; and CONNECTICUT STATE COUNCIL OF VIETNAM VETERANS OF AMERICA, | Civil Action No. 3:16-cv-00647 (VAB) |
| Plaintiffs, | February 16, 2018 |
| v. | |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER TO SHOW CAUSE FOR CONTEMPT OR, IN THE ALTERNATIVE, WHY A STAY SHOULD ISSUE

### INTRODUCTION

During the more than two years that Defendant has failed to respond to Plaintiffs' Freedom of Information Act request, about 10,000 veterans poisoned by the drinking water at Camp Lejeune have applied for VA benefits. The VA adjudicates these applications under the secretive Subject Matter Expert program to determine whether these veterans' liver cancer, kidney cancer, leukemia, and other life-threatening diseases were caused by the toxic water supplied by their government. Little is known about the Subject Matter Expert program, aside from its near-categorical denial of veterans' claims. Because Plaintiffs believe veterans deserve to know how the government is de-ciding their claims, they asked for the release of records about the program. They are still waiting.

Plaintiffs submitted their FOIA request on December 7, 2015. For over eighteen months, the VA failed to adequately search non-email records. Shockingly, the VA did not even *begin* to search for email records responsive to Plaintiffs' request until July 2017. The VA has failed to

timely comply with every deadline the Court has set for production of records. Not only is the Defendant flouting this Court's orders, the Defendant is also circumventing FOIA and continuing to hide information about the secretive program that is depriving veterans of access to crucial health benefits. Further, the Defendant is either unable or unwilling to share information about its ongoing searches and has refused to state when production may be complete.

By disregarding three court deadlines and failing to offer a time when the search and review of documents will conclude, the VA has effectively taken for itself a stay of proceedings, without asking this Court and in violation of the FOIA statute. Further, the VA itself was the party that sought the January 12, 2018 deadline for production of documents during the October 4, 2017 status conference with this Court. Now, four months after estimating that production would be completed by January 12, the VA cannot offer *any* estimate of an outside date for production of documents, nor has it put facts on the record explaining why such an indefinite stay should be granted. For these reasons, Plaintiffs request that the Court issue an order requiring Defendant to show cause why it should not be held in contempt, or, in the alternative, issue an order requiring Defendant to show cause why it is entitled to a stay of proceedings.

## STATEMENT OF FACTS

The Few, The Proud, The Forgotten; Vietnam Veterans of America; and the Connecticut State Council of Vietnam Veterans of America submitted a FOIA request containing 20 paragraphs. Exhibit 1, FOIA Request dated Dec. 7, 2015. Requesters sought documents about the secretive "Subject Matter Expert" program that was denying nearly 95% of all benefits claims filed by veterans poisoned by the drinking water at Camp Lejeune. Compl., ¶ 13, ECF No. 1. Requesters had reason to believe the doctors serving as "Subject Matter Experts" or "SMEs" might not be

qualified to conduct such toxicological evaluations and were not using the most up to date science in their reports. *Id.* at ¶ 13-18.

Paragraphs 19(b) and (c) of the December 7, 2015 FOIA request sought release of emails between these SMEs and between the SMEs and other VA officials regarding the program. Exhibit 1, FOIA Request, p. 5. There are roughly 30 SMEs, which means over 30 custodians' emails needed to be collected and searched in response to this request. Exhibit 2, Document Produced by Defendant to Plaintiffs, titled "War Room 101014 – Reviewed." More than a year after the submission of Plaintiffs' FOIA request, Defendant's counsel could not represent whether adequate searches for these emails had been performed. ECF No. 26-1, Def.'s Mot. For Partial Summary Judgment, p. 8, n. 3. Consequently, VA moved only for partial summary judgment, excluding Paragraphs 19(b) and (c) from its motion.[1] *Id.*

On May 26, 2017, the Court denied Defendant's Motion for Partial Summary Judgment, except as to paragraphs 14 and 15. *The Few, the Proud, the Forgotten v. United States Dep't of Veterans Affairs*, 254 F. Supp. 3d 341, 364 (D. Conn. 2017). The Court ordered production of all documents subject to the summary judgment order within 30 days and ordered declarations be provided to Plaintiffs within 45 days. *Id.* Ten days before the deadline, the VA moved for an extension of time, which the Court granted, pushing the deadline for production of documents to July 10, 2017 and for declarations to July 25, 2017.

On July 12, 2017, two days after this Court's deadline for the completion of production, Plaintiffs' counsel contacted counsel for the VA asking why Plaintiffs had not received a single document from the VA in response to the Court's summary judgment order. Exhibit 3, Email from

---

[1] Though the VA objected to the scope of the remainder of paragraph 19, the parties executed a stipulation narrowing the scope of the search shortly after the Court issued its summary judgment order.

J. Rowan and T. Ames to J. Larson, dated July 12, 2017. Several hours later, VBA provided its "initial response." Exhibit 4, Forwarded Email from B. Traylor to M. Wishnie, dated July 12, 2017. On September 22, 2017—more than two months after the Court's deadline—VHA claimed to have completed production of documents covered by the Court's summary judgment order. Exhibit 5, Letter from C. Farer to M. Wishnie, dated Sept. 22, 2017.

On September 22, 2017, more than 20 months after the request was submitted, counsel for the VA represented to Plaintiffs' counsel that email searches *had not yet begun*. Exhibit 6, Email from J. Larson, dated Sept. 22, 2017. Counsel for the VA further explained that this delay was due in part to problems with the eDiscovery platform being used to complete Plaintiffs' Request and indicated that no searches could be performed during this malfunction. *Id.* Counsel's "expectation" was that email searches would take "on the order of two or three months from commencement." *Id.* In light of Defendant's uncertainty regarding a deadline for completion of email searches, Plaintiffs moved for a status conference. ECF No. 42, Consent Mot. for Status Conference.

On October 4, 2017, the Court held a status conference with the parties, during which Defendant's counsel represented that production could be completed within three months. Accordingly, the Court ordered a deadline for production of January 12, 2018, and scheduled monthly status conferences to ensure production was on track. ECF No. 45-46.

It was not until December 19, 2017 that the VA indicated that it may miss the January 12 deadline. The Court ordered a hearing if that occurred. On January 31, 2018, at a hearing before the Court, the VA had neither completed production of documents nor was equipped to provide any estimate of the time needed to complete productions. Exhibit 7, January 31, 2018 Hearing, Tr. at 3, 13.

4

During the January 31 hearing, Plaintiffs' counsel offered to assist Defendant in its selection of search terms, which had been returning large numbers of responsive documents. The Court ordered this to be done by February 7, 2018, and ordered both parties to submit status reports on February 14, 2018. The Court further ordered a hearing on February 26, 2018 during which VA employees may be called to testify, and clarified that Plaintiffs had a right to depositions of relevant VA employees. Order, p. 1, ECF No. 64.

Though Plaintiffs' suggested search terms reduced the number of documents to be reviewed to a quarter of its former amount, Defendant still could not even estimate a timeline for the end of searches when it filed its status report on February 15, 2018. Def.'s Status Report, ECF No. 68. Defendant also moved to excuse VA representatives from appearing at the February 26 hearing. Def.'s Mot. To Amend, ECF No. 69.

In light of the unsatisfactory status report and the VA's motion to excuse live testimony, Plaintiffs sought to exercise their right to depositions of the four VA employees brought to the January 31 hearing: Mr. Oleg Chernenko, Ms. Stephanie Griffin, Ms. Gwendolyn Smith, and Mr. Michael Davis. Plaintiffs also sought to depose Mr. Matthew Kitcheroen, whom VA representatives repeatedly cited for his role overseeing the collection, processing, and review of email documents during the January 31 meet and confer. On February 15, 2018, Defendant refused to make these witnesses available for depositions.

## ARGUMENT

## I. THIS COURT SHOULD ISSUE AN ORDER TO SHOW CAUSE FOR WHY THE DEFENDANT SHOULD NOT BE HELD IN CONTEMPT FOR FAILING TO COM-PLY WITH THIS COURT'S JANUARY 12, 2018 PRODUCTION DEADLINE.

### A. THIS COURT HAS THE POWER TO HOLD DEFENDANT IN CONTEMPT.

There is "no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also* Fed. R. Civ. P. 70(a) and (e) ("If a judgment requires a party to . . . perform any [] specific act and the party fails to comply within the time specified, the court may . . . hold the disobedient party in contempt."). Civil contempt is not punitive. Rather, the purpose of civil contempt is two-fold: first, it "secures future compliance with court orders," and second, it "compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004); *see also In re Weiss*, 703 F.2d 653, 660 (2d Cir. 1983). "Consistent with [civil contempt's] remedial purpose, the sanction imposed is generally made contingent on compliance." *Armstrong v. Guccione*, 470 F.3d 89, 101 (2d Cir. 2006) (quoting *In re Irving*, 600 F.2d 1027, 1031 (2d Cir. 1979)). Moreover, district courts have the power to issue findings of contempt in response to noncompliance with court orders. 5 U.S.C. § 552 ("In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee . . . .").

Contempt is especially proper when confronting noncompliance by the government. As the Ninth Circuit has noted, "[g]overnmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir. 1980) (citation omitted). Courts have accordingly issued findings of contempt against agencies that violate court orders both in the context of FOIA

and more broadly. *See, e.g.*, *Landmark Legal Foundation v. EPA*, 272 F. Supp. 2d 70 (D.D.C.

2003) (finding the EPA in contempt for violating a preliminary injunction to prevent the destruc-

tion of materials responsive to plaintiff's FOIA request); *Cobell v. Babbit*, 37 F. Supp. 2d 6 (D.D.C.

1999) (finding cabinet secretaries and assistant secretary in civil contempt for failing to comply

with a document production order). This Court itself has exercised its contempt power to compel

government compliance with court ordered production in *Evans v. State of Connecticut*. In *Evans*

Judge Constance Motley found defendants in contempt for failing to produce documents and or-

dered a fine of $10,000 per day against defendants if such records were not produced within ten

days. *Evans v. State of Conn.*, 967 F. Supp. 673, 687 (D. Conn. 1997), aff'd sub nom. *Evans v.*

*Connecticut*, 24 F. App'x 35 (2d Cir. 2001).

      A party may be held in civil contempt for failure to comply with a court order if "(1) the

order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompli-

ance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a

reasonable manner." *Paramedics Electromedicina Comercial*, 369 F.3d at 655 (quoting *King v.*

*Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995)). It is not necessary to establish that the

violation of the court order was willful. *Id.* (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55,

59 (2d Cir. 1984)).

### B. DEFENDANT'S FAILURE TO COMPLETE DOCUMENT PRODUCTION BY JANUARY 12 IS SUFFICIENT FOR THIS COURT TO FIND DEFENDANT IN CONTEMPT.

      This Court ordered Defendant to complete document production by January 12, 2018. ECF

No. 45. This deadline was clear and unambiguous. It is also clear and convincing that Defendant

has failed to meet this deadline. Defendant admitted in its February 15, 2018 status report that

considerable production remained outstanding and "it has missed prior deadlines in this case."

Def's Status Report, ECF No. 68. As such, the first two elements of the Second Circuit's test for civil contempt are easily met.

The third element is also met. Defendant has not diligently attempted to comply with the January 12 deadline in a reasonable manner. The January 12 deadline was ordered after Defendant represented to this Court that three months was sufficient to complete production of all documents. However, four months later, Defendant has not only failed to complete production but has even failed to complete the initial collection of email records and did not even begin producing records to Plaintiffs until November 2017. Pls.' Status Report, ECF No. 66. Moreover, Defendant failed to even begin searching for email records subject to Paragraph 19(b) and (c) until July 2017 even though these portions of Plaintiffs' FOIA request were not subject to Defendant's motion for partial summary judgment. Thus, Defendant knew—right from the beginning in December 2015—that searches for Paragraph 19(b) and (c) needed to be conducted, *but failed to even begin searching such records until 20 months later*.

While an inability to comply with a court order may make a contempt finding inappropriate, it is the nonmoving party's burden to prove that compliance with the court order was impossible. *United States v. Rylander*, 460 U.S. 752, 757 (1983). As such, the facts presented are sufficient for an order to show cause for why Defendant should not be held in contempt.

## II.     THIS COURT SHOULD ORDER THE VA TO SHOW CAUSE WHY AN *OPEN AMERICA* STAY SHOULD ISSUE.

### A.     FOIA PLACES THE BURDEN ON THE DEFENDANT TO JUSTIFY EXTENSIONS OF TIME TO RESPOND TO FOIA REQUESTS.

Under FOIA, it is the responsibility of the agency to convince the Court that it should not be held to the statutory standards for document disclosure. *See Open Amer. v. Watergate Special Prosecution Force*, 547 F.2d 605, 617 (D.C. Cir. 1976) (Leventhal, J, concurring) ("The safety

valve provisions of § 552(a)(6)(C) were carefully crafted to put a substantial burden on the government to justify to the courts any noncompliance with FOIA time limits."); *see also Exner v. Fed. Bureau Investigation*, 542 F.2d 1121, 1123 (9th Cir. 1976) (discussing government's "burden of proof" to establish (1) the existence of 'exceptional circumstances,' [and] (2) that the agency has and is exercising due diligence"); *Treatment Action Grp. v. Food & Drug Admin. & Dep't of Health & Human Servs.*, No. 15-CV-976 (VAB), 2016 WL 5171987, at *11 (D. Conn. Sept. 20, 2016) ("TAG") ("An agency requesting an *Open America* stay faces a high burden."). Agencies must "make the records available to any person," who requests them. 5 U.S.C. § 552 (a)(3)(A) (2012). Further, they must accomplish this public duty in a timely manner. *Id.* at § 552(a)(6)(A)(ii). FOIA's statutory structure is thus clear that not only do agencies have a responsibility to provide an adequate response, substantively, to requesters, but also that the response is prompt. *See, e.g.*, *id.* at § 552(a)(6)(C)(i) ("Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request.").

At this point, Plaintiffs have already waited more than two years for responsive records of vital public importance. "Such delay is clearly inconsistent with the purpose of FOIA." *Donham v. U.S. Dep't of Energy*, 192 F. Supp. 2d 877, 882 (S.D. Ill. 2002).

## B. DEFENDANTS WILL BE UNABLE TO MEET THEIR BURDEN UNDER FOIA TO OBTAIN A STAY.

### 1. *The FOIA Statute Establishes Particular Requirements for What is Required in Order to Obtain a Stay of Proceedings.*

In limited circumstances, Congress and the courts have provided agencies with a carefully restricted "safety valve" to avoid liability when statutory deadlines simply cannot be met. *Open America*, 547 F.2d at 605. In such cases, Congress has provided that "[i]f the government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to

the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i); *see also Open America* 547 F.2d at 616 (providing first elaboration of these standards). If the agency fails to make the appropriate showing on these two elements, it is simply not entitled to a stay. "Congress wrote a tough statute on agency delay in FOIA compliance, and recently made it tougher." *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999); *see also Citizens for Resp. & Ethics in Wash. v. Fed. Election Com'n*, 711 F.3d 180, 185 (D.C. Cir. 2013) ("CREW") ("Once, in court, however, the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court. (Note that 'exceptional circumstances' is different from 'unusual circumstances.')").

This Court has elaborated the following test for whether or not to grant an agency's motion for an *Open America* stay. The court considers whether: "'(1) [the agency] is deluged with a volume of requests for information on a level unanticipated by Congress; (2) existing agency resources are inadequate to deal with the volume of requests within the time limits established;' and (3) 'the agency can show that it is exercising due diligence in processing the requests.'" *TAG*, 2016 WL 5171987, at *10 (citing *Bloomberg, L.P. v. United States Food & Drug Admin.*, 500 F. Supp. 2d 371, 374 (S.D.N.Y. 2007)).

### 2. *Defendants Have Not Met Their Burden Under the Statute That They Show "Exceptional Circumstances"*

As enunciated by this Court, the exceptional circumstances prong of FOIA's stay provision encompasses two distinct requirements: "'(1) [the agency] is deluged with a volume of requests for information on a level unanticipated by Congress; [and](2) existing agency resources are inadequate to deal with the volume of requests within the time limits established[.]" *TAG*, 2016 WL 5171987, at *10 (citing *Bloomberg,* 500 F. Supp. 2d at 374). Neither of these requirements have been established by Defendants.

10

Congress and the courts have specifically circumscribed when "exceptional circumstances" may be invoked. According to the statute, "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). This Court has interpreted this provision to require "an agency . . . [to] make a specific showing that the number or type of FOIA requests have become increasingly or unexpectedly more complex of late." *TAG*, 2016 WL 5171987, at *10.

In this Circuit, in *National Laborer Organizing Network v. United States Immigration and Customs Enforcement*, 236 F. Supp. 3d 810, 819 (S.D.N.Y. 2017), the court refused to find exceptional circumstances, even given a discussion of the agency's docket and the size of the request, because "defendants [did] not addresses at all whether they currently face a volume of requests on a level unanticipated by Congress." *Id.* at 819. Similarly, the same court refused to assume the agency had "made reasonable progress in reducing of existing backlog of pending requests." *Id.* Thus, until the VA makes these showings, it is not entitled to a stay of proceedings.

Alternatively, Congress has specifically indicated one occurrence that courts must use in determining whether exceptional circumstances exist. It has commanded "[r]efusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph." 5 U.S.C. § 552(a)(6)(C)(iii). Plaintiffs in this case have not been intransigent and certainly have not refused to modify the request or time frame. In fact, as Defendant's last Status Update reveals, Plaintiffs have been willing to work closely to ensure that the search is not overbroad. Def's Status Report, p. 3, ECF No. 68..

3.  *Defendants Have Not Met Their Burden to Demonstrate the Exercise of "Due Diligence"*

This Court has also established what is required for an agency to meet its burden under the due diligence prong. In general, agencies can demonstrate due diligence by "complying with all lawful demands under FOIA in as short a time as is possible by assigning all requests on a first-in, first out basis." *Fisher v. F.B.I.*, 94 F. Supp. 2d 213, 217 (D. Conn. 2000) (internal quotation marks omitted). Plaintiffs, and this Court, have heretofore not been provided any information about how the VA processes its requests. Additionally, courts have "generally require[d] that an agency using a first-in, first-out process also make an additional showing that it has 'made reasonable progress in reducing its backlog of pending requests.'" *TAG*, 2016 WL 5171987, at *10 (quoting *Gov't Accountability Project v. U.S. Dep't of Health & Human Servs.*, 568 F. Supp. 2d 55, 59 (D.D.C. 2008). Moreover, courts have required agencies to show that the reduction is "attributable to the measures Defendants have undertaken. *Gov't Accountability Project*, 568 F. Supp. 2d at 59. Finally, "if the agency's actions 'suggest a pattern of unresponsiveness, delays, and indecision' with regards to the specific FOIA request at issue, the Court may find 'an absence of due diligence.'" *TAG*, 2016 WL 5171987, at *10 (quoting *Bloomberg*, 500 F. Supp. 2d at 376).

The VA has not met its burden on any of these requirements. It has not described its backlog, nor efforts taken to reduce it. Factors routinely cited by courts in due diligence analyses include "requests for additional funding, modernizing practices and equipment, and initiatives tied to backlog deductions." *Bloomberg*, 500 F. Supp. 2d 371. The VA has provided no information on these accounts either.

12

### C.  COURTS POSSESS, AND HAVE EXERCISED, THE POWER TO REQUIRE AGENCIES TO MEET THEIR OBLIGATIONS UNDER FOIA

Federal courts routinely exercise their authority under equity and FOIA to ensure that disclosures are being released in a timely fashion. *See generally CREW*, 711 F.3d at 189-90 ("But in such exceptional circumstances, the agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request.").

More specifically, courts are able and have required agencies to show cause why a stay should be issued. In *Laroque v. United States Department of Justice*, the District of District Columbia Court issued a show cause after finding that "almost an entire a year to process" was enough time, barring good cause. *Laroque v. U.S. Dep't of Justice*, Civ. A. No. 86-2677, 1987 WL 12569, at *1 (D.D.C. June 5, 1987) ("ORDERED that defendants process plaintiff's outstanding requesting by no later than June 26, 1987 or *show cause why this Court should grant an extension of time* in light of the allegations in plaintiff's complaint establishing that the above agencies have had almost an entire year to process these requests . . . . ."). Similarly in *Conservation Force v. Jewell*, the court responded to the Environmental Protection Agency's pending stay request with an order to "show cause in writing why the requested extension of time should be granted . . . ." 160 F. Supp. 3d 194, 199-200 (D.D.C. 2016).

Thus, in the analogous situation presented here, where the VA has made no effort on the record to justify its failure to meet statutory and court-mandated deadlines for production, it would be proper relief to order it to show cause why an *Open America* stay should issue from this Court.

### CONCLUSION

The VA has repeatedly violated this Court's orders and circumvented their obligations under FOIA. For these reasons, Plaintiffs respectfully request that the Court issue an Order that:

(1)     orders the Defendant to show cause why it should not be held in civil contempt for violating this Court's October 4, 2017 order that the Defendant complete production by January 12, 2018;

(2)     orders the Defendant to make available VA employees Oleg Chernenko, Stephanie Griffin, Gwendolyn Smith for Plaintiffs to take their depositions within the next 14 days;

(3)     orders the Defendant to make available VA employees Michael Davis and Matthew Kitcheroen or another individual with an equivalent level of knowledge of Defendant's FOIA search and review processes for Plaintiffs to take their deposition(s) within the next 14 days;

(4)     orders Defendant to pay all attorneys' fees and costs associated with Plaintiffs' efforts to obtain responsive records in this litigation, including efforts made in connection with this Motion;

(5)     and/or, in the alternative, requires the Defendant to show cause why a stay should issue pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and *Open Amer. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976); and,

(6)     such other relief as may be just and proper.

Dated: February 16, 2018
New Haven, Connecticut

Respectfully submitted,

BY:   /s/ Aaron P. Wenzloff
Aaron P. Wenzloff (ct28616)
Shikha Garg, Law Student Intern
Jacob Gelman, Law Student Intern[*]
Corey Meyer, Law Student Intern
Helen White, Law Student Intern
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
Fax: (203) 432-1426
aaron.wenzloff@ylsclinics.org

*Counsel for Plaintiffs*

---

[*] Motion for law student appearance forthcoming.