# EXHIBIT 2



**DEPARTMENT OF VETERANS AFFAIRS**
**Veterans Benefits Administration**
**810 Vermont Ave, NW**
**Washington, D.C.  20420**

August  31, 2016

Michael Wishnie
Director, Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520-9090
Michael.wishnie@yale.edu

RE:  FOIA Request:  **16-01992-F**

Dear Mr. Wishnie:

This letter is in response to your Freedom of Information Act (FOIA), 5 U.S.C. § 552, request dated December 7, 2015, but received in my office on December 9, 2015.  You requested the following:

1. Any and all Records concerning the policies, procedures, objectives, development, creation, and implementation of the SME Program.
2. Any and all Records concerning the VA's selection criteria and minimum required credentials for SMEs participating in the Camp Lejeune SME Program.
3. Any and all Records concerning the qualifications and names of SMEs who have participated, or are currently participating, in the Camp Lejeune SME Program.
4. Any and all Records concerning the Camp Lejeune SME Program's conflict of interest policies and procedures, including but not limited to Records concerning:

    a) the application of VHA conflict of interest policies and procedures (including the policy on "Financial Relationships Between VHA Health Care Professionals and Industry" ) to the Camp Lejeune SME Program and individual SMEs;
    b) investigations of complaints or allegations of SMEs' conflicts of interest;4 and
    c) SME violations of conflict of interest policies and procedures

5. Any and all Records concerning the number of SMEs who have participated, or are currently participating, in the Camp Lejeune SME Program and their length of employment or work for the VA, including but not limited to:

    a) the total number of SMEs who have participated in the Camp Lejeune SME Program who are employees of the VA. For such individuals, include the duration of their employment by the VA and their current and former positions at the VA; and

    b) the total number of SMEs participating in the Camp Lejeune SME Program who are not employees of the VA, including details of any and all work they may have done for, or on behalf of, the VA in the past.

6. Any and all Records concerning the procedures for assigning claims to SMEs.

7. Any and all Records used to train or provided as guidance to the Camp Lejeune SMEs, including any lists of bibliographical references provided to SMEs.

8. Any and all Records of the bibliographic references collated by the Camp Lejeune SME Program, as referenced in the testimony of Dr. Ralph Erickson at the Senate Committee on Veterans' Affairs hearing on September 29, 2015.

9. Any and all Records identifying the medical and scientific reports cited in individual SME reports, including Records identifying or otherwise sufficient to disclose the number of citations to each individual medical and scientific report both by individual SMEs and in the aggregate for all SMEs participating in the program.

10. Any and all Records provided to VA employees, including VA Regional Office claim adjudicators, to train and educate VA employees on the Camp Lejeune SME Program, including, but not limited to, the role of SME reports and how to weigh and evaluate SME reports.

11. Any and all Records concerning guidance provided to adjudicators on whether to seek an SME report in the course of adjudication of a Camp Lejeune Water Contamination Claim.

12. Any and all Records concerning the V A's disclosure of SME reports, including but not limited to:

    a) the VA's disclosure policy on SME Reports; and

    b) the number of instances in which a claimant has requested a copy of the SME report generated in his or her case. For each claimant request, include information on how quickly the requested report was provided to the claimant or, if the request was denied, the grounds for withholding the SME report from the claimant.

13. Any and all Records concerning the total number of Camp Lejeune Water Contamination Claims decided prior to the implementation of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants). This Request seeks records created before and after 2010.

14. Any and all Records concerning the impact of the Camp Lejeune SME Program on adjudication of claims, including but not limited to:

    a) the total number of Camp Lejeune Water Contamination Claims that have been adjudicated since the institution of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of

a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

b) the total number of Camp Lejeune Water Contamination Claims that have been reviewed by SMEs and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

c) the total number of Camp Lejeune Water Contamination Claims reviewed by each individual SME, including the number of claims that were approved and denied following review by each SME; and

d) the total number of instances in which an adjudicator decided a case against the recommendation of an SME report.

15. The number of Camp Lejeune Water Contamination Claims that have been decided since Secretary McDonald assured Senators on a conference call in July 2015 that no claims would be denied until a presumption was proposed, including whether those claims were granted or denied.

16. Any and all Records concerning the annual costs of the Camp Lejeune SME Program.

17. Any and all Records concerning the remuneration paid to SMEs by the VA.

18. Any and all Records, including timesheets, concerning the amount of time spent by each SME on each individual claim reviewed by an SME (whether or not the SME ultimately provided a written report).

19. Any and all Records concerning internal and external communications about the Camp Lejeune SME Program, including but not limited to communications involving Dr. Terry Walters, Dr. Gerald Cross, Brad Flohr, Dr. Michael Koopmeiners, Dr.Victoria Cassano, Dr. Carolyn Clancy, Dr. Ralph Erickson, Dr. Deborah Heaney, Dr. Ronald F. Teichman; Dr. Wanda Blaylark, Dr. Gary B. Wilhelm, Dr. Amir Mohammad; Dr. Ronit Ben-Abraham Katz:

a) concerning the proposal, development, objectives, and implementation of the Camp Lejeune SME Program;

b) between SMEs pertaining to the Camp Lejeune SME Program;

c) between SMEs and other VA employees pertaining to the Camp Lejeune SME Program

d) between VA employees and Congressional staff regarding the inception or operation of the Camp Lejeune SME Program, including but not limited to minutes from the July 2015 and December 2015 meetings between VA Secretary McDonald and Members of Congress, including Senators Burr and Tillis;

e) between VA employees pertaining to the Camp Lejeune SME Program; and

f) discussing or responding to media inquiries concerning the Camp Lejeune SME Program.

20. Any and all Records of the Advisory Committee on Disability Compensation("Advisory Committee"), which oversees the adjudication of Camp Lejeune Water Contamination Claims and the Camp Lejeune SME Program, including but not limited to:

a) reports generated by the Advisory Committee; and

  b)  Transcripts of Advisory Committee meetings held since 2010.

Requesters ask that any Records that exist in electronic form be provided in electronic format via electronic mail or on a compact disc. If Records cannot be provided in electronic form or in hard copy, Requesters seek the opportunity to view the Records in the VA's offices.

*Please note some of the information requested in your inquiry falls under the jurisdiction of the Veterans Health Administration (VHA).  Per my telephonic conversation with your assistant Joya, my office will only address information that pertains to VBA in our final response notification.  It was determined that VBA will only respond to request numbers 10, 12, 13, 14, 15, 16, 17, some of 19 and some of 20. After further conversations with VHA, it has determined that VHA will also address items 16 and 17 in their final notification letter to you.*

Please be advised an agency is not obligated to create a new record to comply with a request. An agency is neither required to collect information it does not have, nor must an agency research or analyze data for a requester. However, an agency will sometimes help a requester identify a specific document that contains the information being sought."

https://oversight.house.gov/wp-content/uploads/2012/09/Citizens-Guide-on-Using-FOIA.2012.pdf

**Question 10:**  Any and all Records provided to VA employees, including VA Regional Office claim adjudicators, to train and educate VA employees on the Camp Lejeune SME Program, including, but not limited to, the role of SME reports and how to weigh and evaluate SME reports.

**Response 10:**  Enclosed are documents with VBA guidance on resolving claims related to Camp Lejeune contaminated water.  These are not necessarily limited to the SME program.

- Training letter (TL) 10-03, Environmental Hazards in Iraq, Afghanistan, Other Military Installations.  Please be advised that TL 10-03 has been rescinded due to its incorporation into VBA's adjudication procedures manual, M21-1;

- Emails regarding the consolidated processing of Camp Lejeune claims to the Louisville Regional Office and provided specific training to personnel in Louisville in December 2010;

- Fast Letter 11-03, Consolidation and Processing of Disability Claims Based on Exposure to Contaminated Drinking Water at Camp Lejeune, North Carolina. which has been rescinded due to its incorporation into M21-1.

- TL 11-03, Processing Disability Claims Based on Exposure to Contaminated Drinking Water at Camp Lejeune,  which has been rescinded due to its incorporation into M21-1.

**Question 12:**  Any and all Records concerning the VA's disclosure of SME reports, including but not limited to:

   a) the VA's disclosure policy on SME Reports; and
   b) the number of instances in which a claimant has requested a copy of the SME report generated in his or her case. For each claimant request, include information on how quickly the requested report was provided to the claimant or, if the request was denied, the grounds for withholding the SME report from the claimant.

**Response 12a):**  VA's policy on a claimant requesting a record on themselves can be found using the below embedded links.  The following two links governs the release of records from VA:

   1. [VA Handbook 6300.4 – Procedures for Processing Requests for Records Subject to the Privacy Act](#)
   2. [Privacy Act of 1974](#)

**Response 12b):**  We are unable to determine this information.  Therefore, we are providing a negative response for this portion of your inquiry.

**Question 13:**  Any and all Records concerning the total number of Camp Lejeune Water Contamination Claims decided prior to the implementation of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants). This Request seeks records created before and after 2010.

**Response 13:**  The Camp Lejeune Program commenced in September 2010 and the Camp Lejuene SME program began in May 2012.  Data on the Camp Lejeune Program prior to January 2011 is unavailable.  Chart 1 below provides the number of claims completed and the average days to complete a claim from January 2011 through April 2012.  The data provided in chart 2 illustrates the total number of Camp Lejuene issues decided from January 2011 through April 2012, including the number of grants and denials.

**Chart 1**

| Claims Completed | Average Days to Complete |
|---|---|
| 1,449 | 341 |

**Chart 2**

| Unique Veteran Applied for Environmental Hazard Camp Lejeune (EHCL) Issues | Granted | Denied |
|---|---|---|
| 3,504 | 484 | 3,020 |

**Question 14:**  Any and all Records concerning the impact of the Camp Lejeune SME Program on adjudication of claims, including but not limited to:

    a) the total number of Camp Lejeune Water Contamination Claims that have been adjudicated since the institution of the Camp Lejeune SME Program and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

    b) the total number of Camp Lejeune Water Contamination Claims that have been reviewed by SMEs and the outcomes of those claims (including average time between submission of a claim and initial determination by a Regional Office, the number of denials, and the number of grants);

    c) the total number of Camp Lejeune Water Contamination Claims reviewed by each individual SME, including the number of claims that were approved and denied following review by each SME; and

    d) total number of instances in which an adjudicator decided a case against the recommendation of an SME report

**Response 14a**:  The charts below provide data on claims adjudicated since the Camp Lejeune SME Program was implemented in May 2012.  Chart 3 provides data on the number of claims completed and the average days to complete a claim from May 2012 through July 2016, and Chart 4 provides data on the the number of issues decided from May 2012 through July 2016, including grants and denials.

**Chart 3**

| Claims Completed | Average Days to Complete |
|---|---|
| 20,332 | 349 |

**Chart 4**

| Unique Veteran Applied for Environmental Hazard Camp Lejeune (EHCL) Issue | Number of Grants | Number of Denials |
|---|---|---|
| 41,032 | 1,963 | 39,069 |

The EHCL Summary for Total Completed EHCL claims is derived from all completed EHCL claims with a special issue flash (not Claimant Flash) of Environmental Hazard Camp LeJeune.

VA does not have data on which specific claims were reviewed by SMEs or the total number of instances in which an adjudicator decided a case against the recommendation of an SME report.  Therefore, we are providing a negative response for questions 14b to 14d.

**Question 15:**  The number of Camp Lejeune Water Contamination Claims that have been decided **since** Secretary McDonald assured Senators on a conference call in July

2015 that no claims would be denied until a presumption was proposed, including whether those claims were granted or denied.

**Response 15:**  Chart 5 below provides data on the number of claims completed and the average days to complete a claim from July 2015 through July 2016.  Chart 6 provides data on the the number issues decided from July 2015 through July 2016, including grants and denials.

Please note that VA's current policy of holding denials which you referencd only applies to certain conditions VA anticipates proposing to designate as service-connectable on a presumptive basis, not the entire universe of Camp Lejeune claims.

**Chart 5**

| Claims Completed | Average Days to Complete |
|---|---|
| 6,577 | 256 |

**Chart 6**

| Unique Veteran Applied for Environmental Hazard Camp Lejeune (EHCL) Issue | Number of Grants | Number of Denials |
|---|---|---|
| 12,416 | 381 | 12,035 |

**Question 19:**  Any and all Records concerning internal and external communications about the Camp Lejeune SME Program, including but not limited to communications involving Dr. Terry Walters, Dr. Gerald Cross, Brad Flohr, Dr. Michael Koopmeiners, Dr.Victoria Cassano, Dr. Carolyn Clancy, Dr. Ralph Erickson, Dr. Deborah Heaney, Dr. Ronald F. Teichman; Dr. Wanda Blaylark, Dr. Gary B. Wilhelm, Dr. Amir Mohammad; Dr. Ronit Ben-Abraham Katz:
   a)  concerning the proposal, development, objectives, and implementation of the Camp Lejeune SME Program;
   b)  between SMEs pertaining to the Camp Lejeune SME Program;
   c)  between SMEs and other VA employees pertaining to the Camp Lejeune SME Program
   d)  between VA employees and Congressional staff regarding the inception or operation of the Camp Lejeune SME Program, including but not limited to minutes from the July 2015 and December 2015 meetings between VA Secretary McDonald and Members of Congress, including Senators Burr and Tillis;
   e)  between VA employees pertaining to the Camp Lejeune SME Program; and
   f)  discussing or responding to media inquiries concerning the Camp Lejeune SME Program.

**Response 19:**  As agreed to in an email dated February 11, 2016 (enclosed), VA is providing 18 emails that are responsive to your request.  The emails from the Louisville

RO provided guidance on handling claims for disabilities potentially resulting from exposure to contaminated drinking water.

 Please be advised a review of additional communications revealed that they contain information that falls within the disclosure protections of FOIA Exemption 6, 5 U.S.C. § 552(b)(6).  FOIA Exemption 6 permits VA to withhold a document or information within a document if disclosure of the information would constitute a clearly unwarranted invasion of a living individual's personal privacy.  Hence, VA may withhold information under FOIA Exemption 6 where disclosure of the information, either by itself or in conjunction with other information available to either the public or the FOIA requester, would result in an unwarranted invasion of an individual's personal privacy without contributing significantly to the public's understanding of the activities of the federal government.

Specifically, the information being witheld under FOIA Exemption 6, as indicated on the enclosed documents, consists of the names and identifying details of individuals (Rating Veteran Service Representatives (RVSRs)) working as decision makers on specific tasks; the work conducted by the RVSR may be considered contentious to those associated with the subject matter. As a result, RVSRs may be subject to harassment or worse if their identities are publicized. Please note that while federal civilian employees generally have a limited privacy interest in information such as their names, they do, nonetheless, retain a significant privacy interest under certain circumstances, such as in instances where the release of their information could represent a threat to their well-being, harassment, or their ability to function within their sphere of employment. Therefore, we conclude that the RVSRs have a privacy interest in their personal information and their personal safety under the circumstances presented here. I have also protected the email addresses and phone numbers of employees.  Although a BlackBerry is a government issued device, it provides direct contact to the individual during both duty and off duty hours. The protected information has been redacted and (b6) inserted.

The coverage of FOIA Exemption 6 is absolute unless the FOIA requester can demonstrate a countervailing public interest in the requested information by demonstrating that the individual is in a position to provide the requested information to members of the general public and that the information requested contributes significantly to the public's understanding of the activities of the Federal government.

**Question 20:**  Any and all records of the Advisory Committee on Disability Compensation ("Advisory Committee"), which oversees the adjudication of Camp Lejeune Water Contamination Claims and the Camp Lejeune SME Program, including but not limited to:
   a)  reports generated by the Advisory Committee; and
   b)  Transcripts of Advisory Committee meetings held since 2010

**Response 20:** VBA does have an Advisory Committee on Disability Compensation (ACDC) that operates under the Federal Advisory Committee Act (FACA). The ACDC does not oversee adjudication of any claims, to include Camp Lejeune claims, nor are they involved in any way with VHA's SMEs that provide medical opinions on claims for disability and death benefits based on service at Camp Lejeune.

The ACDC received one briefing where Camp Lejeune related issues were discussed as part of the *Presumptive Service Connection* presentation by Mr. Flohr. Enclosed is a copy of the meeting minutes and transcripts from the ACDC meeting that was held on March 21-22, 2016 for your review.

This concludes our response to your FOIA request.

Your request was processed by the undersigned. You may appeal the determination made in this response to:

> General Counsel (024)
> Department of Veterans Affairs
> 810 Vermont Avenue, N.W.
> Washington, D.C. 20420

If you should choose to make an appeal, your appeal must be postmarked no later than sixty (60) calendar days after the date of the adverse determination. It must clearly identify the determination being appealed and must include any assigned request number.

The appeal should also include:

1. The name of the FOIA Officer
2. The address of the component
3. The date of the component's determination, if any
4. The precise subject matter of the appeal

If you choose to appeal only a portion of the determination, you must specify which part of the determination you are appealing. The appeal should include a copy of the request and VA's response, if any. The appeal should be marked "Freedom of Information Act Appeal".

**Point of Contact**

Thank you for your interest in the Department of Veterans Affairs.  Customer service is very important to us.  If you have questions regarding this letter, please contact B. Leah Brown at (202) 461-9740 and refer to the assigned case number.

Sincerely yours,

*Bertha Brown*

Bertha Brown
Compensation Service, FOIA Officer
Veterans Benefits Administration

Enclosure:  Louisville Regional Office Emails, Redacted
                  ACDC Transcript
                  ACDC Meeting Minutes March 21-22, 2016
                  Fast Letter 11-03, Rescinded
                  Training Letter 10-03, Rescinded
                  Training Letter 11-03, Rescinded
                  Email from Joya Sonnefeldt dated February 11, 2016

10