# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE FEW, THE PROUD, | : | Case No. 3:16-cv-647(VAB) |
| THE FORGOTTEN, et al., | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| VETERANS AFFAIRS, | : | |
|     Defendant. | : | June 17, 2019 |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CONTEMPT OR MOTION FOR SUMMARY JUDGMENT

The defendant, the United States Department of Veterans Affairs (the "VA"), respectfully submits this opposition to the plaintiffs' motion for summary judgment or, in the alternative, their renewed motion for civil contempt, filed on May 17, 2019.

## I.      BACKGROUND

This case involves substantially more background than the defendant will present here, though certain of the history is relevant to the plaintiffs' efforts to challenge the VA's redaction of the names of the subject matter experts ("SMEs") that are at the center of the FOIA request that gave rise to this case.

On December 23, 2016, the defendant moved for partial summary judgment with respect to the adequacy of (most of) its searches for records responsive to the plaintiffs' FOIA request, as well as certain redactions that were made pursuant to exemptions to FOIA. On April 24, 2017, the court held oral argument on the defendant's motion. At argument, the parties and the court discussed at length the issue raised here, namely, the redaction of SME names under FOIA Exemption 6, though the issue was in part tabled

pending supplemental production of material responsive to the plaintiffs' FOIA request

for records "concerning the qualifications and names of the SMEs who have participated,

or are currently participating, in the Camp Lejeune SME Program."  On May 26, 2017,

the court denied in substantial part the defendant's motion for summary judgment, and

that order also addressed the VA's redactions of SME names from its production.  Oral

argument and the court's order regarding that issue are discussed in greater detail below.

After the court's order, the VA began the long process of fully complying with

what was quickly realized to be one of, if not the, largest FOIA request the agency has

ever handled.  The VA essentially began the searches anew, and a second round of rolling

productions from VHA commenced on July 13, 2017.  Over the next year and a half, the

defendant produced documents while the parties – sometimes cooperatively, mostly

adversely – dealt with issues pertaining to production as they came up.

On February 16, 2018, the plaintiffs filed a motion seeking to hold the VA in civil

contempt in connection with the VA's failure to have completed document production.

On April 19, 2018, the court issued an order denying without prejudice the plaintiffs'

motion for contempt and imposing certain requirements on the VA going forward,

including a final production deadline of January 11, 2019 (see document no. 98).  Over

the next several months, the VA filed monthly status reports, and the parties participated

in monthly conference calls with the court to ensure that no problems arose that would

threaten the final deadline for compliance.  The VA ultimately did complete production

by the January 11, 2019 deadline, with search declarations and Vaughn indices following

on February 18, 2019 (with permission of the court due to the undersigned having been furloughed for nearly all of January, <u>see</u> docket no. 139).[1]

On April 1, 2019, the court contacted the parties to reschedule the final in-person status conference that had been scheduled earlier.  On April 3, 2019, the plaintiffs confirmed their availability on the court's proposed date but requested that the conference be conducted telephonically, in part "because plaintiffs don't anticipate that the parties will have many issues to discuss."  The court thereafter calendared a "terminal telephonic status conference" for April 25, 2019.  <u>See</u> docket no. 142.

On that date, the parties agreed to speak briefly just before calling the court.  On that call, for the first time, the plaintiffs indicated that they intended to challenge certain of the VA's redactions, particularly to the names of SMEs pursuant to FOIA Exemption 6.  The plaintiffs subsequently explained their intentions to the court during the parties' status conference call, and the court set a briefing schedule to brief the plaintiffs' anticipated dispositive motion.

On April 26, 2019, the court issued an order modifying the briefing schedule that had been entered the previous day.  Specifically, the court instructed the plaintiffs to raise their issues concerning the VA's redactions in the context of a renewed motion for civil contempt in light of the court's previous rulings on summary judgment and with respect to the plaintiffs' motion for contempt.  The instant motion followed.  In it, the plaintiffs ask the court to "order the un-redaction of SMEs' names on the emails and resumes" that

---

[1]The VA subsequently served corrections to the <u>Vaughn</u> indices to cure certain formatting errors and inadvertent omissions that counsel for the plaintiffs discovered when reviewing the original documents.

had been produced by the VA in response to the plaintiffs' FOIA request.  The plaintiffs

ask for that relief in the context of a motion for summary judgment, but they also state

that they are "amenable" to relief through an order of contempt.

## II.   LEGAL STANDARDS

### A.   Civil Contempt

 "A court may hold a party in contempt if (1) the order the party failed to comply

with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing,

and (3) the party has not diligently attempted to comply in a reasonable manner." CBS

Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016); see also id. ("The

contempt power serves to protect[ ] the due and orderly administration of justice and [to]

maintain[ ] the authority and dignity of the court" (alterations in original; citation

omitted; internal quotation marks omitted)).  "It is basic law that a civil contempt

sanction must only be compensatory or coercive, and may not be punitive." Gucci Am.,

Inc. v. Weixing Li, 768 F.3d 122, 144 (2d Cir. 2014).

### B.   Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall

render summary judgment when a review of the entire record demonstrates "'that there is

no genuine issue as to any material fact.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986).  "To prevail on a motion for summary judgment in a FOIA case, the defending

agency bears the burden of showing that its search was adequate and that any withheld

documents fall within an exemption to the FOIA." Carney v. Department of Justice, 19

F.3d 807, 812 (2d Cir. 1994).

In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." <u>Long v. Office of Pers. Mgmt.</u>, 692 F.3d 185, 190 (2d Cir. 2012).  "Affidavits or declarations supplying facts . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden. . . . Affidavits submitted by an agency are accorded a presumption of good faith . . . ." <u>Carney</u>, 19 F.3d at 812 (footnote and internal quotation marks omitted).

## III.    ARGUMENT

### A.    The Plaintiffs Cannot Establish that the VA is in Contempt of Any Court Order Regarding Redactions

As noted earlier, the court's April 26, 2019 order instructs the plaintiffs to address their challenge to the VA's redactions by way of a renewed motion for civil contempt. The plaintiffs, however, cannot establish the elements of civil contempt, and their motion should be denied.

The parties do not disagree on the standard applicable to civil contempt, and frankly the parties do not appear to disagree on the fact that the plaintiffs cannot satisfy those standards.  Indeed, the plaintiffs acknowledge that "the Court did not conclusively determine whether SME names could be redacted."  (Pls.' Mem., 6.)  Given that admission, it is not possible for the VA to have failed (let alone clearly or convincingly so) to comply with a clear and unambiguous court order.

Nevertheless, the plaintiffs argue in passing that a finding of contempt is appropriate since the VA's "redactions are inappropriately broad," which means, according to the plaintiffs, that the VA's "failure to comply <u>with the law</u> is clear,

unambiguous, and convincing." (Id.)  But it is not alleged noncompliance with FOIA

that can form the basis for a contempt order; rather, it is – as the plaintiff's brief concedes

– noncompliance with a court order that is required.  (See id.)  Where, as here, there is no

noncompliance with a court order on redactions, there can be no contempt.

A finding of contempt here would be even more inappropriate in light of the prior

history in this case on this issue.  Specifically, the court's ruling on summary judgment

addressed the parties' arguments regarding the redaction of SME names, and the court

expressly acknowledged the difference between the redaction of SME qualifications and

the redaction of SME identities:

- "Defendant describes the risk of harassment posed by disclosure of the names of SMEs. It does not, however, describe similar risks associated with disclosure of SMEs's qualifications or experience."  (Ruling, docket no. 39, at 28.)

- "In many cases, the disclosure of individual employee names tells nothing about what the government is up to."  (Id. (internal quotation marks omitted).)

- "Plaintiffs argue that disclosure of the redacted information is in the public interest. Their argument, though, primarily concerns the experience and qualifications of SMEs, rather than the experts' names." (Id. at 29.)

- "At this point, Defendant does not describe a privacy interest relating to the SME's qualifications and submits no information suggesting that such disclosure would subject SMEs to harassment or threats. Plaintiffs articulate a public interest in the disclosure of SMEs' qualifications, but do not describe a separate public interest in the disclosure of other identifying details."  (Id.)

- "Because Defendant represented at oral argument that it will produce additional records in response to Plaintiffs' inquiry about the qualifications of the SMEs, the Court will not address whether Exception 6 would permit redaction of the SMEs' names, if Defendant produced no

additional records establishing their qualifications." (Id. (emphasis added).)[2]

The court's observations at oral argument tell the same tale:

- "[G]iven the concern about the qualifications of the subject matter experts, why are their names important? I understand why the qualifications would be important. Why does the name matter? If one wanted to find out whether or not I was – I had the qualifications necessary to be a judge, you wouldn't necessarily need to know my name, you would just need to know the qualifications. What does the name provide that the qualification does not on this issue of whether or not people were qualified to be subject matter experts?" Tr. 04/24/2017, docket no. 78, at 41 (Bolden, J.).

- "I'm not sure I understand exactly what the connection is between a name and qualification. At the end of the day we need to know what someone did and what their capacity to do that was based on what we knew about this person's level of expertise. If there is information in the documents that allows us to learn that, then that's fine." (Id. at 46 (Bolden, J.).)

Counsel for the plaintiffs largely agreed with the court's observation, though counsel held out the possibility that the documents concerning qualifications may be insufficient such that the SME names would be required. In describing the type of scenario where SME names would be necessary, plaintiffs' counsel suggested that where no documents concerning qualifications were produced, or where the produced documents only "unredacted that someone is an M.D., that would be insufficient." (Tr. 04/24/2017, docket no. 78, at 46 (Garg, S.).)

In contrast, plaintiffs' counsel suggested on the record the following situation in which the plaintiffs would not need to seek to lift the redaction of SME names:

---

[2]In this case, of course, the defendant produced substantial additional records, including resumes and information from the VA's credentialing database, establishing the qualifications of the SMEs.

"The third situation we could be in is that there are sufficient qualifications that can prove expertise. This could be, for example, redacted resumes, redacting out personally identifying information, but still proving the sufficient qualifications for expertise, and in that case, your Honor, the name itself would not be necessary. The qualifications being unredacted would be – would suffice."  (Id.)

In this case, and in response to the arguments of counsel and the court's ruling on summary judgment, the VA produced a significant number of documents concerning SME qualifications, including the very resumes identified by plaintiffs' counsel as what would be sufficient for identifying expertise.  Given the dialogue among the parties and the court and the court's summary judgment ruling, the VA believes these redactions were entirely appropriate under the law and within the expectations of the litigants here.  Consequently, the VA's redactions were not in contempt of the court's summary judgment ruling; on the contrary, they were made in accordance with the court's observations on the topic.

     B.     The Plaintiffs Should Be Equitably Barred from
             Challenging the VA's Redaction of SME Identities

Principles of equity should bar the plaintiffs from challenging the propriety of the VA's redactions both because the challenge constitutes an unfair change in the plaintiffs' litigating position and because the timing of the challenge was sufficiently delayed so as to prejudice the defendant.

     1.     Equitable Estoppel

"The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's

justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001). "Generally speaking, we employ estoppel to ensure the integrity of the judicial process . . . and to hold litigants accountable for statements upon which courts and other parties reasonably rely." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 396 (2d Cir. 2011) (citation omitted). "The doctrine of estoppel is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his or her detriment." Vasily v. MONY Life Ins. Co. of Am., 104 F. Supp. 3d 207, 216 (D. Conn. 2015).

Generally speaking, "[u]nder federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." Kosakow, 274 F.3d at 725.

In this case, as set forth above, counsel for the plaintiffs in the course of arguing the defendant's partial motion for summary judgment, contended that should the VA produce documents concerning SME qualifications, such as redacted resumes that showed the employee's expertise, disclosure of the SMEs' names would not be necessary. The defendant subsequently, with knowledge of and in at least partial reliance on the plaintiffs' prior statements, produced nearly 150,000 pages of material in which SME names were redacted. Now, at the close of litigation, the plaintiffs have changed their minds. No longer are redacted resumes sufficient to establish the qualifications of SMEs; rather, the plaintiffs now contend that "[o]nly by learning the SMEs' identities can

the public access aspects of their background that call into question their qualifications – <u>information that is not found in their resumes</u>. . . ."  (Pls.' Mem., 9-10.)

Accordingly, the plaintiffs have gone from explicitly seeking the SMEs' resumes (and representing that redacted versions of those documents would suffice) to arguing that the only way to know what they would like to know is to get information that is <u>not</u> contained on a resume.  In the meantime, the VA has expended countless hours of work producing and redacting documents in accordance with the plaintiffs' prior litigating position, work that the plaintiffs' now would see reopened more than two years after the parties' oral argument.  This is precisely the type of bait-and-switch against which equitable estoppel is designed to protect, and maintenance of the integrity of the judicial process calls for the denial of the plaintiffs' motion for equitable reasons alone.

2.    <u>Laches</u>

In the court's April 26, 2019 ruling (docket no. 145), the court indicated that the plaintiffs' renewed motion for contempt should address certain topics, including "whether any current issue of redaction could have and should have been raised with the Court before."  (Order, at 3.)  The plaintiffs suggest that their waiting until the final completion of production and of the defendant's <u>Vaughn</u> indices was warranted under the circumstances.  The defendant disagrees.  Not only could the plaintiffs have raised their objection to redaction of the SMEs' names earlier, their failure to do so greatly prejudiced the VA.  As such, principles of laches bar the plaintiffs from challenging the redactions at this point.

In their memorandum, the plaintiffs claim that they "could not make a full assessment of which, if any, redactions were inappropriate until receiving and reviewing the Vaughn indices." (Pls.' Mem., 7.)  The plaintiffs also claim that "[u]ntil the VA completed its productions, Plaintiffs did not know whether the redacted documents would suffice to establish the SMEs' qualification." (Id., 9.)  The plaintiffs' argument is unavailing in light of the history of the VA's document production.

As noted earlier, after the court's ruling on summary judgment, the VA essentially began production anew, with a first release of the second round of productions occurring on July 13, 2017.  (Def. LRS, ¶22.)  While it is technically true that the production was not complete until January 2019, and the final Vaughn indices were not produced until after that, the plaintiffs have been on notice since at least July 2017 that the defendant was redacting SME names from its productions (including from emails).  (Id.)  Moreover, the plaintiffs knew since at least September 22, 2017, the contents of the SMEs' resumes and the contents of the VA's credentialing database, which had been provided in rolling productions until that date.  (Id. ¶¶23-25.)  Each of those productions included a cover letter explaining that redactions were made pursuant to Exemption 6 and the agency's basis for those redactions.  (Id. ¶¶22-25.)

"A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." Ikelionwu v. United States, 150 F.3d 233, 237 (2d Cir. 1998).  "[L]aches is an equitable defense that is committed to the sound

discretion of the trial judge." <u>Giammarco v. Beers</u>, 170 F. Supp. 3d 320, 336 (D. Conn. 2016) (internal quotation marks omitted).

All of the elements of laches are present here. Specifically, the plaintiffs were on actual notice of what they perceived to be VA misconduct as it relates to redactions at the latest in July 2017. While the plaintiffs claim they needed to wait for the completion of document production to decide whether to challenge the agency's redactions of SME names, that argument is belied by the record, which shows that the plaintiffs knew what was redacted, why it was redacted, and what qualification information was not redacted as of September 2017. Third, the delay substantially prejudiced the VA, which proceeded to devote hours and hours of employee and contract labor to redact in a way that had not been challenged by the plaintiffs. Now, after document production is complete, a favorable result for the plaintiffs would require reopening that process and incurring what would have been easily avoidable costs for the defendant.

In sum, despite having all of the pertinent information needed to assess whether they would accept the redaction of the SMEs' identities, the plaintiffs did not indicate to either the defendant or the court until April 2019 that they intended to proceed with a challenge to those redactions. While the parties were waiting for agency employees and contractors to complete production of the substantial number of emails that were responsive the plaintiffs' FOIA request, the parties' counsel easily could have at the same time litigated this issue on the merits. Since all the relevant information had been disclosed, the parties could have secured a ruling from the court that would have

informed the VA's document processing going forward.  That obviously did not happen,

and the plaintiffs' delay was inexcusable and prejudicial to the defendant.

> C.     On the Merits, the VA's Redaction of
>        SME Names Complies with Exemption 6

Even if the court were to consider the plaintiffs' arguments in opposition to the

defendant's Exemption 6 redactions on the merits, the plaintiffs' substantive claim still is

unavailing.  Apart from the fact that the agency has produced ample responsive

documents regarding the SMEs' qualifications, essentially nothing has changed since the

parties last argued this issue in 2017.  Specifically, the redactions in question satisfy the

requirements of Exemption 6, and the plaintiffs still apply the wrong standard to reach

the wrong result.

FOIA Exemption 6 permits an agency to withhold all information about

individuals contained in "personnel and medical files and similar files" when the

disclosure of such information "would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6).  For this exemption to apply, the information at

issue must be maintained in a government file and "appl[y] to a particular individual."

U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982). Once this

threshold requirement is met, Exemption 6 requires the agency to balance the individual's

right to privacy against the public's interest in disclosure.  See DOJ v. Reporters Comm.

for Freedom of Press, 489 U.S. 749, 764 (1989); Dep't of Air Force v. Rose, 425 U.S.

352, 372 (1976).

As a threshold matter, the plaintiffs argue that emails that have been produced

with redactions applied to SME names are not "similar files," and Exemption 6 therefore

does not apply to them at all.  The plaintiffs misconstrue the exemption and fail to properly apply the Supreme Court's decision in <u>Washington Post</u>.  The plaintiffs cite to some trial court decisions finding that agency emails may not satisfy the "similar files" requirement of Exemption 6, but those courts also fail to properly apply Supreme Court precedent.  In sum, the plaintiffs' argument appears to be that only records containing "detailed personal information" satisfy the "similar files" requirement.  (<u>See</u> Pls.' Mem., 8.)  That argument, however, is precisely backwards.

In <u>Washington Post</u>, the Supreme Court explicitly rejected the lower court's conclusion that Exemption 6 covered only records containing information "highly personal or as intimate in nature."[3]  456 U.S. at 598.  Instead, the Supreme Court held that "we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information."  <u>Id.</u> at 602.  Rather, "[w]hen disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy."  <u>Id.</u>; <u>see also</u> <u>Carmody & Torrance v. Def. Contract Mgmt. Agency</u>, No. 3:11-CV-1738 JCH, 2014 WL 1050908, at *12 (D. Conn. Mar. 13, 2014) ("Although names and business phone numbers do not, at first blush, resemble intimate information typical of medical and personnel files, the names of persons involved in defense contracts implicate privacy

_____

[3]The Second Circuit similarly has rejected the plaintiffs' proposed formulation. <u>See</u> <u>Wood v. F.B.I.</u>, 432 F.3d 78, 86 (2d Cir. 2005) ("Although these details are not considered intimate, the disclosure of this information is subject to the balancing analysis under Exemption 6.").

interests that both the Supreme Court and the Second Circuit have held to be 'similar' for purposes of Exemption 6."); Carlson v. United States Postal Serv., No. 15-CV-06055-JCS, 2017 WL 3581136, at *27 (N.D. Cal. Aug. 18, 2017) ("The emails at issue here contain information that applies to particular individuals, revealing their involvement in the Incident, the investigation of the Incident, or the response to Carlson's FOIA requests. The information may not be particularly sensitive or intimate, but that is not the test for the 'similar files' requirement.").

While the plaintiffs would give the "similar files" language a narrow reading, it is abundantly clear that the scope of that language is quite broad.  See Cook v. Nat'l Archives & Records Admin., 758 F.3d 168, 174 (2d Cir. 2014) (observing that the "phrase 'similar files' sweeps broadly").  In Cook, the Second Circuit concluded that "a record is a 'similar file' if it contains personal information identifiable to a particular person, and since the correspondence in that case revealed "information about specific persons that can be identified as applying to those persons," including simply who they were, the records constituted "similar files" for purposes of FOIA Exemption 6.  See id. at 175.

Indeed, the plaintiffs' argument with respect to "similar files" would produce exactly the type of anomalous results the Supreme Court cautioned against in Washington Post, and this case perfectly illustrates the folly of the plaintiffs' approach.  The plaintiffs appear to concede that the resumes and credentialing data that applies to the SMEs are "similar files" for purposes of Exemption 6.  (Compare Pls.' Mem., Part III.A with III.B.) Moreover, "numerous courts have determined that a list of names is a 'similar file' for

Exemption 6 purposes."  <u>New York Times Co. v. U.S. Dep't of Treasury</u>, No. 09 CIV. 10437 FM, 2010 WL 4159601, at *4 (S.D.N.Y. Oct. 13, 2010).

As such, if a FOIA requester like one of the plaintiffs wanted to know the identities of the SMEs and simply asked for a list of the SMEs or for their resumes or credentialing data, there appears to be little doubt that redaction of SME names in complying with those requests would be subject to balancing under Exemption 6.  But under the plaintiffs' formulation, if a requester wants the exact same information but serves a request asking for emails by and between SMEs, the agency and the court are not permitted to balance the interests contemplated by Exemption 6 in determining whether the identities of the SMEs are subject to redaction because regular office emails are not "similar files."

This exact anomaly was contemplated by the Court in <u>Washington Post</u>, which held that "the protection of an individual's right of privacy which Congress sought to achieve by preventing the disclosure of [information] which might harm the individual surely was not intended to turn upon the label of the file which contains the damaging information."  456 U.S. at 601; <u>see also</u> <u>id.</u> ("information about an individual should not lose the protection of Exemption 6 merely because it is stored by an agency in records other than 'personnel' or 'medical' files"); <u>Schmidt v. U.S. Dep't of Def.</u>, No. 3:04-CV-1159 (WWE), 2006 WL 1438713, at *3 (D. Conn. May 24, 2006) ("the court must look at the nature of the information, not merely at the file in which it is contained, in order to determine whether Exemption (b)(6) is applicable").

It would seem unarguable that a name is information about an individual that applies to that specific individual. Moreover, the relevant redactions in this case apply to names, and since the records in question reveal the identities of those VA employees whose names have been redacted, they, too, are "similar records" for purposes of Exemption 6. Consequently, the court must balance the right to privacy of those individuals with the public's interest in disclosure. "The balancing analysis for FOIA Exemption 6 requires that we first determine whether disclosure of the files would compromise a substantial, as opposed to de minimis, privacy interest, because if no significant privacy interest is implicated FOIA demands disclosure." Long v. Office of Pers. Mgmt., 692 F.3d 185, 191 (2d Cir. 2012) (internal quotation marks omitted).

In Long, the Second Circuit recognized that "[i]t is not uncommon for courts to recognize a privacy interest in a federal employee's work status (as opposed to some more intimate detail) if the occupation alone could subject the employee to harassment or attack." Id. at 192. The court went on to conclude that "federal employees in both the sensitive agencies and the sensitive occupations have a cognizable privacy interest in keeping their names from being disclosed wholesale." Id. In this case, the VA has made specific and reasonable assertions regarding potential harassment of the individuals whose names have been redacted from the disclosure because those employees – the SMEs who assist adjudicators in deciding VA benefit applications – are working in a particularly contentious area within the VA system. (See Def. LRS ¶¶22-26 & Exs.) Consequently, those VA employees have far greater than a de minimis interest in maintaining the privacy of their identities in connection with this disclosure.

17

Nevertheless, "[t]he privacy interest must be weighed against the public interest that would be advanced by disclosure." Long, 692 F.3d at 193.[4] But as Long instructs, "[t]he only public interest cognizable under FOIA is the public understanding of the operations or activities of the government," and "federal courts have observed that disclosure of individual employee names tells nothing about what the government is up to." Id. (internal quotation marks omitted); see also Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec., 8 F. Supp. 3d 188, 231 (D. Conn. 2014) (observing "negligible or nonexistent" public interest in names of low-level federal employees).

In this case, the court already has drawn a distinction between information concerning the SMEs' identities and their qualifications, and that distinction persists notwithstanding the plaintiffs' arguments to the contrary. Nothing in the plaintiffs' brief illustrates why the public's limited interest in knowing the individual identities of line VA medical personnel outweighs the individuals' rights to privacy. That is particularly the case where the plaintiffs' own arguments reveal the contentiousness of the SME

_____

[4]As in the first time the parties briefed this issue before the court, the plaintiffs continue to cite an inapplicable test to balance the relevant interests for purposes of Exemption 6. (See Pls. Mem., 10-13 (applying Perlman factors).) As the defendant previously has observed, the Perlman test arose out of Exemption 7(c), which while also involving a balancing of interests, implicates issues not typically relevant in the Exemption 6 context. Using Perlman under these circumstances therefore obfuscates rather than clarifies the balancing obligation under Exemption 6.

Indeed, this court appears to already have acknowledged that the plaintiffs' reliance on Perlman is misplaced. (See Tr. 04/24/2017, docket no. 78, at 49 (Bolden, J.) ("It doesn't seem there is a significant substantive difference as to how the Court is required to analyze it under Long as opposed to Perlman, although I think you are probably right that Long is probably preferable.").

program and the blame the plaintiffs place on the individual SMEs for what the plaintiffs contend to be unjustified benefit denials and bureaucratic hurdles placed between veterans and VA benefits.  Indeed, the plaintiffs' argument, which appears to be that the only way to ever truly know whether government employees are qualified to do their job is to know the employees' names to allow the independent research that might come with that disclosure, flies in the face of the case law protecting the identities of regular government employees where there is a real good-faith concern of harassment.  That risk is present here, and the balance therefore tips in favor of nondisclosure.

## IV.    CONCLUSION

At the close of this case, the plaintiffs have elected to abandon a prior position that they took over two years ago and on which the defendant has relied to its potential detriment for equally as long.  Instead, they now raise an argument that did not appear convincing to the court the first time around, and it should remain as unconvincing now. It appears plainly clear that the defendant is not in contempt of any court order with respect to redaction, and principles of equity should bar the plaintiffs' from raising the argument they make in their brief in light of both their prior litigating position and the delay in their making it.  Regardless, however, on the merits, the plaintiffs fare no better. The plaintiffs' contentions are not supported by FOIA Exemption 6 or the cases interpreting it, and their motion should be denied.

Respectfully submitted,

John H. Durham
United States Attorney

____/s/_____
John W. Larson (ct28797)
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
Tel: 860-947-1101
Fax: 860-760-7979
john.larson@usdoj.gov