UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

THE FEW, THE PROUD, THE FORGOTTEN;
VIETNAM VETERANS OF AMERICA; and
CONNECTICUT STATE COUNCIL OF
VIETNAM VETERANS OF AMERICA,

No. 3:16-cv-00647 (VAB)

*Plaintiffs*,

v.

July 1, 2019

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,

*Defendant*.

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR CIVIL CONTEMPT**

I.      **Plaintiffs may challenge the SME redactions under Exemption 6.**

A.      **Equitable estoppel does not bar Plaintiffs' challenges.**

Consistently throughout this litigation, Plaintiffs have argued that redaction of SME names

is an improper use of Exemption 6. Plaintiffs have clearly stated this position both in

communications with this Court and with counsel for the VA. Defendant's assertion that equitable

estoppel bars Plaintiffs' challenges to the redaction of SME names is unfounded.

A party seeking to invoke equitable estoppel "must show that: '(1) the [other party] made

a definite misrepresentation of fact, and had reason to believe that the [party] would rely on it; and

(2) [that party] reasonably relied on that misrepresentation to his detriment.'" *Ellul v.

Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (quoting *Buttry v. Gen. Signal

Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)). Defendant fails to point to any "definite

misrepresentation of fact" that it "reasonably relied on."

First, Defendant does not, and cannot, identify any "definite misrepresentation of fact" made by Plaintiffs indicating that Plaintiffs "changed their minds" with respect to the redaction of SME names. Def.'s Opp'n at 9. Rather, Plaintiffs' position has been unchanged since 2017 when Plaintiffs first challenged the redaction of SME names. *See* ECF No. 31 at 35. During oral argument on Defendant's motion for summary judgment, Plaintiffs acknowledged that there was a "hypothetical possibility" that additional documents establishing SME qualifications could make the disclosure of names unnecessary, Tr. at 44:5-11, and that redacted resumes "could" provide sufficient information of SME qualifications, *id.* at 46:17-25. However, Plaintiffs did not represent to the Court or to Defendant that redacted resumes would necessarily resolve the Exemption 6 challenges. In fact, Plaintiffs mentioned that should the Court choose to table the issue until more documents were produced, there would be delay and the possibility of further briefing on the appropriateness of SME name redactions. *Id.* at 48:5-12.

And even if Defendant was unclear on Plaintiffs' position after oral argument in April 2017, Plaintiffs' subsequent communications with Defendant unequivocally demonstrate their continued concerns about the propriety of the redaction of SME names. On August 15, 2017, soon after receiving Defendant's first batch of production in July 2017, Plaintiffs raised a number of concerns with Defendant, including a failure "to provide an adequate, thorough explanation as to why Exemption 6 . . . was satisfied." Ex. A to Ex. 1 ("Garg Decl."). After Defendant did not answer those concerns, Plaintiffs followed up in September, noting Plaintiffs' "outstanding questions about . . . the reasons for withholding records under several FOIA exemptions." Ex. B to Garg Decl.; *see also* Ex. C to Garg Decl. And the VA expressly acknowledged that Plaintiffs continued to disagree with the VA's redactions under Exemption 6, noting that this "concern" had been referred to the VA's Office of General Counsel which would "be producing a response to the

plaintiffs' objections." Ex. D to Garg Decl. at ¶ 7. Plaintiffs' counsel never received this response.[1] Plaintiffs again raised the Exemption 6 issue in the fall of 2018, seeking to begin discussions with Defendant about the propriety of its redactions, including the redaction of SME names. Ex. E to Garg Decl. After seeking a response from Defendant's counsel several times, Defendant's counsel finally indicated to Plaintiffs' counsel over the phone on November 26, 2018, that Defendant would not reconsider its redaction of SME names. Ex. 2 at ¶ 1 ("Meyer Decl."). Defendant chose not to address Plaintiffs' concerns until the end of November 2018, less than six weeks before the deadline for production.

It is disingenuous for Defendant to now claim that it was unaware Plaintiffs remained unsatisfied by Defendant's redaction of SME names or that it was detrimentally harmed by its own failures to address Plaintiffs' concerns. Thus, Defendant cannot claim that it "reasonably" relied on any purported misrepresentation of Plaintiffs' position.

### B.    Laches does not bar Plaintiffs' challenges.

Defendant's invocation of laches is also unavailing for two reasons. First, laches does not apply here. Second, even if the Court were to apply a laches-type analysis, Defendant fails to show that the requirements for laches to bar Plaintiffs' challenges are met.

Laches "is 'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay *in commencing suit*.'" *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 960 (2017) (emphasis added) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014)). Plaintiffs brought this action in 2016 and first challenged Defendant's redactions under Exemption 6 in 2017. There is no basis for invoking laches for an issue in ongoing litigation.

---

[1] If Defendant intended the Vaughn Index itself to serve as the response, Plaintiffs did receive it—over a year later.

Even if laches applies, Defendant has failed to demonstrate that Plaintiffs "unreasonably and inexcusably delayed" their objections to the redactions of SME names. *Allens Creek/Corbetts Glen Pres. Grp., Inc. v. West*, 2 F. App'x 162, 164 (2d Cir. 2001). Defendant incorrectly claims that Plaintiffs failed to raise their objections to the redaction of SME names earlier. As described above, Plaintiffs have repeatedly raised concerns about the SME name redactions since August 2017—and Defendant repeatedly failed to adequately address to those concerns. Indeed, as of October 2018, Defendant's counsel was unable to provide the VA's position on its redactions. Ex. F to Garg Decl.; *see* Ex. G to Garg Decl. Plaintiffs' counsel received Defendant's final position on November 26, 2018. Meyer Decl. at ¶1. After it became clear that the Parties could not agree, Plaintiffs promptly raised the issue with the Court in the next status conference.[2] Plaintiffs reasonably decided to wait until the agency had responded to its concerns, and until Plaintiffs had an opportunity to review all of Defendant's productions and redactions, to decide if they would challenge any other redactions, and then promptly raised the issue with the Court in the April 2019 status conference.  That conduct is certainly not "inexcusabl[e]."

In addition, Defendant failed to meet its burden to show that it has been prejudiced by any delay. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 746 (2d Cir. 2016) (explaining that defendants bear the burden of proving the elements of laches when suit is commenced within an applicable statute of limitations). Defendant's mere assertion of prejudice is insufficient. Def.'s Opp'n at 13. While Defendant references the hours of work involved with the production and redaction of documents, Def.'s Opp'n at 12, any work involved with production of documents and redactions not being challenged by Plaintiffs does not constitute evidence of

---

[2] This status conference was scheduled for January 23, 2019, ECF No. 136, but was rescheduled due to the government shutdown until April 25, 2019, ECF No. 142.

prejudice for Defendant's laches argument. Moreover, any prejudice caused by delay should be measured from when Plaintiffs were informed that Defendant would not reconsider its redaction of SME names—November 26, 2018—by which point the majority of production and redaction had already been completed. *See Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (explaining that laches measures delay from when the plaintiff knew about a defendant's objectionable conduct). Since Defendant has failed to carry its burden of proving laches, this Court should not bar Plaintiffs' challenges to the SME name redactions under this doctrine.

## II. Defendant's redactions of SME names are improper.

### A. Defendant's reading of "similar files" is far too broad.

Defendant's attempt to limitlessly expand the meaning of "similar files" is without merit. If Defendant has its way, "similar files" under Exemption 6 would expand to any record that merely includes a person's name. Such a reading of Exemption 6 has no basis in case law and ignores that, under FOIA, "disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

The language of *Washington Post* itself belies Defendant's assertion that any record that contains information "including simply who [a person] is" constitutes a similar file for purposes of Exemption 6. Def.'s Opp'n at 15. There, the Court noted that information such as "place of birth, date of birth, date of marriage, [and] employment history" would indicate a record is a similar file. *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982). The emails Plaintiffs argue are not "similar files" do not contain that type of data. The standard of similar files may be broad, but not so broad to include any and every record with a government employee's name.

Moreover, none of the lower court cases Defendant cites support its expansive reading of *Washington Post*. In each of those cases, courts found something beyond *simply* a name to transform a record into a similar file for purposes of Exemption 6. For instance, the court in *Cook*

found the records at issue were "similar files" because they included information that stretched far beyond just names, including information about nongovernment researchers' interests. *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175 (2d Cir. 2014).

Defendant similarly misreads other cases for an overly broad reading of "similar files." In *Wood*, the records at issue contained information far beyond the mundane intraoffice emails produced by the VA in this case. The FOIA requester in *Wood* sought the names of FBI employees and witnesses who participated in a sensitive internal misconduct investigation and the highly detailed investigative documents where those names appeared. *Wood*, 432 F.3d at 87. In *Carlson*, the emails at issue were found to be similar files because they surrounded a specific incident of alleged misconduct by two U.S. Postal Service employees and an ongoing investigation into that misconduct. *Carlson v. U.S. Postal Serv.*, No. 15-CV-06055-JCS, 2017 WL 3581136, at *27 (N.D. Cal. Aug. 18, 2017). These two cases, *Wood* and *Carlson*, both involved investigations into alleged misconduct by specific government personnel. *Carmody & Torrance v. Def. Contract Mgmt. Agency*, No. 3:11-CV-1738 JCH, 2014 WL 1050908, at *12 (D. Conn. Mar. 13, 2014), involved the names of employees of both the Department of Defense and, notably, nongovernment employees of a defense contractor involved in the negotiation of proprietary information related to a defense contract. The court made special mention that "the names of persons involved in defense contracts implicate privacy interests" when deciding the records are similar files. *Id.*

Thus, court after court has found records to be similar files because the records are either related to an investigation of government personnel's misconduct, as in *Wood* and *Carlson*, or implicated additional interests, such as involving information related to individuals not employed by the government, as in *Cook* and *Carmody & Torrance*. Defendant has failed to articulate any comparable interests implicated in the records at issue here for an obvious reason—there is no

such interest at stake in the mundane intraoffice emails redacted by the VA. This Court should reject Defendant's limitless reading of "similar files" and find that the emails at issue here are not medical, personnel, or similar files subject to redaction under Exemption 6.

### B.      The public interest in SME names outweighs any privacy interest in nondisclosure.

Even if these routine intraoffice emails qualify as "similar files," the public interest in knowing the SMEs' names—both in emails and the SME resumes—outweighs any privacy interest in these high-level VA employees keeping their identities a secret. Defendant's reliance on a single case's "context specific" holding regarding employees in certain highly sensitive "national security, homeland security, or law enforcement" positions cannot support a contrary result. *See* Def.'s Opp'n at 17-19 (citing *Long v. Office of Pers. Mgmt.*, 692 F.3d 185 (2d Cir. 2012)).

When an agency seeks to withhold information under FOIA Exemption 6, the Court must first determine whether the privacy interest put forth by the government is more than *de minimis*. *See Long*, 692 F.3d at 191. If the government's proffered interest meets this threshold, then the Court proceeds to a balancing test, assessing whether disclosure of the information would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Though the parties dispute the precise contours of this balancing test,[3] the result is the same under either approach: even under its own framework, Defendant has failed to carry its burden of

---

[3] Defendant is correct that *Perlman* "arose out of" the Exemption 7(C), not Exemption 6, context. Def.'s Opp'n at 18 n.4; *see, e.g.*, *Pinnicchia v. U.S. Dep't of Veterans Affairs*, No. 3:17-CV-2139 (VAB), 2019 WL 1173017, at *3 n.1 (D. Conn. Mar. 13, 2019). But courts in this Circuit have nevertheless relied upon it in carrying out the balancing test that Exemption 6 requires, even absent any Exemption 7(C) claims. *See, e.g.*, *Tomscha v. Gen. Servs. Admin.*, 158 F. App'x 329, 331 (2d Cir. 2005) (applying *Perlman* in a case only involving Exemption 6); *Seife v. Nat'l Institutes of Health*, 874 F. Supp. 2d 248, 259 (S.D.N.Y. 2012) ("[W]e will consider the factors in the Exemption 6 context, as have other courts, including the Second Circuit."); *Cowdery, Ecker & Murphy, LLC v. U.S. Dep't of Interior*, 511 F. Supp. 2d 215, 217-20 (D. Conn. 2007).

And for good reason: Exemption 6, like Exemption 7(C), requires balancing the public interest in disclosure with the government's countervailing privacy interest. The major difference

showing any "clearly unwarranted" invasion of personal privacy. Defendant's analysis rests in large part on an overbroad reading of the holding in a single case: *Long v. Office of Personnel Management*. But at each point in this analysis, Defendant disregards important factual differences between that case and the one currently before the Court and mischaracterizes the public interest at stake in this case.

First, Defendant elides important details about facts in *Long* that attenuate its relevance here. As Plaintiffs described in moving for summary judgment, *see* Pl.'s Mem. ISO Summ. J. at 13-14, *Long* involved employees engaged in highly sensitive "national security, homeland security, or law enforcement" activities that caused them to "face an increased risk of harassment or attack." *Long*, 692 F.3d at 191-92. The Office of Personnel Management (OPM) was especially concerned about disclosure of information about these employees in light of "the attack on the Pentagon on September 11th" and a "subsequent anthrax attack," and sought to prevent our adversaries from making further attacks on government personnel *Id.* at 192, 189.

The VA's purported justifications for nondisclosure, on the other hand, are of a completely different kind. In fact, the *only* allegations that Defendant has offered to support withholding in this litigation are (1) vague incantations that "task force members may be subject to harassment or worse if their identities are publicized" and (2) a *single* instance of an SME having "his identity

---

between the two is that Exemption 7(C) permits withholding whenever disclosure "*could reasonably be expected to constitute* an *unwarranted* invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), whereas Exemption 6 permits withholding only if the disclosure "*would constitute a clearly unwarranted* invasion of personal privacy," *id.* § 552(b)(6). Though Exemption 6 therefore requires a higher showing by the government, the same factors generally will be relevant to both inquiries. Defendant asserts that Exemption 7(C) "implicates issues not typically relevant" in the Exemption 6 context but fails to identify any salient difference between the interests at stake under either exemption. *See* Def.'s Opp'n at 18 n.4.

If the Court finds the *Perlman* framework appropriate, Plaintiffs rely on the discussion in Section III.B of their motion for summary judgment, which Defendant has declined to address.

disclosed online, leading to publication of pictures of his house." Supp. Decl. of Bertha L. Brown ¶ 22, Ex. 3 to Def.'s Local R. 56(a)(1) Statement, ECF No. 26-2; Decl. of Carol E. Farer ¶ 13, Ex. 4 to Def.'s Local R. 56(a)(1) Statement, ECF No. 26-2. Defendant has not attempted to articulate how these concerns relate to, let alone require the same result as, those in *Long*. And because "[n]ames and other identifying information do not always present a significant threat to an individual's privacy interest," *Long*, 492 F.3d at 191, this failure to show why these facts make disclosure "clearly unwarranted" entitles Plaintiffs to summary judgment. *See Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*, No. 1:17-CV-9557-GHW, 2019 WL 1380334, at *15 (S.D.N.Y. Mar. 26, 2019) (quoting *Long*, 692 F.3d at 192) (granting plaintiffs summary judgment because "[t]he[] mere possibility that the release of information could potentially lead to harassment [was] not evidence of a 'real' threat of harassment").

Moreover, though the *Long* requesters seem to have sought information about *all* federal civilian employees, the OPM withheld the names of employees in only *some* agencies and some types of work. *See Long*, 492 F.3d at 188-89. Notably, the VA was not one of these sensitive agencies, and VA adjudicators were not on the list of sensitive occupations. *See id.* at 189 n.4. To the contrary, the *Long* court provided a sample list of these occupations, reinforcing their close connection to law enforcement and national security: "police, criminal investigating, nuclear engineering, game law enforcement." *Id.* at 189. Again, Defendant does not attempt to argue that VA SMEs fits into this category of sensitive occupations. *See* Def.'s Opp'n at 17.

Second, Defendant mischaracterizes the public interest in disclosure that Plaintiffs have identified. As explained in Plaintiffs' Motion for Summary Judgment, the premise of the SME program is that the fifty-two individuals whose opinions and purported expertise direct the outcomes of all Camp Lejeune veterans' claims are qualified to carry out that task. But there are

serious reasons to doubt whether the actual SMEs should be trusted in this role. *See* Pl.'s Mem. ISO Summ. J. at 11-13. Indeed, the "contentiousness" of the program that Defendant highlighted supports, rather than undercuts, the weight of this public interest. *See* Def.'s Opp'n at 18-19.[4] In the context of a high-stakes adjudicatory scheme like the SME program, "the public has a real interest in understanding whose judgment is being employed . . . and whether those contractors are qualified for the job." *Adelante*, 2019 WL 1380334, at \*16.

In short, the public interest is much weightier, and the private interest much less substantial, than Defendant would have it. Therefore, whether the Court applies Defendant's unguided balancing under *Long* or Plaintiffs' proposed analysis under *Perlman*, the result is the same: the VA should provide the unredacted SME names.

## CONCLUSION

For these reasons, Plaintiffs request that the Court grant summary judgment in their favor and order the Defendant to remove the redactions of the names on the resumes and emails. In the alternative, if this Court prefers to order the un-redaction through a finding of civil contempt, Plaintiffs would accept that result as well.

---

[4] This is also why the Court should overrule Defendant's hearsay objections to Plaintiffs' evidence of this controversy. *See* Def.'s Local R. 56(a)(2) Statement ¶¶ 11-22. These accounts are not offered for the truth of the matter asserted, but are rather offered to demonstrate the public concern with the SME program and the corresponding public interest in the identities of the SMEs themselves. Therefore, they do not present inadmissible hearsay and should be considered in deciding Plaintiffs' Motion for Summary Judgment.

Dated:           July 1, 2019
                 New Haven, CT


                                          Respectfully submitted,

                                          /s/  Renée Burbank
                                          Renée Burbank (ct30669)
                                          Shikha Garg, Law Student Intern
                                          Corey Meyer, Law Student Intern
                                          Veterans Legal Services Clinic
                                          Jerome N. Frank Legal Services Organization
                                          P.O. Box 209090
                                          New Haven, CT 06520-9090
                                          Tel: (203) 432-4800
                                          Fax: (203) 432-1426
                                          renee.burbank@ylsclinics.org
                                             *Counsel for Plaintiffs*