# EXHIBIT C

# RE: Follow-Up on Wednesday's Call

**Larson, John (USACT) <John.Larson@usdoj.gov>**

Tue 9/26/2017 10:25 AM

To: Helen White <helen.white@ylsclinics.org>; Corey Meyer <corey.meyer@ylsclinics.org>; Ashley Ingram <ashley.ingram@ylsclinics.org>; Shikha Garg <shikha.garg@ylsclinics.org>; Aaron Wenzloff <aaron.wenzloff@ylsclinics.org>;

Hi Helen,

Thank you for sending the motion, it's fine with me. I have a handful of dates over the next couple weeks that are not going to work for a call, but I think we'll try to work out scheduling with the court after the court acts on the motion.

My understanding is that the network and personal drives and files have been searched and that other than a few qualification-related documents that have been retrieved and are being processed, the rest of the documents will come from emails.

I will review the letter and discuss it with the agency, thank you for alerting me to it.

John

**From:** Helen White [mailto:helen.white@ylsclinics.org]
**Sent:** Monday, September 25, 2017 8:23 PM
**To:** Larson, John (USACT) <jlarson1@usa.doj.gov>; Corey Meyer <corey.meyer@ylsclinics.org>; Ashley Ingram <ashley.ingram@ylsclinics.org>; Shikha Garg <shikha.garg@ylsclinics.org>; Aaron Wenzloff <aaron.wenzloff@ylsclinics.org>
**Subject:** Re: Follow-Up on Wednesday's Call

John,
Thanks for taking the time to speak with us today. I've attached the motion for status conference – we appreciate that you consented to this over the phone, but we wanted to be sure you had a chance to look at the motion itself before we filed.

Based on the call, it's our understanding that all of the searches have been completed, except for those requiring the search of emails. So, for example, all of the relevant network and personal drives have been searched for responsive documents. Is that correct?

We also wanted to bring to your attention a recent VA General Counsel FOIA decision letter regarding the withholding of names of physicians under Exemption 6. The General Counsel's office reversed a FOIA officer's decision to withhold the names of "all dermatologists and dermatology specialists" working in the Tuscon VA hospital. The decision is dated August 2, 2017 and is available here:

https://bloximages.chicago2.vip.townnews.com/tucson.com/content/tncms/assets/v3/editorial/5/55/55534e63-ed64-5ffe-a5e7-4a812e3411af/599792bf241c1.pdf.pdf. We hope you will discuss how this might apply to our FOIA matter with your clients as they review the exemptions.

Best,
Helen

Helen White
Law Student Intern
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization

**From:** "Larson, John (USACT)" <John.Larson@usdoj.gov>
**Date:** Monday, September 25, 2017 at 11:13 AM
**To:** Corey Meyer <corey.meyer@ylsclinics.org>, Helen White <helen.white@ylsclinics.org>, Ashley Ingram <ashley.ingram@ylsclinics.org>, Shikha Garg <shikha.garg@ylsclinics.org>, Aaron Wenzloff <aaron.wenzloff@ylsclinics.org>
**Subject:** RE: Follow-Up on Wednesday's Call

Hi everyone,

Can we do 3:30 instead? My direct dial is 860-760-7960.

John

---

**From:** Corey Meyer [mailto:corey.meyer@ylsclinics.org]
**Sent:** Monday, September 25, 2017 10:08 AM
**To:** Larson, John (USACT) <jlarson1@usa.doj.gov>; Helen White <helen.white@ylsclinics.org>; Ashley Ingram <ashley.ingram@ylsclinics.org>; Shikha Garg <shikha.garg@ylsclinics.org>; Aaron Wenzloff <aaron.wenzloff@ylsclinics.org>
**Subject:** Re: Follow-Up on Wednesday's Call

Hi John,

Thanks for getting back to us on Friday. Do you have time at 2:30pm today for a call to discuss the case? If you are not free at 2:30pm, we could also call at any point up until 4pm. Let us know what works.

Best regards,
Corey

---

**From:** Larson, John (USACT) <John.Larson@usdoj.gov>
**Sent:** Friday, September 22, 2017 5:11:47 PM
**To:** Corey Meyer; Helen White; Ashley Ingram; Shikha Garg; Aaron Wenzloff
**Subject:** RE: Follow-Up on Wednesday's Call

All,

I'm going to try to address these issues in the order of your email below. I think this covers anything, but let me know if you have any additional questions or think I missed something. I apologize for only getting to this today, but I was absolutely buried under another matter all week.

<u>First</u>, in terms of a date certain when I think production will be completed, I'm unfortunately not able to provide you with that at this point. As you mention, the expectation among the people I am working with at VA was that the email searching – which is the bulk of the remaining searching to be done – would take in the order of two or three months from commencement. Our expectation also was that the searching could commence immediately such that we would be coming up on the end of the line (I actually have a recollection that I might have spoken with someone just before the emails were set to be loaded into the system for searching), but that obviously hasn't happened, because I'm sure you've noticed that the rolling productions have not included a significant number of emails yet. The cause for that lies with technical issues concerning Clearwell, which is the program that the VA uses to handle its e-discovery obligations, including some FOIA matters that have gone to litigation like this one. I'm not going to pretend that I know or understand what the technical issues are here, but there apparently are issues across the entire platform that have stalled processing, which has obviously prevented the email searches from taking place. This is a national issue apparently, and I am told that the agency is preparing a single declaration from a person knowledgeable for use in all the affected litigation matters that are pending nationwide. I don't have that declaration yet, but it sounded like I might get it next week, and I'm of course happy to share it when I receive it. I don't have an estimate on the completion of the troubleshooting. The upshot of all of this is that given

the status of the searches and the fact that the email searching is close to all that's left, it's basically impossible for me to give you a realistic date of completion, as unsatisfying an answer as that is. If hypothetically the Clearwell issue were to be fixed tomorrow, I'd expect to be done by end of year, but I don't know when this will be resolved, and I wouldn't be telling you the truth if I said that I did.

Second, I have discussed your concerns about the VBA and VHA declarations with the relevant parties, and the agency responses are below:

> VBA:
>
> 1. Search terms issue – VBA re-ran the searches of the intranet using the search terms that were originally omitted. I am advised that the searches yielded no additional documents. When the emails can be searched, the agency will use the broader term set.
>
> 2. Brad Flohr – Apparently, for several years Mr. Flohr (who as you know is a VBA senior advisor) has been involved with environmental exposure issues, including those pertaining to Camp Lejeune. It's my understanding that when he became aware of the CAP meetings and the fact that those intersected with Camp Lejeune issues, he began attending those meetings. Based on everyone we've consulted from within the agency, there was no policy person from within VBA who had any involvement with the creation of the SME program, and frankly even though that includes Brad Flohr, the agency is going to search his documents anyway. That said, VBA Compensation's director in 2012 is now an acting under secretary in the agency, and Ms. Traylor has been trying to schedule a meeting with him to discuss the FOIA request to make sure there is no one else who should be included on VBA's end. As you might imagine, scheduling a meeting with a higher up in the agency can be difficult, but she is trying, and I'll let you know more when I know more.
>
> 3. Who are the Louisville Regional Office "pertinent employees"? – This list includes 57 adjudicators, the 4 "coaches," the Assistant Veterans Service Center Manager, the Veterans Service Center Manager, the Assistant Director, and the Director.
>
> 4. PSTs – The two PSTs are referring to network folders belonging to former Louisville RO employees who might have responsive emails, which files were obtained by searching network-wide for PST files. For the former employees, the FCIO only found two PST files, neither of which included any emails. Those accounts are no longer active, therefore these employees probably had "many" PSTs in the past, but are now inaccessible by the FCIO. He was only able to locate/retrieve the two PSTs that contained no emails. In the declaration, when Ms. Traylor say "many" PSTs, she was referring to current employees with active Microsoft Outlook accounts. Current VBA employees have "many" PSTs that are currently on the server and accessible (as far as she knows). PSTs are a personal preference/option for creating extra Microsoft Outlook storage, so some employees may choose not to create PSTs.
>
> 5. Exemptions – I have reached out to the General Counsel's Office to provide to me a more detailed explanation of the exemption claims. Specifically, I asked the agency to conduct a review of the exemptions and to provide a written "decision" as if there were an internal administrative appeal from an exemption (as in a pre-litigation FOIA matter), which I hope will provide you with information that you deem sufficient.
>
> VHA:
>
> 1. Search terms issue – I am advised that the searches will include your suggested search terms/the broader term set, which will be used in conducting the email searches we've discussed previously.
>
> 2. Who conducted this search – When the agency circled back after the MSJ to try to make sure it got everything, Ms. Farer sent out communications to every listed office to affirmatively inquire whether those offices had anything to do with Camp Lejeune or the SME Program. All except the named office replied in the negative. I don't have the positions of the individuals who sent the negative replies to Ms. Farer, though I might be able to get them if you think that's important.

3. DMA searches – With respect to the emails of the DMA employees, those searches will take place in the context of the email searches using the keywords discussed earlier. To the extent that the tense of Ms. Farer's declaration implies that the email searches already have taken place, that's a mistake, and she was simply trying to illustrate the searches that were done and the ones that would be performed in the future. With respect to the search of the DMA network resources (the "manual search"), I believe I mentioned this on the phone a while back, but my understanding and that of Ms. Farer is that the DMA employee responsible for management of the SME program looked at every file in DMA's Camp Lejeune network folder for responsiveness. It was explained to me that any type of search wouldn't be feasible there because searching the relevant network resource for the key words Camp Lejeune would produce every document in the folder, so the agency instead reviewed the documents one by one for responsiveness.

4. Exemptions – see the discussion of exemptions above.

Finally, with respect to the depositions/supplemental declarations issues, I'm happy to convert the responses above to declaration form if you want, and as I mentioned above, there will be some additional information concerning the redactions/withholdings coming out of the agency that hopefully will satisfy your concerns. There will also be supplementals to fully describe the email process so you have something declared as to those searches. I would expect all of those to inform your decision on how you intend to proceed.

You also mention ongoing document production relating to paragraphs 1, 3, 10, 11, and obviously 19. I should point out that since a large volume of emails are being searched using broad search terms, it is possible that documents that relate to any of your requests might pop up in that phase of the search, but I do expect some responsive documents to those categories. Otherwise I know that VHA had some additional qualifications documentation that Ms. Farer should have out to you shortly. I believe beyond that the only remaining documents that will be produced are emails.

I know there is a lot here, and as I said, I'm happy to discuss this or anything else pertaining to the case. Have a good weekend.

John W. Larson
Assistant United States Attorney
District of Connecticut
450 Main Street, Room 328
Hartford, CT 06103
T: (860) 947-1101
F: (860) 760-7979
john.larson@usdoj.gov


**From:** Larson, John (USACT)
**Sent:** Friday, September 22, 2017 1:03 PM
**To:** Corey Meyer <corey.meyer@ylsclinics.org>
**Cc:** Shikha Garg <shikha.garg@ylsclinics.org>; Ashley Ingram <ashley.ingram@ylsclinics.org>; Helen White <helen.white@ylsclinics.org>; Aaron Wenzloff <aaron.wenzloff@ylsclinics.org>
**Subject:** RE: Follow-Up on Wednesday's Call

Hello all,

I did speak to my various contacts at the VA this week, so I will update you with answers to your questions with all the information I have later today (though it might be late this afternoon or early evening). After you are able to take a look at that, let me know if you think it would be useful to discuss the substance or how you would otherwise like to proceed. I'm not sure of your schedules, but I should be able to make a call work on Monday if you'd like.

Let me know, and I'll have something for you a bit later.

John

---

**From:** Corey Meyer [mailto:corey.meyer@ylsclinics.org]
**Sent:** Friday, September 22, 2017 12:33 PM
**To:** Larson, John (USACT) <jlarson1@usa.doj.gov>
**Cc:** Shikha Garg <shikha.garg@ylsclinics.org>; Ashley Ingram <ashley.ingram@ylsclinics.org>; Helen White <helen.white@ylsclinics.org>; Aaron Wenzloff <aaron.wenzloff@ylsclinics.org>
**Subject:** Follow-Up on Wednesday's Call

Dear John,

We appreciate you taking our call this past Wednesday. We understand from the call that you plan to talk to your client and get back to us by this evening with a response to our questions, including a date for completion of production, and possibly some documents that you had received prior to our call.

If we don't hear anything by this evening, on Monday we are going to ask the court for a status conference so we can have the judge set a final production schedule.

Alternatively, we could file a motion for a status conference now, if you consent. In the event we file a motion today with your consent and later reach an agreement about dates and other items, then we can subsequently contact the court to cancel the status conference and file the agreement for the court's approval about production deadlines. Do you consent to this approach?

Best regards,
Corey Meyer