THE FEW, THE PROUD, THE
FORGOTTEN, et al.,
     *Plaintiffs*,

     v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS,
     *Defendant*.

No. 3:16-cv-647 (VAB)

## ORDER

On December 7, 2015, Connecticut State Council of Vietnam Veterans of America, The Few, The Proud, The Forgotten, and the Vietnam Veterans of America (together, "Plaintiffs"), submitted a request to the United States Department of Veterans Affairs ("Defendant" or "Veterans Affairs") under the Freedom of Information Act ("FOIA") to obtain information about "the development, creation, procedures, objectives, and implementation of Defendant's Camp Lejeune subject matter expert ['SME'] program." Compl., ECF No. 1, at 1.

On April 27, 2016, Plaintiffs brought this action, raising two Freedom of Information Act claims, 5 U.S.C. § 552 *et seq*., and arguing that Veterans Affairs had failed to respond to Plaintiffs' request within the statutory deadline. Compl. at 1.

Years into this litigation, *see* Order Granting in Part and Denying in Part Mot. for Summ. J. ("Summ. J. Order"), ECF No. 39; Order on Mot. for Civil Contempt, ECF No. 98, Plaintiffs allege that "Defendant [produced but] . . . improperly redacted" the requested documents, Pls.' Mot. for Summ. J. or, in the Alternative, for Civil Contempt ("Pls.' Mot."), ECF No. 147. Plaintiffs move for summary judgment or civil contempt and an Order compelling Defendants to remove certain redactions. Pls.' Mem. of Law in Supp. of Their Mot. for Summ. J. or, in the

Alternative, for Civil Contempt ("Pls.' Mem."), ECF No. 147-1, at 15.

For the reasons that follow, the Court **DENIES** the Plaintiffs' motion for summary judgment or civil contempt, ECF No. 147.

Consistent with this Court's prior Orders and its inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), however, the Court orders Defendants to complete production by providing the already produced resumes and e-mails without the redaction of the subject matter expert names by **September 20, 2019**.

Following this September 20th deadline, this case will be closed, but the Court will retain jurisdiction, to the extent necessary to enforce this Order. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) ("Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]") (internal citations omitted)).

I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

        A.      Factual Background[1]

        Between 1953 and 1987, "nearly one million Marines, sailors, civilian employees, and military family members aboard Marine Corps Base Camp Lejeune [allegedly] unknowingly drank, cooked with, and bathed in contaminated water." Compl. at 1. The water at Camp Lejeune

---

[1] The Court presumes the parties' familiarity with the facts as set forth in its prior rulings, and incorporates those facts by reference herein. The Court sets forth only those facts deemed necessary to an understanding of the issues raised in and decided in this motion.

allegedly "caused serious illnesses, including bladder cancer, leukemia, kidney cancer, and liver cancer." *Id*.

Veterans are allegedly entitled to benefits for disabilities resulting from or exacerbated by their military service, including those caused by toxic exposure. *Id*. Veterans Affairs has allegedly denied the overwhelming majority of disability claims from Camp Lejeune veterans. *Id*. In 2012, Veterans Affairs allegedly added a new step in the disability adjudication process and appointed subject matter experts to review the claims of Camp Lejeune veterans. *Id*. Since Veterans Affairs implemented the SME program, the success rate of Camp Lejeune claims allegedly dropped from twenty five percent to eight percent. Compl. at 2.

Despite alleged criticism of the SME program in at least one news outlet, *id*., Veterans Affairs has allegedly refused to provide details about how the SME program operates, including the methodology, training, and expertise of the SMEs. *Id*. Veterans Affairs has allegedly hailed the SME program as the "model for the future." *Id*.

### B.    Procedural Background

On April 27, 2016, Plaintiffs filed the Complaint.

On June 9, 2016, Defendant appeared in the case. Notice of Appearance by John W. Larson on behalf of United States Department of Veterans Affairs, ECF No. 8.

That day, the parties filed a consent motion for an extension of time for Defendant's responsive pleading. Consent Mot. for Extension of Time to Plead, ECF No. 9. This was the first of eight motions for extension of time granted by the Court. *See* Mots. for Extension, ECF No. 9, 15, 24, 40, 67, 89, 109, 138; *see also* Orders Granting Mots. for Extension, ECF No. 10, 17, 25, 41, 73, 90, 110, 139.

On July 18, 2016, Defendant answered the Complaint. Answer, ECF No. 18.

On August 8, 2016, Plaintiff moved for a status conference. Pls.' Mot. for Status Conf., ECF No. 19. The next day, the Court granted the motion. Order Granting [19] Mot. for Scheduling Conf., ECF NO. 20. On August 26, 2016, the Court held the first of more than ten status conferences. Min. Entry, ECF No. 22, *see also* Min. Entries, ECF Nos. 45, 52, 57, 63, 114, 121, 126, 127, 135.

Following the first status conference, the Court issued the first of three Scheduling Orders for the case. Scheduling Order, ECF No. 23, *see also* Am. Scheduling Order, ECF No. 105; Scheduling Order, ECF No. 22

On December 23, 2016, Defendant moved for summary judgment. Mot. for Summ. J., ECF No. 26. On January 27, 2017, Plaintiffs filed a memorandum in opposition to summary judgment. Mem. in Opp., ECF No. 31. On February 10, 2017, Defendant replied. Reply to Resp. to Mot. for Summ. J., ECF No. 32.

On April 24, 2017, the Court held a hearing on the motion for summary judgment. Min. Entry, ECF No. 38.

On May 26, 2017, the Court granted in part and denied in part Defendant's motion for summary judgment. Order Granting in Part and Denying in Part Mot. for Summ. J. ("Summ. J. Order"), ECF No. 39.

The Court found that Defendant had provided records concerning the number of Camp Lejeune Water Contamination Claims adjudicated since the start of the SME program and following VA Secretary McDonald's 2015 conference call with Senators, as well as the outcome of those claims, and related data (i.e., in response to FOIA request paragraphs 14 and 15). *Id.* at 31. Otherwise, the Court found that Defendant had not adequately performed the remaining searches or allocated responsibility for the searches between the Veterans Benefits

Administration and Veterans Health Administration. *Id*. The Court also ruled that Defendant had not yet adequately invoked FOIA Exemption 6. *Id*.

On June 16, 2017, Defendant moved for an extension of time to comply with the Court's Order. First Mot. for Ext. of Time, ECF No. 40. The Court granted the extension and set a July 10, 2017 deadline for supplemental document production and a July 24, 2017 deadline for supplemental search declarations. Order, ECF No. 41. Defendant did not meet these deadlines.

On October 4, 2017, the Court granted Defendant's oral motion for an extension of time until October 20, 2017 for supplemental declarations and January 12, 2018 for document production. Min. Entry, ECF No. 45.

On December 19, 2017—more than six months after its summary judgment ruling—the Court ordered that if Veterans Affairs could not meet the production deadline, it must send a representative from the Agency with the appropriate authority and technical knowledge to testify in person about the reasons for the production delays and to set a schedule for the efficient resolution of the case. Order, ECF No. 59.

On January 31, 2018, the Court convened a discovery compliance hearing. Min. Entry, ECF No. 63. Following that hearing, the Court ordered: (1) Plaintiffs to submit additional search terms to the Defendant by February 7, 2018; (2) the parties to file separate status reports with the Court by February 14, 2018; and (3) the parties and representatives from Veterans Affairs to return to Court for a follow-up hearing on Monday, February 26, 2018. Order, ECF No. 64.

On February 14, 2018, Plaintiffs filed a status report, Pls.' Status Report, ECF No. 66.

The next day, Defendant moved for an extension of time, *nunc pro tunc*, and filed its status report. Mot. for Extension, ECF No. 67; Status Report, ECF No. 68. In its status report, Defendant explained that "at the time of the January 31, 2018 hearing . . . additional employees

were being trained and brought into this project, and they now are on board." Status Report at 3. Defendant proposed that it file monthly status reports until the conclusion of production. *Id*. at 6. Defendant also proposed, and separately moved for, a modification of the Court's order requiring a Veterans Affairs representative to personally appear at the February 26, 2018 conference. Mot. to Modify Order, ECF No. 69.

On February 16, 2018, Plaintiffs moved for "an order requiring the Defendant to show cause why it should not be held in civil contempt for violation of this Court's order to finish production of responsive records by January 12, 2018." Mot. for an Order to Show Cause for Contempt or, in the Alternative, Why a Stay Should Issue, ECF No. 76. Plaintiffs argued that "after years of delay and multiple failures to comply with previous court orders, the Defendant still refuses to commit to a date when it will finish the production of responsive documents." *Id*. at 1.

On February 20, 2018, the Court denied Defendant's motion to modify its Order and required Veterans Affairs personnel to appear at the February 26, 2018 hearing. Order, ECF No. 83.

On February 26, 2018, the Court held a nearly hour long discovery production hearing. Min. Entry, ECF No. 86. That day, the Court set April 10, 2018 as the date for a hearing on outstanding discovery and Plaintiffs' motion for civil contempt. Order to Show Cause, ECF No. 87.

In March 2018, the parties filed status reports, ECF Nos. 92–93, and Plaintiffs filed additional support for their motion for civil contempt, Pls.' Proposed Findings of Fact, ECF No. 95; Pls.' Supp. Brief in Supp. of Mot. for Contempt, ECF No. 96.

On April 10, 2018, the Court held a more than one hour hearing on outstanding discovery

and the motion for civil contempt. Min. Entry, ECF No. 97. Nine days later, the Court denied

Plaintiffs' motions for civil contempt, but required Defendant to submit a plan for fully

complying with the Court's May 26, 2017 Order by the new deadline of January 11, 2019. Order

on Mot. for Civil Contempt, ECF No. 98, at 2. The Court also set deadlines for seven additional

status reports and status conferences. *Id.*; Notice, ECF No. 99 (setting monthly hearing deadlines

through January 2019).

On May 11, 2018, Veterans Affairs filed its compliance plan. Resp. to Court Order

Regarding Defs.' Compliance Plan, ECF No. 100. In that plan, Defendant reported that Veterans

Health Administration had produced 2,335 e-mail documents, *id.* at 1, and that "VHA Central

Office FOIA officers [had] been performing the review and redaction of responsive documents,"

*id.* at 2. Veterans Health Administration still expected to produce more than 40,000 additional e-

mail documents, or more than ninety percent of the responsive documents. *Id.* Veterans Benefits

Administration had produced 460 e-mail documents, *id.*, and expected to produce additional but

"substantially fewer documents than VHA's remaining production," *id.*

Thereafter, the parties stipulated to a reduction in the number of Veterans Health

Administration custodians. Def.'s Status Report, ECF No. 108, at 2.

By July 2018, Defendant had produced another 173 Veterans Benefits Administration

documents and 1,181 Veterans Health Administration documents. *Id.* at 1–2. Defendant

estimated that given the parties' recent stipulation, Veterans Health Administration would need

to process, review, and produce another 11,000 documents. *Id.* at 2.

On August 17, 2018, Defendant reported that Veterans Benefits Administration had

completed its production, but Veterans Health Administration had produced just 591 of the

remaining 11,000 documents. Defs' Status Report, ECF No. 119, at 1–2.

By September 21, 2018, Defendant had produced an additional 580 pages of Veterans Health Administration documents. Defs' Status Report, ECF No. 124, at 1.

By October 19, 2018, Defendant had produced an additional 539 pages of Veterans Health Administration documents. Defs' Status Report, ECF No. 125, at 1.

By November 16, 2018, Defendant had produced an additional 300 pages of Veterans Health Administration documents. Defs' Status Report, ECF No. 131, at 1.

By December 21, 2018, Defendant had produced no new pages of Veterans Health Administration documents, was holding and internally reviewing 13,328 pages of documents, and was intending to produce "search declarations pertaining to [its] email searches and Vaughn indices by the January deadline." Defs' Status Report, ECF No. 137, at 1–2.

In January of this year, Defendant moved for, and the Court granted, an extension of January 2019 deadlines due to the federal government shutdown. Mot. for Extension of Time, ECF No. 138; Order, ECF No. 139.

That month, Defendant allegedly completed production. Consent Mot. to Reschedule Jan. Status Conf., ECF No. 141.

On February 21, 2019, the parties moved for a final status conference in late March of 2019. *Id*. The Court set the conference for April 25, 2019. Notice, ECF No. 142.

On April 25, 2019, the Court convened a status conference. Min. Entry, ECF No. 144. At that status conference, Plaintiffs informed the Court that they intended to seek summary judgment and an order requiring Defendant to complete production by removing the redactions of SME names on emails and resumes. *Id*.

On May 17, 2019, Plaintiffs moved for summary judgment. Pls.' Mot.

On June 17, 2019, Defendant responded. Mem. in Opp. to Pls.' Renewed Mot. for

Contempt or Mot. for Summ. J. ("Def.'s Mem."), ECF No. 150.

On July 1, 2019, Plaintiffs replied. Pls.' Reply Mem. of Law in Supp. of Their Mot. for Summ. J. or, in the Alternative, for Civil Contempt ("Pls.' Reply"), ECF No. 151.

## II.     STANDARD OF REVIEW

"A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (citing *Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)).

"[A] district court's contempt power is 'narrowly circumscribed.'" *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 (2d Cir. 2014) (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003)). "[U]nless the parties can "'ascertain from the four corners of the order precisely what acts are forbidden,' the order cannot form the basis for contempt." *Gucci Am., Inc.*, 768 F.3d at 143 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

Nevertheless, a court may still exercise its inherent authority to manage its docket and bring a case to resolution. *Dietz*, 136 S. Ct. at 1892–93 (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (finding that a district court has inherent power to stay proceedings pending resolution of parallel actions in other courts); *Link v. Wabash R. Co.*, 370 U.S. 636, 631–632 (1962) (finding that a district court has inherent power to dismiss a case *sua sponte* for failure to prosecute); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (finding that a district court has inherent power to vacate a judgment procured by fraud); *United States v. Morgan*, 307 U.S. 183, 197–198 (1939) (finding that a district court has inherent power to stay disbursement of funds until revised payments are finally adjudicated)); *see also California Pub. Employees'*

*Ret. Sys. v. ANZ Sec., Inc*., 137 S. Ct. 2042, 2054 (2017) ("District courts, furthermore, have ample means and methods to administer their dockets and to ensure that any additional filings proceed in an orderly fashion.").

## III.    DISCUSSION

Nearly four years since the filing of Plaintiffs' FOIA request, Veterans Affairs has produced a cache of highly redacted documents, Compl. at 1; Pls.' Mem. at 7, and this case continues. The Court has already ruled on summary judgment and civil contempt. Summ. J. Order; Order on Mot. for Civil Contempt. The Court has heard close to five hours of oral argument on this matter, Min. Entries, ECF Nos. 22, 38, 45, 52, 57, 63, 86, 97, 114, 121, 126, 127, 135, 144, and has reviewed more than 1,300 pages of briefing and exhibits. *See, e.g*., ECF Nos. 26, 31, 75–77, 95–96, 147, 150–151. On the basis of this extensive record, the Court makes the following findings:

(1) Plaintiffs should not be permitted to seek summary judgment a second time in this case;

(2) Veterans Affairs is not in civil contempt of a specific Order of this Court; and

(3) Veterans Affairs has not completed production as required under the Freedom of Information Act.

5 U.S.C. § 552 *et seq*.

### A.  Summary Judgment

Plaintiffs move for summary judgment and seek to order Veterans Affairs to remove the redactions of the subject matter expert names on the produced resumes and e-mails. For the reasons discussed below, the removal of the redactions is warranted. A second motion for summary judgment, however, is not the appropriate means for addressing this issue.

The Supreme Court has long recognized courts' inherent authority to manage their

dockets to bring cases to resolution. *Dietz*, 136 S. Ct. at 1892–93 (collecting cases); *see also California Pub. Employees' Ret. Sys.*, 137 S. Ct. at 2054 ("District courts, furthermore, have ample means and methods to administer their dockets and to ensure that any additional filings proceed in an orderly fashion.").

On May 26, 2017, the Court set a course for the resolution of this case in its summary judgment Order. Summ. J. Order at 31. That order directed Defendant "to provide to Plaintiff any records in its possession responsive to Plaintiff's FOIA request and consistent with this Court's Ruling within thirty (30) days of the entry of this Ruling." *Id*. at 30. The summary judgment order anticipated a need for limited discovery and set a schedule for that discovery. *Id*. The order required Defendant to memorialize its searches in affidavits and set a deadline for transmission of those affidavits to Plaintiffs. *Id*. at 31. In sum, the Court established a case management plan in the 2017 summary judgment order that should have resulted in the conclusion of this matter.

Because all parties were aware that the Court had already established a process for this case's resolution, a second motion for summary judgment will not be permitted. *See Grabin v. Marymount Manhattan Coll*., 659 F. App'x 7, 8 (2d Cir. 2016) ("[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions.") (quoting *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004); *Singleton v. Grade A Mkt., Inc.*, No. 08-CV-1385 (JCH), 2009 WL 10689210, at *2 (D. Conn. Sept. 21, 2009) ("In the absence of a good reason to exercise its discretion and entertain a successive summary judgment motion, a court ought not allow litigation to be conducted in piecemeal fashion . . . . In this case, after having been granted summary judgment on a Motion for Summary Judgment which purported to resolve all outstanding issues in the suit, plaintiffs now seek to recapture a contract claim for attorney fees

which, while they may have pled it, they have not mentioned in a court filing in nearly one year and did not include in their Motion for Summary Judgment . . . . Consequently, the court concludes that the Motion for Attorney Fees (Doc. No. 40) is procedurally improper and declines to exercise its discretion to entertain the Motion.").

Accordingly, Plaintiff's motion for summary judgment will be denied.

### B.      Civil Contempt

Alternatively, Plaintiffs argue that Veterans Affairs has failed to comply with the Freedom of Information Act and that the Court should order it to comply. Pls.' Mem. at 6–7.

Veteran Affairs argues that it cannot be held in civil contempt for failing to comply with FOIA, broadly. Def.'s Mem. at 5–6.

The Court agrees.

Though the Court has issued numerous orders on the scope of production, as discussed above, Plaintiffs have not identified an order violated by Veterans Affairs. *CBS Broad. Inc.*, 814 F.3d at 98 ("A court may hold a party in contempt if . . . the order the party failed to comply with is clear and unambiguous[.]").

Moreover, Plaintiffs have not offered clear and convincing proof of Defendant's noncompliance. *Id.* As a result, the Court will not hold Defendant in civil contempt. *Gucci Am., Inc.*, 768 F.3d at 142 ("[A] district court's contempt power is 'narrowly circumscribed.'").

Accordingly, Plaintiffs' motion for civil contempt will be denied.

### C.      Redaction of the Subject Matter Experts' Names

Long-standing Supreme Court precedent recognizes the Court's inherent authority to resolve the parties' remaining issue, however, and bring this case to resolution. *Dietz*, 136 S. Ct. at 1892–93. The Court now turns to the final issue in this case.

More than two years ago, the Court issued its summary judgment order, which partly addressed redaction of the SMEs' names under FOIA Exemption 6. Summ J. Order, 27–29. In keeping with Second Circuit precedent, the Court withheld its final determination on the exemption issue until it could review at least some of Defendant's production, including SME qualifications documents. Summ J. Order at 28–29. In the Court's summary judgment ruling, the Court established a process for the resolution of all remaining issues in this case, including any subsequent discovery disputes that would arise. *See, e.g.*, Summ. J. Order at 31 ("After this period, forty-five (45) days after this ruling, Plaintiffs will be permitted to depose the agency employees who submitted declarations on behalf of VBA and VHA, or substitute employees of similar responsibility in the event the declarants are no longer employed by the agency.").

The Second Circuit has consistently held that FOIA exemptions must be "narrowly construed with doubts resolved in favor of disclosure." *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999). The Government "bears the burden of demonstrating that an exemption applies to each item of information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Ctr. For Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014), *cert. denied*, — U.S. —, 135 S. Ct.

To meets its burden, an agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 228 (D. Conn. 2014).

Exemption 6 permits redaction or non-disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6)); *see also U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (Exemption 6 is intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."). "To determine whether identifying information may be withheld pursuant to Exemption 6, the Court must (1) determine whether the identifying information is contained in personnel and medical files and similar files; and (2) balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009).

In its summary judgment ruling, the Court recognized that SMEs might have an individual privacy interest in the non-disclosure of their names. Summ. J. Order at 27–28 ((citing *Wood v. F.B.I.*, 432 F.3d 78, 88 (2d Cir. 2005) and *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012) ("It is not uncommon for courts to recognize a privacy interest in a federal employee's work status (as opposed to some more intimate detail) if the occupation alone could subject the employee to harassment or attack.")). The Court also noted a potential public interest in the disclosure of SME names. Summ. J. Order at 28–29 ((quoting *Long*, 692 F.3d at 193 ("Whether the public has an interest in the identity of federal workers, and to what extent, depends on circumstances, including whether the information sought sheds light on government activity[.]")).

The Court then found that Defendant had provided insufficient evidence in support of the claimed FOIA exemption. Summ. J. Order at 27 (("Ms. Farer's declaration references only a 'specific task force in a specific area,' Farer Decl. 13, but both parties' briefs make clear that VHA applied the exception to exclude the names of SMEs. *See* Reply, 8 (referring to the 'purported public interest in knowing the names of the various VA employees serving as subject

matter experts'); Opp. Mem., 31 ('VHA has not indicated what task force these individuals serve

on, though context suggests Ms. Farer is referring to the SME program.'"'')); *id*. at 28 ("As a

result, Defendant has not established that that VA employees possessed a 'cognizable privacy

interest' in all of their personal information.")

Following production, the parties renewed their Exemption 6 arguments. Pls.' Mem.;

Def.'s Mem.[2] On June 17, 2019, Defendant submitted examples of its production and SME

qualifications documents, ECF No. 150-2–11.

Defendant argues that it is entitled to withhold SMEs' names under Exemption 6

because: (1) the names appear in files covered by 5 U.S.C. § 552(b)(6), and (2) the SMEs'

privacy rights outweigh the public's interest in disclosure. Def. Mem. at 13–19.

Plaintiffs argue that they are entitled to unredacted documents because: (1) the files at

issue are largely routine e-mails that are not covered by 5 U.S.C. § 552(b)(6), and (2) the

public's interest in disclosure outweighs the SMEs' privacy interests. Pls.' Mem. at 7–15.

The Court agrees, in part.

As an initial matter, the Court need not determine if routine e-mails are generally covered

under Exemption 6, because Veterans Affairs has not met its burden to demonstrate that the

SMEs' privacy rights outweigh the public's interest in learning about the Camp Lejeune SME

program. *See Ctr. For Constitutional Rights*, 765 F.3d at 166 (explaining that "all doubts as to

---

[2] Defendant argues that Plaintiffs should be estopped from reasserting their claim to unredacted information because Plaintiffs stated at the summary judgment hearing that they would accept SME qualifications documents in lieu of unredacted information. *See* Def.'s Mem. at 9. The Court disagrees. At the hearing, Plaintiffs explained that qualifications, apart from names, might satisfy the public interest in SME expertise if the qualifications disclosed were "sufficient [to] prove expertise." Tr. 46 ("[F]or example, if they had unredacted that someone is an M.D., that would be insufficient to prove that they should be called a subject matter expert. At that point the names would still be necessary to understand the full expertise of this individual. [As compared to] sufficient qualifications that can prove expertise. This could be, for example, redacted resumes, redacting out personally identifying information, but still providing the sufficient qualifications for expertise, and in that case . . . the name itself would not be necessary."). Plaintiffs did not then assert or subsequently abandon their broader claim to unredacted information. Similarly, the Court did not "draw a distinction between information concerning the SMEs' identities and their qualifications," Def.'s Mem. at 18, that would prevent the Court from addressing the Exemption 6 issue in light of a fuller factual record, including actual production, and further legal briefing, as discussed below.

the applicability of the exemption must be resolved in favor of disclosure.").

As the Court previously noted, whether the government is entitled to invoke Exemption 6 is highly contextual. *See Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120*, 8 F. Supp. 3d at 228 (explaining that an agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.").

In *Long*, the Government invoked Exemption 6 to withhold the names and duty station information from a public database "for [i] all employees in what it deemed to be five 'sensitive' federal agencies: Bureau of Alcohol, Tobacco, and Firearms ('ATF'), Drug Enforcement Agency ('DEA'), DoD, Secret Service, and United States Mint; and [ii] for those employees across all federal agencies who are in twenty-four 'sensitive' occupation categories: e.g., police, criminal investigating, nuclear engineering, game law enforcement." *Long*, 692 F.3d at 189. In support of the exemption, the Government submitted an affidavit from the Office of Personnel Management's FOIA officer stating that "the events of September 11, 2001—particularly the attack on the Pentagon—and a subsequent anthrax attack caused OPM to review the vulnerability of the federal workforce to harassment and attack." *Id*.[3]

The district court permitted non-disclosure of the names. *Id*. at 190. The Second Circuit "affirmed the judgment of the district court insofar as it ruled that FOIA Exemption 6 permitted OPM to withhold all of the names at issue and some of the duty-station information, but [reversed] insofar as it ruled that duty-station information for twenty sensitive occupations must

---

[3] Similarly, in *Washington Post*, the Department of State submitted an affidavit from "the Assistant Secretary of State for Near Eastern and South Asian Affairs, explain[ing] that both [Doctors] Behzadnia and Yazdi were prominent figures in Iran's Revolutionary Government and that compliance with respondent's request would 'cause a real threat of physical harm' to both men." *Washington Post*, 456 U.S. at 597. The Supreme Court's ruling in the case concerns the scope of exemption 6, not its applicability to Doctors Behzadnia and Yazdi, so it provides little guidance for this fact-finding.

be disclosed." *Id.* at 198.

In contrast to *Long*, Defendant's affidavits do not suggest that disclosure of SME names would put SMEs at a similar risk of harassment or bodily harm. The Bertha L. Brown declaration, ECF No. 26-2 at 12–17, lists the names of at least ten doctors, ostensibly SMEs themselves, *id.* at 16, and does not describe specific risks related to disclosure. The Timothy H. Graham declaration, ECF No. 26-2 at 18–19, states only that the SMEs "were conducting highly contentious work that may subject the individual members to harassment," *id.* at 19. The supplemental Bertha L. Brown declaration, ECF No. 26-2 at 20–25, also lists no specific threats or privacy interests.

The Carol E. Farer declaration, ECF No. 26-2 at 36–39, states that "task force members may be subject to harassment or worse if their identities are publicized, and VHA therefore concluded that those members have a privacy interest in their personal information and their personal safety under the circumstances presented here. This is a particular concern given the experiences of some SMEs, at least one of whom (as reported to VHA) has had his identity disclosed online, leading to publication of pictures of his house," *id.* at 38–39.

In its summary judgment order, the Court noted that Ms. Farer's declaration concerned SMEs involved in a task force and the Court could not determine how many SMEs that included. Summ. J. Order at 27. Since then, Defendant has provided no further clarification regarding the task force at issue. Nor has the Defendant provided admissible evidence that an SME's house was identified online.

Defendant continues to claim that the SMEs' work was contentious, in general, and that the public or Camp Lejeune veterans might blame them for the failures of the program or the larger Veterans Affairs bureaucracy. Years into this litigation, however, there is still no specific,

credible evidence that SMEs face risks of any kind, let alone of the sort contemplated in *Long*.[4]

*Long*, 692 F.3d at 190 (arguing that "the events of September 11, 2001—particularly the attack

on the Pentagon—and a subsequent anthrax attack caused OPM to review the vulnerability of the

federal workforce to harassment and attack."); *see also Veterans of Am. Connecticut Greater*

*Hartford Chapter 120*, 8 F. Supp. 3d at 228 (explaining that to meets its burden, an agency "must

provide a relatively detailed justification, specifically identifying the reasons why a particular

exemption is relevant and correlating those claims with the particular part of a withheld

document to which they apply.").

By contrast, Plaintiffs have submitted credible evidence that veterans and their families

were exposed to toxic water at Camp Lejeune, developed cancers, and were denied veterans

disability benefits. *See* Veterans Affairs, "Public Health: Camp Lejeune: Past Water

Contamination," www.publichealth.va.gov/exposures/camp-lejeune, ECF No. 31-6; Tara Evans,

"Veterans: Are VA Experts Qualified?," ClickOrlando.com, ECF No. 31-3; *see also Washington*

---

[4] This case is also distinguishable from *Long* because the documents produced by Veterans Affairs would not enable a researcher to perform a simple search of a database to obtain an SME's current address. In fact, the documents submitted to the Court are sufficiently redacted to exclude SMEs' addresses. The Court finds that Exhibit C appears to be a redacted database print-out. Defs.' Ex. C, ECF No. 150-5. It lists the educational credentials for the purported SME, including the schools that conferred his or her M.D. and M.P.H. degrees, and the years of conferral. *Id*. at 1. The exhibit lists the three hospitals at which the alleged SME trained, his or her various state licenses, specialties (e.g., Occupational Medicine), certifications, and facility appointments. *Id*. at 1–5. Exhibit E appears to be a redacted database print-out. Defs.' Ex. E, ECF No. 150-7. It lists educational credentials, including the school that conferred the purported SME's M.D. degree and the year of conferral. *Id*. at 1. The exhibit lists the three hospitals at which the alleged SME trained, his or her various state licenses, specialties (e.g., Internal Medicine, Occupational Medicine), certifications, and facility appointments. *Id*. at 2–6. Exhibit G appears to be three redacted resumes. Defs.' Ex. G, ECF No. 150-9. The first resume lists the alleged SME's terminal credential as "M.D.," *id*. at 1, and indicates that he or she received Master of Science and Doctor of Medicine degrees from Wayne State University, *id*. The resume lists the alleged SME's internship and residency sites, professional experience, and licenses. *Id*. at 2–4. The second resume lists the purported SME's terminal credential as "M.D.," *id*. at 5, and indicates that he or she attended the School of Aerospace Medicine at the Brooks Air Force Base and completed a fellowship in Occupational Medicine and Environmental Health at the University of Cincinnati, *id*. at 6. The resume lists the purported expert's experience from 1973 to the present. *Id*. at 5–6. The third resume describes the purported SME's title as "Chief of Occupational Medicine." *Id*. at 7. It lists his or her education, including a Doctor of Medicine degree from Wake Forest University and a Master of Public Health degree from the University of Texas Health Science Center at San Antonio. *Id*. at 7. It also lists his or her board certifications (e.g., Occupational Medicine) and civilian positions. *Id*. at 8. None of these documents, however, appear to list the SMEs' unredacted current addresses.

*Post Co.*, 456 U.S. at 599 ("To determine whether identifying information may be withheld pursuant to Exemption 6 the Court must . . . balance the public need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy."). Plaintiffs argue that the public has a right to know how and why Camp Lejeune veterans with cancer diagnoses were denied disability benefits.

In resolving the balance suggested by Defendant's affidavits and Plaintiffs' filings, the Court also notes a 2017 Veterans Affairs FOIA decision cited by Plaintiffs. Pls.' Reply at 2; Ex. C to Reply, ECF No. 151-4, at 2 ((citing Veterans Affairs, Office of the General Counsel, Administrative Decision Number 93207 ("Veterans Affairs Decision 93207" August 2, 2017)). In that decision, the agency stated that it could invoke Exemption 6 to withhold information "if there were an articulable threat to the privacy or safety of the individuals." Veterans Affairs Decision 93207 at 2. The agency then found that while the dermatologists at issue had a "personal privacy interest in their identities, there is a countervailing public interest in knowing that VA employs qualified individuals." *Id*. The agency then found that the public interest outweighed the privacy interests of the dermatologists. *Id*.

In keeping with the agency's relatively recent interpretation of Exemption 6, the Court thus finds that Defendant has failed to demonstrate an "articulable threat to the privacy or safety" of the SMEs, Veterans Affairs Decision 93207 at 2. After reviewing the parties' submissions, both before and after document production, the Court finds that there is a "countervailing public interest in knowing that VA employs qualified individuals." *Id*. This public interest outweighs the SMEs' privacy interest and permits the disclosure of the SMEs' names on the produced documents. *Id*. [5]

---

[5] Defendant's remaining argument is that Plaintiffs "knew what was redacted, why it was redacted, and what qualification information was not redacted as of September 2017." Def.'s Mem. at 12. But elsewhere Defendant has

In summary, Veterans Affairs has failed to "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120*, 8 F. Supp. 3d at 228. The Court therefore grants the relief requested by Plaintiffs and orders the agency to "un-redact the SME names on the e-mails and resumes that have been disclosed." Pls.' Mem. at 10.

## III.   CONCLUSION

For the reasons above, the Court **DENIES** the Plaintiffs' motion for summary judgment or civil contempt.

Consistent with this Court's prior Orders and its inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," *Dietz*, 136 S. Ct. at 1892, however, the Court orders Defendants to complete production by providing the already produced resumes and e-mails without the redaction of the subject matter expert names by **September 20, 2019**.

Following this September 20th deadline, the Clerk of this Court is instructed to close this

---

argued that it retained more than 13,000 Veterans Health Administration documents at the close of 2018. Defs' Status Report, ECF No. 137, at 1–2. Additionally, it is not clear when Defendant produced the SMEs' qualifications. Plaintiffs announced their intention to challenge Defendant's redactions less than four months after final production. *See* Min. Entry, ECF No. 144. As a result, Defendant's laches arguments are unsupported. Def.'s Mem. at 10–13 (quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) and *Giammarco v. Beers*, 170 F. Supp. 3d 320, 336 (D. Conn. 2016)). Plaintiffs are incorrect that "[t]here is no basis for invoking laches for an issue in ongoing litigation." Pls.' Reply at 11; *see Fidelity & Cas. Co. of N.Y. v. Kizis*, 363 Pa. 575, 70 A.2d 227 (1950); *Klein v. Walton*, 413 Pa. Super. 150, 604 A.2d 1064 (1992); *Beech v. Ragnar Benson, Inc.*, 402 Pa. Super. 449, 587 A.2d 335 (1991). However, most courts—including those cited by Defendants, above—will entertain a laches defense only when a plaintiff has unreasonably and prejudicially delayed commencing a suit. *See Zuckerman v. Metro. Museum of Art*, No. 18-634, 2019 WL 2607155, at *4–5 (2d Cir. June 26, 2019) ("First, we conclude that the delay in this case was unreasonable . . . . It is eminently understandable that the Leffmanns did not bring any claim for the Painting during the course of World War II and even, perhaps, for a few years thereafter, given their specific circumstances. However, it is simply not plausible that the Leffmanns and their heirs would not have been able to seek replevin of the Painting prior to 2010 . . . . we conclude that the Met has been prejudiced by the more than six decades that have elapsed since the end of World War II. This time interval has resulted in deceased witness[es], faded memories . . . and hearsay testimony of questionable value, as well as the likely disappearance of documentary evidence.") (internal citation and quotation marks omitted)).

case with the Court retaining jurisdiction, to the extent necessary to enforce this Order.

*Kokkonen*, 511 U.S. at 379–80 ("Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]") (internal citations omitted)).

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of August, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE